## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM R. MCHUGH III, ANTHONY PARR, and REBECCA TAYLOR, <br><br> Plaintiffs, <br><br> v. <br><br> SAINT TAMMANY PARISH, and DAVID COUGLE, in his official capacity, <br><br> Defendants. | CIVIL ACTION NO.: <br><br> JUDGE: <br><br> MAGISTRATE JUDGE: |

## COMPLAINT AND JURY DEMAND

**NOW INTO COURT** come Plaintiffs William R. McHugh III, Anthony Parr, and Rebecca Taylor, through undersigned counsel, and bring this Complaint seeking declaratory relief and an injunction barring enforcement of a St. Tammany Parish Council resolution ("the Resolution") purporting to appoint six new members to the St. Tammany Parish Library Board of Control (the "Library Board"). Plaintiffs are duly appointed members of the Library Board presently serving five-year terms, which have been disrupted by a smear campaign that vilified them, sought, and achieved their ouster. Rather than defend these conscientious, ethical public servants from community ridicule and retribution, members of the St. Tammany Parish Council (the "Council") participated in the campaign and deliberately terminated Plaintiffs' appointments in retaliation for exercising their First Amendment freedom, in discrimination against them for

1

the expressed viewpoints, and without due process of law. Plaintiffs allege violations of their rights to free speech and due process, and they seek to complete their terms on the Library Board.

## JURISDICTION AND VENUE

1. Plaintiffs brings this action under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983, 1988, and Louisiana law.

2. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 42 U.S.C. § 1331 (federal question). The court has supplemental jurisdiction over Plaintiffs' claims arising from state law in accordance with 28 § U.S.C. 1367.

3. Declaratory relief in authorized by 28 § U.S.C. 2201 *et seq*. A declaration of law is necessary to determine the rights and duties of the parties.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Louisiana.

## PARTIES

1. Plaintiff William "Bill" R. McHugh III is a member of the St. Tammany Parish Library Board of Control. He was appointed via Resolution Council Series No. C-6779 to the Library Board on June 1, 2023, for a five-year term expiring on August 4, 2027. He is a resident of St. Tammany Parish and a retired software developer.

2. Plaintiff Anthony Parr is the secretary/treasurer of the St. Tammany Parish Library Board of Control. He was appointed via Resolution Council Series No. C-6778 to the Library Board on June 1, 2023, for a five-year term expiring on July 12, 2027. He is a resident of St. Tammany Parish and a former special-education teacher.

3. Plaintiff Rebecca Taylor is the president of the St. Tammany Parish Library Board of Control. She was appointed via Resolution Council Series No. C-6634 to the Library Board on July 7, 2022, for a five-year term expiring on July 12, 2027. She is a resident of St. Tammany Parish and a retired librarian.

4. Defendant Saint Tammany Parish is a political subdivision of the State of Louisiana that operates under a Home Rule Charter ("the Charter") pursuant to Article VI § 5 of the Louisiana Constitution. It is a juridical entity capable of being sued.

5. The Saint Tammany Parish Council is the legislative arm of the Saint Tammany Parish government. It appoints six of the seven members of the Library Board of Control, including Plaintiffs. Saint Tammany Parish has not taken any action to correct the Parish Council's unconstitutional actions complained of herein, or to protect the First Amendment and due process rights of the Plaintiffs.

6. The Parish Council's current members are: Rick Smith (District 1); Larry Rolling (District 2); Martha Cazaubon (District 3); Kathy Seiden (District 4); Pat Phillips (District 5); Cheryl Tanner (6); Joe Impastato (District 7); Pat Burke (District 8); David Cougle (District 9); Maureen O'Brien (District 10); Arthur Laughlin (District 11); Jerry Binder (District 12); Jeff Corbin (District 13); and Jimmy Strickland (District 14). The Council assumed office on January 8, 2024.

7. Defendant David Cougle is a current member of the Parish Council and a resident of Saint Tammany Parish. He is sued in his official capacity

## **FACTUAL ALLEGATIONS**

8.  In June 2022, three of the 12 library branches[1] in Saint Tammany Parish featured displays announcing "Pride Month," an annual commemoration of primarily Lesbian, Gay, Bisexual, Transgender, and Queer[2] ("LGBTQ") pride.

9.  The displays sparked a firestorm of controversy that eventually swept across St. Tammany Parish, enflaming residents' political passions and leading to a multiyear community debate over what materials should be publicly available in a library.



*Pictured above is one of the Pride displays. Photo by Sara Pagones/The New Orleans Advocate Times-Picayune.*

[1] Slidell, Madisonville, and Mandeville branches featured displays.
[2] A broader group description includes Lesbian, Gay, Bisexual, Transgender, Queer, Intersex, and Asexual ("LGBTQIA"). The shorter term is used here for the sake of brevity.

10. One display in the children's section at the Mandeville branch library prompted complaints from patrons concerned about their children's exposure to the materials.[3]

11. Library Executive Director Kelly LaRocca explained to complainants that, pursuant to library policy, any St. Tammany Parish resident holding a library card could complete a "Statement of Concern About Library Resources" form,[4] also referred to as a "Request for Reconsideration" pursuant to La. R.S. 25:225. Submission of the form triggers review by a staff committee, and a complainant unsatisfied with the outcome can then pursue the matter before the Library Board.

12. Of eight residents who complained, three submitted formal complaints, but none of them sought review by the Library Board. One submitted by Felix Turner Jr. noted that St. Tammany "is a mostly conservative community" and added: "The voters will remember."[5]

13.  At a subsequent Library Board meeting on July 26, 2022, a near-capacity crowd offered widespread support for the Pride displays; 24 people spoke about the displays, and all but one person supported the library's decision to highlight Pride month.[6]

14. The controversy shifted as concerned residents turned their attention to books, mainly those featuring LGBTQ themes.

---

[3] Sara Pagones, *Pride Month displays at Mandeville library draw complaints and support*, THE TIMES-PICAYUNE/THE NEW ORLEANS ADVOCATE, June 22, 2022, available at: https://www.nola.com/news/northshore/pride-month-displays-at-mandeville-library-draw-complaints-and-support/article_d4a7c46a-f1a1-11ec-aebb-e70fd42a12c0.html
[4] *Id.*
[5] Sara Pagones, *Pride month displays at St. Tammany libraries draw crowd of supporters to library board meeting*, THE TIMES-PICAYUNE/THE NEW ORLEANS ADVOCATE, July 27, 2022, available at: https://www.nola.com/news/northshore/pride-month-displays-at-st-tammany-libraries-draw-crowd-of-supporters-to-library-board-meeting/article_f10e1548-0ddd-11ed-aeec-2f80fcefabf1.html
[6] *Id.*

15. In August 2022, residents formed an advocacy organization, the Saint Tammany Library Accountability Project ("STLAP"), with its purported mission to "prevent the sexual exploitation of children."

16. The group's co-founders are Connie Phillips and David Cougle. Phillips, who does not possess a library card, ultimately lodged as many as 150 complaints targeting specific books.[7] Cougle eventually launched a campaign for Parish Council on the issue of library materials, and he was elected to the Parish Council on October 14, 2023.

17. When the Library Board held its October 22, 2022, meeting at the Slidell branch, an overflow crowd of residents complained of books they said were pornographic and promoted pedophilia, while others urged the Board not to engage in censorship.[8]

18. STLAP's then-attorney, Cougle, spoke at the October 22, 2022, meeting and accused Library Board members of "approving pornographic and pedophilic materials targeting young children … what you are really saying is you want to pimp out our community libraries to outside activist groups which have only nefarious and financial intentions for our children."  He compared Library Board members to sexual predators who pose a "similar danger to our children." He urged them to "reject this cultish gender craze."

19. At the time, formal complaints had been lodged against six books, but none of those complaints were on the meeting's agenda, and several residents complained about two books that were not the subject of any written complaint.[9]

---

[7] Alex Luben, *St. Tammany woman who lodged 150 book challenges issued summons in council skirmish*, THE TIMES-PICAYUNE/THE NEW ORLEANS ADVOCATE, September 12, 2023, available at: https://www.nola.com/news/northshore/advocate-for-book-restrictions-issued-summons-in-st-tammany/article_61de4134-5186-11ee-9902-f31f4ec07993.html

[8] Sara Pagones, *Culture war clash at St. Tammany Parish Library as book complaints mount*, THE TIMES-PICAYUNE/THE NEW ORLEANS ADVOCATE, October 29, 2022, available at: https://www.nola.com/news/northshore/culture-war-clash-at-st-tammany-parish-library-as-book-complaints-mount/article_4d291fc2-56ee-11ed-8d90-c383591433a0.html

[9] *Id*.

20. Also on October 27, 2022, the St. Tammany Republican Executive Committee sent a letter to the Library Board, the system director, and library staff, urging them to address the "intentional exposure of children to pornographic material at our public libraries."

21. On November 8, 2022, the Slidell City Council passed a resolution urging the Library Board to "safeguard children from obscene materials." Cougle, of the recently formed STLAP, spoke at the meeting and decried books that are "meant to arouse sexual feelings in young children."[10]

22. Meanwhile, Library Director Kelly LaRocca consistently maintained that St. Tammany Parish's libraries contained no pornographic or obscene materials, and the Library Board had not identified any.

23. On November 7, 2022, STLAP's Cougle appeared on the "Ringside Politics" podcast and, during the interview, complained that the library system had "gone completely rogue." He singled out the "activists" with a "very different philosophy" had "taken over our library system … I know the mentality that goes on behind this."[11]

24. On November 14, 2022, STLAP's Phillips appeared on the "Ringside Politics" podcast and, during the interview, alleged that libraries are party of a "radical, leftist, Marxist" cult, "coordinated like Antifa, Black Lives Matter." She suggested the Library Board—particularly its president, Plaintiff Taylor—needed "to go," except for one other member—Ann Shaw—whom she had seen applaud in support of speakers who protested "smut" at Library Board meetings.[12]

---

[10] Kevin Chiri, *Library pressure builds*, THE SLIDELL INDEPENDENT, Nov. 9, 2022, available at: https://www.slidell-independent.com/library-pressure-builds/

[11] WGSO Producer, *Ringside Politics*, WGSO, Nov. 7, 2022, available at: https://www.wgso.com/ringside-politics-november-7-2022/

[12] WGSO Producer, *Ringside Politics*, WGSO, Nov. 14, 2022, available at: https://www.wgso.com/ringside-politics-november-14-2022/

25. Louisiana Governor Jeff Landry, then attorney general, then waded into the controversy. After meeting with concerned parents in Slidell, he created an online "tip line" that he announced on November 30, 2022, through which residents could report inappropriate books to stop the "taxpayer-subsided [sic] sexualization of children."[13]

26. One media outlet reported that Landry had failed to find any library materials that violated state laws but pandered to parents' worst fears, part of a national movement targeting libraries that stock children's books containing LGBTQ themes and situations.[14]

27. On December 4, 2022, STLAP's Cougle issued a memorandum to the Parish Council proposing an ordinance to create a "Library Commission Board/Commission panel" that would be empowered to disapprove new books, to determine which age section would be appropriate for certain materials, and to place materials on a "request-only" list.

28. On December 9, 2022, STLAP's Cougle launched an online petition via the website Change.org titled. "Stop the Saint Tammany Parish Library System's Sexual Exploitation of Children!"

29. Cougle's petition to the Saint Tammany Parish Council alleged that the library system bought books that "demonstrate, explain and encourage sexual relationships between adults and children." Despite community outrage, it complained, the Library Board "refused to change their policies" and its members "continue to publicly state that children have a right to be exposed to sexually explicit and pedophilic material[.]"

---

[13] Ashley White, *Louisiana attorney general creates 'protecting minors' tip line to report library books*, Lafayette Daily Advertiser, Dec. 1, 2022, available at: https://www.thetowntalk.com/story/news/2022/12/01/louisiana-attorney-general-tip-line-report-library-banned-books/69690230007/?fbclid=IwAR2b8-CWNsEUgCbxFp8dIBmUBjC3Ocef1dDNAusHeOopFKgGk70nwRS0VGk

[14] Claire Woodcock, Louisiana Launches Tip Line to Accuse Librarians of "Sexualizing Children," VICE.COM, Dec. 2, 2022, available at: https://www.vice.com/en/article/wxnymm/louisiana-launches-tip-line-to-accuse-librarians-of-sexualizing-children

30. At the same time, another citizens group, the Saint Tammany Library Alliance ("the Alliance"), started its own petition opposing censorship and book-banning efforts and opposing the proposed accountability board. By December 13, 2022, its petition had garnered about 1,300 signatures.[15]

31. STLAP's Cougle spoke again at a December 13, 2022, Library Board meeting and claimed its members "support exposing children in this community to sexually explicit and pedophilic material." He told its members they "seem confused as to why many now regard you as a threat to their children," and labeled the library administration "predatory."

32. At the December 13, 2022 meeting, the Library Board voted to remove 83 challenged books from its stacks, placing them behind the circulation desk pending a four-month review of their content.[16]

33. After a long meeting on March 27, 2023, the Library Board voted to keep five challenged books its shelves; all of them contained LGBTQ themes or characters.[17] After a sheriff's deputy removed him from the meeting for disrupting the meeting by heckling a speaker, STLAP's Cougle told a reporter, "The reason why this issue isn't going away is because you have an unelected board making decisions."

---

[15] Joni Hess, *Hundreds mobilize against censorship in St. Tammany libraries,* THE TIMES-PICAYUNE/THE NEW ORLEANS ADVOCATE, Dec. 13, 2022, available at: https://www.nola.com/news/northshore/hundreds-mobilize-against-censorship-in-st-tammany/article_abb48ab8-771e-11ed-8e9f-1f097cb11eb8.html
[16] Joni Hess, *St. Tammany Library Board sequesters 83 books, pending content review,* THE TIMES-PICAYUNE/THE NEW ORLEANS ADVOCATE, Dec. 14, 2022, available at: https://www.nola.com/news/politics/st-tammany-library-board-removes-83-books-pending-review/article_4c44cdc2-7bce-11ed-b987-f744f2703dcb.html#:~:text=Tammany%20Parish%20Library%20Board%20has,erected%20displays%20for%20Pride%20Month.
[17] Drew Hawkins, *With heated opposition, St. Tammany library board keeps challenged books on shelves,* LOUISIANA ILLUMINATOR, March 28, 2023, available at: https://lailluminator.com/2023/03/28/with-heated-opposition-st-tammany-library-board-keeps-challenged-books-on-shelves/

34. On April 27, 2023, STLAP's Cougle updated his online petition with the announcement that he was entering the race for Parish Council. "I can promise you one thing," he wrote. "… should I be elected, I will do everything in my power to solve the library crisis!"

35. On June 1, 2023, the Parish Council appointed Plaintiffs McHugh and Parr to the Library Board. At its subsequent June 5, 2023, meeting, the Library Board voted to return four books—all of which had been challenged by STLAP's Phillips—to the shelves.[18]

36. Newly appointed member McHugh held up a copy of "Pink, Blue, and You," one of the challenged books, and said it's about "being who you want to be," a message that he shared with his own daughter.[19]

37. The newly appointed members' comments and actions drew the ire of STLAP, whose members vilified Board members as "leftist" and "extremist." In the group's active Facebook group, one critic labeled Library Board members as "groomers," slang for an adult sexual predator who forms relationships with children to exploit them.

38. Another STLAP member circulated a photo of McHugh holding up the challenged book, complaining that he "taunt[ed]" the crowd. Another saved screen grabs of McHugh's social media in which he was critical of President Trump, alleging he was "biased" and therefore unfit to serve as an "impartial" Board member.

39. STLAP's Phillips later sent another e-mail to the Parish Council to notify them that Plaintiff Parr had allegedly signed a petition supporting the anti-censorship group the Saint Tammany Parish Alliance. She wrote that his "voting record" was "in line" with

---

[18] Joni Hess, *St. Tammany Library Board votes to return 4 challenged books to the shelves,* THE TIMES-PICAYUNE/THE NEW ORLEANS ADVOCATE, June 6, 2023, available at: https://www.nola.com/news/northshore/sttammany-library-board-votes-to-reshelve-challenged-books/article_5b8c3954-04a5-11ee-b350-63009ece2bf2.html
[19] *Id.*

McHugh's, and "we can't have liars and schemers on the Board. We must need to rid ourselves of activists."

40. On July 8, 2023, STLAP's Phillips forwarded a copy of a Facebook post by McHugh regarding libraries and book bans; she wrote that he was a "political left-wing activist" who was "fanning the political flames" and "must be removed."

41. On August 29, 2023, STLAP's Phillips complained in an e-mail to the Parish Council that it had failed to introduce reforms proposed by the group, including "removing the two roque [sic] members Bill McHugh and Anthony Parr."

42. In a written response to a survey of council candidates in August 2023, STLAP's Cougle said that, if elected, he would "remove library board members that refused to accept community standards." He blamed the Parish Council for having appointed "two far-left ideologues," referring to two of the Plaintiffs.

43. Meanwhile, STLAP's Cougle worked with Rep. Paul Hollis, R-Covington, to draft a bill that would give parish council and police jury members the ability to fire members of library boards before their terms end. The bill died in committee.

44. On September 12, 2023, STLAP's Cougle appeared on the "Ringside Politics" podcast as a candidate for Parish Council. He complained that the Library Board was "completely out of control" and specifically criticized their perceived political affiliation. "We're a conservative community," he said. "Why in the world would we have … a 5-to-1 liberal majority on the Library Board of Control? It just doesn't make any sense."[20]

---

[20] WGSO Producer, *Ringside Politics*, WGSO, Sept. 12, 2023, available at: https://www.wgso.com/ringside-politics-september-12-2023/

45. In a televised candidates' forum on October 6, 2023, Cougle blasted incumbent Parish
    Council member Mike Smith, whose seat he was challenging, saying he supported
    "activist" Library Board members who were "defying community standards."[21]

46. On October 14, 2023, the current Parish Council was elected, including Defendant
    Cougle. The election swept nine new members into power; only four of the current 14
    Council members were previous incumbents. Several incumbent members chose not to
    seek re-election.

47. On October 23, 2023, the Library Board enacted the following revision to its rules: "The
    choice of library materials by users is an individual matter. Responsibility for the use of
    library materials by minor children rests with their parents or legal guardians. While a
    person may reject material for themselves and for their minor children, an individual may
    not exercise censorship to restrict the freedom of others to read, see, or hear."[22]

48. Following the election, STLAP's Phillips withdrew all of the group's outstanding
    challenges to library books, which then numbered 160. She wrote to the library director
    that STLAP was confident the new Parish Council and lawmakers would "make the
    necessary changes to protect children from sexually explicit material in the children's
    section."[23]

49. On January 4, 2024, the current Parish Council assumed office.

50. On January 8, 2024, Defendant Cougle sent an e-mail to the Louisiana Attorney
    General's Office requesting a legal opinion on the effect of La. R.S. 25:214. He said the

---

[21] Sula Kim, *Hot Seat: Candidates for St. Tammany Parish Council District 9 spar over library, development, and budget issues*, WDSU.COM, Oct. 6, 2024, available at: https://www.wdsu.com/article/hot-seat-candidates-for-st-tammany-parish-council-district-9-spar-over-library-development-and-budget-issues/45472088

[22] Library Board Rules and Regulations at § 407(A), "Statements of Concern about Library Resources," available at: https://www.sttammanylibrary.org/wp-content/uploads/sites/44/2024/04/LBOC_RulesAdminstration-4.22.2024.pdf

[23] Piper Hutchinson, *Prolific Northshore book challenger withdraws complaints, seeks legislative remedy*, LOUISIANA ILLUMINATOR, Dec. 22, 2023, available at: https://lailluminator.com/briefs/northshore-book/

statute required staggered terms and noted the Library Board members were not appointed to appointed terms. He asked two questions: "1. Does this affect the validity of the appointments? 2. Would corrective action to comply with the law require removal and reappointment/appointment to a staggered term, or is it something that could be administratively resolved by the LBOC itself (which I would imagine it could not?)"

51. Apparently without waiting for a reply from the attorney general, Defendant Cougle published a position paper titled, "The Current St. Tammany Library Board of Control Appointments are not in compliance with State Law." Citing La. R.S. 25:214, he asserted that, because the statue "requires" staggered terms, the existing Library Board appointments were invalid.

52. Because the appointments were allegedly not compliant with state law, Defendant Cougle asserted, "consideration of removal of Board members is unnecessary." He falsely claimed that the existing seats were deemed vacant and urged the Parish Council to declare existing members' terms expired, and to nominate candidates for appointment to a staggered term "immediately … to remedy this in accordance with state law."

53. In reality, Defendant Cougle's gambit was pretextual, a legal technicality he sought to exploit to remove members of the Library Board whom he had targeted for expulsion. The St. Tammany Parish Library Board's creation predates the passage of La. R.S. 25:214 by more than 20 years, during which time the Parish Council routinely appointed Library Board members to fixed five-year terms without anyone decrying the purported "illegality."

54. Moreover, the Louisiana Constitution provides that the Legislature "shall enact no law the effect of which changes or affects the structure and organization or the particular

distribution and redistribution of the powers and functions of any local government subdivision which operates under a home rule charter." La. Const. art. VI.

55. Nothing in St. Tammany Parish's Home Rule Charter or the parish's library ordinance[24] requires the staggering of Library Board terms. The Parish was, therefore, free to establish and maintain fixed terms for its Library Board members.

56. On February 27, 2024, the self-described "board" of STLAP sent an e-mail to the Parish Council urging reforms including "refraining from supporting [Plaintiffs] Taylor, McHugh and Parr, as they are perceived to be responsible for the current crisis."

57. Two days later, STLAP sent another e-mail to the Council urging it to act by "replacing the people who caused the problem which is at a minimum: [Plaintiffs] Taylor, Parr, McHugh." The e-mail was undersigned as the STLAP "Board."

58. At the Parish Council's meeting on March 7, 2024, Defendant Cougle introduced a resolution recapitulating his previous position paper, which falsely asserted that "vacancies exist in all six LBOC positions which are appointed by the Parish Council"; the resolution called for nominations to fill the "vacant" positions.

59. The Parish Council voted to postpone action on Defendant Cougle's resolution, with several members expressing concern about the process, despite Cougle's increasingly exasperated protests that the Council was refusing to "follow the law." He complained that he wanted to introduce the resolution in February but was persuaded to delay it. He also added, "I think most of us already have our nominees. So I would suggest we just move forward."

---

[24] Saint Tammany Parish Code of Ordinances, Part I § 34-1 et *seq*.

60. Several Council members referred obliquely to factions within the community, apparently the "anti-pornography" STLAP and "anti-censorship" Alliance: Council Member Jeff Corbin noted the "issue's been out in the public and addressed for two years" and said he wanted an opportunity to hear from the "two focus groups" on "*either side*" to voice their concerns (emphasis added). He said he reached out to "*both sides*" of "the issue." (emphasis added). "We need a healing process," Council Member Cazaubon said. "We have dealt with this for two years … and we've heard *both sides* and the pain and the agony that *both sides* feel." (emphasis added).  Council Member Phillips asked if the Council could discuss the resolution in executive session. Council Member Rolling said he "understand *both sides* and their passion about this." (emphasis added) He apologized to the public and acknowledged that "we watched it unfold here last year; we've been getting hundreds of e-mails." Council Member O'Brien acknowledged there had been discussion about presentations from "*both sides*." (emphasis added).

61. Thus, the Parish Council implicitly perceived the proposed resolution as a choice between two "sides" of the library controversy—not whether to stagger Library Board members' terms or not, but opposing viewpoints embodied in the two citizens groups, STLAP and the Alliance.

62. Concerned about the potentially biased legal opinion in Defendant Cougle's position paper and resolution, Plaintiff Taylor wrote an e-mail to the Parish District Attorney's Office on March 14, 2024 requesting a legal opinion.  Deputy Civil Division Chief Emily Couvillon responded that she disagreed that the current Library Board members were serving "illegally" and advised that it was "inappropriate to use that term."

63. At the Parish Council's April 7, 2024 meeting, Council Member Tanner moved to introduce a substitute resolution, substantially similar to Defendant Cougle's original resolution, which she said had been "cleaned up."

64. The substitute resolution stated it was necessary to appoint six Library Board members to staggered terms, beginning on June 1, 2024; it called for nominations who would then be voted on at the following month's meeting and assigned to terms by randomly drawn lots.

65. The Parish Council then proceeded to nominate 22 candidates to the Library Board, including the sitting members of the Library Board: Plaintiffs McHugh, Parr, and Taylor, as well as Carmen Butler and Ann Shaw.

66. St. Tammany Parish Assistant District Attorney James Bolner attended the Library Board's next regularly scheduled meeting on April 22, 2024, as its legal advisor. Plaintiff McHugh asked Bolner if he believed the Library Board members were serving "illegally." Bolner replied, "We do not. We have researched the issue … and have looked very carefully at that allegation, and we do not believe that the board members are serving illegally."

67. One week before the Parish Council's most recent meeting, the *Slidell Independent* published a full-page ad asking in blaring red type, "To Our New Parish Council: Will You Protect Our Children?" The ad warned against voting to support "three far-left or liberal board members," which would ensure children access to allow the sexually explicit books they want." The ad provided a list of "approved" conservative candidates and proclaimed that they would "protect our children. WHO WILL YOU VOTE FOR?" The ad asserted anonymously that it was paid for by "Citizens for Common Sense Solutions."

68. During a phone conversation on May 2, 2024, Council Member Corbin told Plaintiff McHugh he was concerned that six ultraconservatives would get onto the Library Board.

69. At the Parish Council's May 2, 2024 meeting, the Council ultimately voted to appoint five of the candidates listed in the ad. During rounds of voting, the Council turned off their microphones and milled about the chamber, exiting and returning to the room, and having off-the-record discussions.

70. During one of the breaks, Defendant Cougle went into the audience section and prayed in a circle with residents attending the meeting, apparent supporters.

71. Following the Plaintiffs' purported ouster from the Library Board, various Parish Council members affirmed publicly that they had appointed individuals they perceived to be more conservative in their political views.

72. During a televised appearance on May 9, 2024, Defendant Cougle boasted that a majority of the Parish Council voted "100 percent" for the list of nominees endorsed by the St. Tammany Parish Republican Party. "The impression is they are probably more conservative," he said. "Now we feel that we've addressed what the people were concerned about."[25]

73. Parish Council Member Rollins told the *Slidell Independent*, "The [Library] Board should be a reflection of our parish, and our parish is definitely very much conservative."[26] Council Member Burke, whom the outlet referred to as a "behind-the-scenes supporter of Cougle" agreed that the new Library Board, "really represents us."[27]

---

[25] Tony Perkins, *David Cougle Shares About St. Tammany Parish Council vote*, Washington Watch with Tony Perkins, May 9, 2024, available at: https://www.youtube.com/watch?v=ZyY3s7MG1Ks

[26] Kevin Chiri, *Criticized Rollins believes vote will bring 'refreshing new day,'* Slidell Independent, May 16, 2024, available at: https://www.slidell-independent.com/criticized-rollins-believes-vote-will-bring-refreshing-new-day/

[27] Kevin Chiri, *'Promises Made, Promises Kept,'* Slidell Independent, May 13, 2024, available at: https://www.slidell-independent.com/promises-made-promises-kept/

74. In the same article, the editor recalled that Council Members Cougle, Burke, and several others had vowed when campaigning for office that they would find a way to bring the board into compliance "with the community standards we have in St. Tammany Parish."

75. The *Slidell Independent* also noted that, while "some observers expected to see one or two of the more liberal board members returned to their positions, that did not turn out to be the case as the council only returned Ann Shaw to the board, the only member who was considered moderate."[28]

76. Nothing in the Library Board's ordinances require a particular political affiliation or viewpoint of its members.[29]

77. The Saint Tammany Parish Code of Ordinances specifically provides that Library Board members' terms "shall be for a period of five years."[30]

78. Nothing in the Library Board's rules and regulations require a particular political affiliation or viewpoint of its members.[31]

79. The Library Board's purpose is "to govern the affairs of the St. Tammany Parish Library according to the applicable statutes and laws, mandates and its own bylaws, as well as the duties assigned by resolutions or ordinances of the St. Tammany Parish Council."[32]

80. The Library Board "oversees the general management of the Library by establishing written policies; employing and/or dismissing the Director; securing adequate funding; approving a budget; providing and maintaining facilities, resources, and services; and endeavoring to continually improve services."[33]

---

[28] *Id*.
[29] Saint Tammany Parish Code of Ordinances, Part I § 34-1 et *seq*.
[30] *Id*. at § 34-2(a).
[31] Library Board of Control Rules and Regulations, available at: https://www.sttammanylibrary.org/wp-content/uploads/sites/44/2024/04/LBOC_RulesAdminstration-4.22.2024.pdf
[32] *Id*. at § 104, "Purpose."
[33] *Id*.

81. Among the Library Board's "Responsibilities and Expectations," as enumerated in its rules, are to: Publicly support Board decisions; Ensure adherence to the Library's mission; Be prepared and actively participate in all meetings; and Be an advocate for the Library.[34]

82. The Library Board's stated mission is "Cultivating discovery, creativity and learning by offering access to resources, programs and services for everyone in a welcoming environment."[35]

## CAUSES OF ACTION

## COUNT ONE

### *First Amendment Retaliation*

83. Plaintiffs hereby reincorporate all of the above paragraphs and allegations of this Complaint as though fully set forth herein.

84. The First Amendment prohibits adverse governmental action taken against individuals in retaliation for their protected speech.

85. Plaintiffs were engaged in protected First Amendment activities in discussing Library Board actions and agenda items; discussing and voting on book challenges; discussing censorship; discussing accessibility and display of items at parish libraries. Their discussions, votes, and actions constitute speech on a matter of important public concern and therefore are accorded a high level of protection from governmental interference.

86. Additionally, Plaintiffs exercised their fundamental constitutional right to speak in other forums, including in public, at Parish Council meetings, and on social media.

---

[34] *Id*. at § 106(F).
[35] Library Board of Control Rules and Regulations, available at: https://www.sttammanylibrary.org/wp-content/uploads/sites/44/2024/04/LBOC_RulesAdminstration-4.22.2024.pdf

87. Plaintiffs' interest in speaking at Library Board meetings outweighs any of Defendants' purported interest in efficiency.

88. Defendant Saint Tammany Parish, through the Parish Council, and Defendant Cougle engaged in adverse action in suggesting, discussing, and passing a resolution to appoint six new Library Board members, replacing Plaintiffs and effectively terminating their duly made appointments to the Library Board.

89. Defendants' actions were taken under color of state law.

90. Defendants' adverse actions were motivated by and taken in retaliation for Plaintiffs' speech, not for another legitimate government reason.

91. The Defendants' actions would chill the speech of ordinary firmness, and in fact have chilled Plaintiffs' speech.

92. As Plaintiffs became aware of the campaign to remove them from the Library Board, they became increasingly circumspect about expressing themselves during official proceedings and any time they appeared in public; they increasingly refrained from speaking and refrained from exercising their freedoms to speak.

93. If the Parish Council's resolution is allowed to take effect, it will have a permanent chilling effect on their speech, most notably by removing them from the Library Board and preventing their speech as members entirely.

94. Accordingly, Defendants have violated Plaintiffs' right to free speech under the federal Constitution.

## COUNT TWO

### *Viewpoint Discrimination under the First Amendment*

95. Plaintiffs hereby reincorporate all of the above paragraphs and allegations of this Complaint as though fully set forth herein.

96. Government may not regulate speech based on its substantive content or the message it conveys.

97. Similarly, viewpoint-based restrictions on speech are per se violative of the First Amendment. Although the government may restrict speech in a limited public forum, it may not do so in discrimination against speech based on viewpoint.

98. Viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."

99. Plaintiffs exercised their fundamental constitutional right to speak at Library Board meetings, expressing their views about Library Board actions and agenda items; by voting on book challenges; by discussing censorship; by discussing accessibility and display of items at parish libraries.

100.    Additionally, Plaintiffs exercised their fundamental constitutional right to speak in other forums, including in public, at Parish Council meetings, and on social media.

101.    Defendants discriminated against the content and viewpoint of Plaintiffs' speech by terminating their appointments to the Library Board.

102.    Defendants' motive in removing Plaintiffs from the Library Board was to silence a particular viewpoint.

103.    Among other things, the Parish Council's actions and decision to remove Plaintiffs from the Library Board constituted "patronage dismissal," dismissing them because of their perceived political affiliation—i.e., that Plaintiffs are "liberal," "left-leaning," or otherwise not "conservative" enough.

104.    Moreover, political affiliation is not an appropriate requirement for the effective performance of a Library Board member.

105.     Defendants' actions were taken under color of state law.

106.     The Defendants' actions would chill the speech of ordinary firmness, and in fact have chilled Plaintiffs' speech.

107.     As Plaintiffs became aware of the campaign to remove them from the Library Board, they became increasingly circumspect about expressing themselves during official proceedings and anytime they appeared in public; they increasingly refrained from speaking and refrained from exercising their freedoms to speak.

108.     If the Parish Council's resolution is allowed to take effect, it will have a permanent chilling effect on their speech, most notably by removing them from the Library Board and preventing their speech as members entirely.

109.     Accordingly, Defendants have violated Plaintiffs' right to free speech under the federal Constitution.

## COUNT THREE

### *Substantive Due Process under the Fourteenth Amendment*

110.     Plaintiffs hereby reincorporate all of the above paragraphs and allegations of this Complaint as though fully set forth herein.

111.     Although their positions on the Library Board are voluntary appointments, Plaintiffs have a liberty interest in those positions that was implicated in the Parish Council's actions to remove them.

112.     Plaintiffs were terminated based on various false charges that were publicized, i.e. that they are liberal, activist, members of a political conspiracy to sexualize children. Additionally, they were alleged to be supporters of providing access to pornography, among other scurrilous accusations.

113.     These allegations were well-publicized in Saint Tammany Parish and nationally.

114.     These allegations were stigmatizing and seriously damaging to their professional standing and reputation in the community and affect their ability to pursue further public service.

115.     Defendants failed to refute these untrue allegations, failed to protect Plaintiffs' professional standing and reputation, and failed to redress the damages caused to them by the false charges of Cougle and others.

116.     Defendants failed to provide a "name-clearing" hearing or process to mitigate or repair the stigmatizing damage done to Plaintiffs' reputations in the community.

117.     Defendants terminated Plaintiffs' positions on the Library Board without providing them due process of law to refute and redress these unfounded and untrue charges.

## COUNT FOUR

### *Violation of Article I, § 7 of the Louisiana Constitution*

118.     Plaintiffs hereby reincorporate all of the above paragraphs and allegations of this Complaint as though fully set forth herein.

119.     Under the Louisiana Constitution, "No law shall curtail or restrain the freedom of speech or the press. Every person may write, speak, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

120.     Plaintiffs exercised their fundamental rights to freedom of speech as afforded by the Louisiana Constitution by speaking out about issues of public concern.

121.     Defendants intentionally and willfully retaliated against Plaintiffs for exercising their freedom of speech and association by acting to terminate their appointments to the Library Board.

122.     Defendants' retaliatory conduct as described above was substantially motivated by Plaintiffs' exercise of freedom of speech and association.

123.     Defendants' conduct violated Plaintiffs' clearly established rights.

WHEREFORE, on the basis of the foregoing, Plaintiffs pray that this Court/seek the following:

(1) Issue an Order that Defendant's actions and policies, embodied in the Resolution, are an unconstitutional violation of Plaintiffs' rights as secured under the free speech clause of the First Amendment of the United States Constitution, due process clause of the Fourteenth Amendment of the United States Constitution, and Article I, §7 (freedom of expression) of the Louisiana Constitution;

(2) Enjoin Defendant, its officers, agents, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, from enforcing the Resolution and/or terminating Plaintiffs' appointments to the Library Board;

(3) Grant reasonable attorney's fees and legal costs to Plaintiffs as permitted by law; and

(4) Grant such other and further relief as may be deemed necessary or proper.

124.     Plaintiffs state any and all other causes of action may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this court may deem equitable.

125.     Plaintiffs reserve the right to notice of defect to this pleading and reserve the right

to amend or supplement this Complaint after discovery of any additional fact, law, or

claim, the amendment of which to be performed by the filing of any subsequent pleading.


**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**


Respectfully submitted by:

/s/ *Bruce Hamilton*
Bruce Hamilton, La. Bar No. 33170
Warfield Hamilton Law, LLC
725 Hagan Avenue
New Orleans, Louisiana 70119
Telephone: (504) 507-0816
Email: WarfieldHamiltonLaw@Gmail.com