# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**WILLIAM R. MCHUGH, III, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                                              **NO. 24-1300**

**ST. TAMMANY PARISH, ET AL.**                    **SECTION "O"**

## ORDER AND REASONS

Before the Court is the Federal Rule of Civil Procedure 12(b)(6) motion[1] of Defendant David Cougle, in his official capacity as a member of the St. Tammany Parish Council, to dismiss the 42 U.S.C. § 1983 claims for prospective declaratory and injunctive relief that Plaintiffs William R. McHugh, III, Anthony Parr, and Rebecca Taylor assert against him. Cougle contends that Plaintiffs fail to state Section 1983 claims against him because he enjoys absolute legislative immunity. But personal immunities—including absolute legislative immunity—are defenses to individual-capacity claims for damages; they are not defenses to Plaintiffs' official-capacity claims for prospective equitable relief. Cougle also contends that Plaintiffs' official-capacity claims are redundant of the official-capacity claims against Defendant St. Tammany Parish. But deciding to dismiss redundant claims is discretionary, and Cougle has not persuaded the Court that it should exercise its discretion to dismiss the official-capacity claims against him as redundant at this early stage. Accordingly, for these reasons and for those that follow, Cougle's motion to dismiss is **DENIED**.

---

[1] ECF No. 21

## I.   BACKGROUND

This civil-rights case arises from Plaintiffs' claim that the St. Tammany Parish Council violated the First Amendment, the Fourteenth Amendment, and the Louisiana Constitution by issuing a May 2, 2024 resolution (the "Resolution") terminating Plaintiffs' five-year, fixed-term appointments to the St. Tammany Parish Library Board of Control (the "Library Board") and appointing five[2] new Library Board members.[3] Plaintiffs generally claim that the St. Tammany Parish Council issued the Resolution in retaliation for protected speech Plaintiffs made during Library Board meetings on the topic of minors' access to Lesbian, Gay, Bisexual, Transgender, and Queer ("LGBTQ") literature at St. Tammany Parish libraries.[4]

Plaintiffs William R. McHugh, III, Anthony Parr, and Rebecca Taylor allege that they are appointed members of the Library Board[5] serving five-year, fixed terms that ended on June 1, 2024. According to the complaint, six of the Library Board's seven members are appointed by the St. Tammany Parish Council, the legislative arm of St. Tammany Parish government.[6] Plaintiffs allege that the St. Tammany Parish Council appointed Plaintiff McHugh to the Library Board on June 1, 2023 for a five-year term expiring on August 4, 2027;[7] that the Parish Council appointed Plaintiff Parr on June 1, 2023 for a five-year term expiring on July 12, 2027;[8] and

---

[2] One of the Library Board's six Parish Council-appointed members, Ann Shaw, was reappointed via the May 2 Resolution. *See* ECF No. 13-1 at 1. Thus, the Resolution resulted in the appointment of five new Library Board members.
[3] *See generally* ECF No. 1.
[4] *See, e.g., id.* at ¶ 88.
[5] *Id.* at ¶¶ 1–3.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 1.
[8] *Id.* at ¶ 2.

that the Parish Council appointed Plaintiff Taylor on July 7, 2022 for a five-year term expiring on July 12, 2027.[9] According to the complaint, Parr is the Library Board's "secretary/treasurer,"[10] and Taylor is the Library Board's president.[11]

Plaintiffs allege that the May 2024 termination of their appointments to the Library Board represents the culmination of "a firestorm of controversy" that began in June 2022.[12] Then, three of St. Tammany Parish's twelve library branches—the Slidell, Madisonville, and Mandeville branches—featured displays announcing "Pride Month," "an annual commemoration of primarily [LGBTQ] pride."[13] According to Plaintiffs' complaint, "one display in the children's section at the Mandeville branch library prompted complaints from patrons concerned about their children's exposure to the materials."[14] Per Plaintiffs, "a near-capacity crowd offered widespread support for the Pride displays" at a Library Board meeting in July 2022.[15]

After that July 2022 meeting, according to Plaintiffs, "[t]he controversy shifted" from Pride displays to books "featuring LGBTQ themes."[16] Plaintiffs allege that St. Tammany Parish residents formed the St. Tammany Library Accountability Project, "an advocacy organization" with a "purported mission to prevent the sexual exploitation of children."[17] Defendant David Cougle is a co-founder of the St.

---

[9] *Id.* at ¶ 3.
[10] *Id.* at ¶ 2.
[11] *Id.* at ¶ 3.
[12] *Id.* at ¶¶ 8–9.
[13] *Id.* at ¶ 8 (internal quotation marks and footnote omitted).
[14] *Id.* at ¶ 10.
[15] *Id.* at ¶ 13.
[16] *Id.* at ¶ 14.
[17] *Id.* at ¶ 15 (internal quotation marks omitted).

Tammany Library Accountability Project.[18] Plaintiffs allege that Cougle leveraged "the issue of library materials" to win election to the St. Tammany Parish Council.[19]

According to the complaint, between summer 2022 and his election to the St. Tammany Parish Council in October 2023, Cougle repeatedly denounced the Library Board and its handling of the issue of minors' access to LGBTQ literature that Cougle and the St. Tammany Library Accountability Project deemed "sexually explicit" or "pedophilic."[20] Among other things, Plaintiffs allege that Cougle launched an online petition titled "Stop the Saint Tammany Parish Library System's Sexual Exploitation of Children!";[21] that Cougle later updated the online petition to announce his candidacy for Parish Council and to promise that, if elected, he would "do everything in [his] power to solve the library crisis[]";[22] that Cougle called the St. Tammany Parish Library System's administration "predatory"[23]; that Cougle vowed to "remove [L]ibrary [B]oard members that refused to accept community standards" if Cougle were elected to the Parish Council;[24] and that Cougle criticized what Cougle perceived to be the "liberal" and "far-left" political affiliation of the Library Board.[25]

According to the complaint, the current members of the St. Tammany Parish Council—including Cougle—won election in October 2023.[26] Plaintiffs allege that the October 2023 Parish Council "election swept nine new members into power," and that

---

[18] *Id.* at ¶ 16.

[19] *Id.*

[20] *See, e.g.*, *id.* at ¶¶ 18, 21, 23, 31, 33 (internal quotation marks omitted).

[21] *Id.* at ¶ 28 (internal quotation marks omitted).

[22] *Id.* at ¶ 34 (internal quotation marks omitted).

[23] *Id.* at ¶ 31 (internal quotation marks omitted).

[24] *Id.* at ¶ 42 (internal quotation marks omitted).

[25] *See, e.g.*, *id.* at ¶¶ 42, 44 (internal quotation marks omitted).

[26] *Id.* at ¶ 46.

"only four of the current 14 Council members were previous incumbents."[27] The current Parish Council took office in January 2024.[28]

After Cougle and the other current members of the Parish Council took office, in late January 2024, Cougle allegedly wrote a position paper claiming that the Library Board appointments were "not in compliance with state law."[29] According to the complaint, Cougle contended that Section 25:214 of the Louisiana Revised Statutes requires staggered terms for Library Board appointments, and that because the appointees were not serving staggered terms, the appointments were "invalid."[30] Cougle allegedly claimed that the existing seats on the Library Board "were deemed vacant," and "urged the Parish Council to declare existing [Library Board] members' terms expired, and to nominate candidates for appointment to a staggered term[.]"[31]

According to the complaint, in February 2024, the St. Tammany Parish Library Accountability Project urged the St. Tammany Parish Council to "refrain[] from supporting" Plaintiffs, who the Project "perceived to be responsible for the current crisis."[32] A few days later, according to Plaintiffs' complaint, the St. Tammany Parish Library Accountability Project urged the St. Tammany Parish Council to "replac[e] the people who caused the problem," i.e., Plaintiffs.[33]

In March 2024, according to Plaintiffs, Cougle introduced a Parish Council resolution calling for nominations to fill the Library Board positions that Cougle's

---

[27] *Id.*
[28] *Id.* at ¶ 49.
[29] *Id.* at ¶ 51 (internal quotation marks omitted).
[30] *Id.*
[31] *Id.* at ¶ 52.
[32] *Id.* at ¶ 56 (internal quotation marks omitted).
[33] *Id.* at ¶ 57 (internal quotation marks omitted).

position paper had declared "vacant."[34] Plaintiffs allege that the Parish Council voted to postpone action on Cougle's resolution;[35] however, at a Parish Council meeting the next month, in April 2024, another Parish Council member introduced a "substantially similar" substitute resolution.[36] The substitute resolution called for (1) the appointment of six Library Board members to staggered terms that would start on June 1, 2024, and (2) Library Board nominations who would be voted on at the May 2, 2024 meeting and whose staggered terms would be assigned by randomly drawn lots.[37] Consistent with the substitute resolution, Plaintiffs allege, the Parish Council nominated 22 candidates to the Library Board, including Plaintiffs and the other then-sitting members of the Library Board, Carmen Butler and Ann Shaw.[38]

According to the complaint, on May 2, 2024, the Parish Council issued the Resolution reflecting the Council's vote not to appoint Plaintiffs to the Library Board.[39] Rather than reappointing Plaintiffs, the Parish Council voted to appoint five candidates that had been endorsed as "approved conservative candidates" who "would protect our children" in an ad that ran in the *Slidell Independent* the week before the Parish Council meeting.[40] Besides those five candidates, one sitting Library Board member, Ann Shaw, was reappointed to the Library Board.[41] The Resolution described these staggered appointments as "necessary" "[i]n order to comply with

---

[34] *Id.* at ¶ 58 (internal quotation marks omitted).
[35] *Id.* at ¶ 59.
[36] *Id.* at ¶ 63.
[37] *Id.* at ¶ 64.
[38] *Id.* at ¶ 65.
[39] *Id.* at ¶ 69; *see also* ECF No. 13-1 at 1–2.
[40] ECF No. 1 at ¶¶ 67, 69 (internal quotation marks omitted).
[41] ECF No. 13-1 at 1.

state law," specifically "La. R.S. 25:214(B)."[42]

Eighteen days after the St. Tammany Parish Council issued the Resolution appointing Plaintiffs' replacements, on May 20, 2024, Plaintiffs brought this 42 U.S.C. § 1983 lawsuit in this Court.[43] Plaintiffs sued St. Tammany Parish and Cougle, in his official capacity as a member of the St. Tammany Parish Council.[44] In their complaint, Plaintiffs allege four causes of action (1) First Amendment retaliation;[45] (2) viewpoint discrimination under the First Amendment;[46] (3) substantive-due-process violations under the Fourteenth Amendment;[47] and (4) violations of the free-speech rights enshrined in Article I, § 7 of the Louisiana Constitution.[48] Plaintiffs seek attorney's fees and costs under 42 U.S.C. § 1988 and "declaratory relief and an injunction barring enforcement" of the Resolution.[49] Plaintiffs do not seek damages.[50]

As for the First Amendment retaliation claim, Plaintiffs allege that they "engaged in protected First Amendment activities" when they "discuss[ed] Library Board actions and agenda items; discuss[ed] and vot[ed] on book challenges; discuss[ed] censorship; [and] discuss[ed] accessibility and display of items at parish libraries."[51] Plaintiffs allege that St. Tammany Parish and Cougle "engaged in adverse action [against Plaintiffs] in suggesting, discussing, and passing [the

---

[42] *Id.*
[43] *See generally* ECF No. 1.
[44] *Id.* at ¶¶ 4, 7.
[45] *Id.* at ¶¶ 83–94.
[46] *Id.* at ¶¶ 95–109.
[47] *Id.* at ¶¶ 110–117.
[48] *Id.* at ¶¶ 118–123.
[49] *Id.* at 1 (unnumbered opening paragraph).
[50] *Id.* at 24 (unnumbered "wherefore" clause).
[51] *Id.* at ¶ 85.

Resolution] to appoint six new Library Board members, replacing Plaintiffs and effectively terminating their duly made appointments to the Library Board."[52] And Plaintiffs allege that those "adverse actions were motivated by and taken in retaliation for Plaintiffs' speech, not for another legitimate government reason."[53]

As for the viewpoint-discrimination claim, Plaintiffs allege that they "exercised their fundamental constitutional right to speak at Library Board meetings[] [by] expressing their views about Library Board actions and agenda items; by voting on book challenges; by discussing censorship; [and] by discussing accessibility and display of items at parish libraries."[54] Plaintiffs allege that "Defendants discriminated against the content and viewpoint of Plaintiffs' speech by terminating their appointments to the Library Board."[55] And Plaintiffs allege that "Defendants' motive in removing Plaintiffs from the Library Board was to silence a particular viewpoint."[56]

As for the substantive-due-process claim under the Fourteenth Amendment, Plaintiffs allege that they "have a liberty interest" in their unpaid, voluntary appointments to the Library Board that "was implicated in the Parish Council's actions to remove them."[57] Plaintiffs allege that the Parish Council terminated their appointments "based on various false charges that were publicized, i.e., that they are liberal, activist, members of a political conspiracy to sexualize children."[58] According to Plaintiffs, "Defendants failed to refute these untrue allegations, failed to protect

---

[52] *Id.* at ¶ 88.
[53] *Id.* at ¶ 90.
[54] *Id.* at ¶ 99.
[55] *Id.* at ¶101.
[56] *Id.* at ¶ 102.
[57] *Id.* at ¶ 111.
[58] *Id.* at ¶ 112.

Plaintiffs' professional standing and reputation, and failed to redress the damages caused to them by the false charges of Cougle and others."[59] Plaintiffs ultimately allege that "Defendants terminated Plaintiffs' positions . . . without providing them due process of law to refute and redress these unfounded and untrue charges."[60]

Finally, as for the fourth and final claim—a free-speech claim under Article I, § 7 of the Louisiana Constitution—Plaintiffs allege that "Defendants intentionally and willfully retaliated against Plaintiffs for exercising their freedom of speech and association by acting to terminate their appointments to the Library Board."[61]

On the same day Plaintiffs filed this lawsuit, Plaintiffs moved for a temporary restraining order and a preliminary injunction prohibiting Defendants from enforcing the Resolution.[62] In that May 20 motion, Plaintiffs asked the Court to issue injunctive relief before June 1, when the terms of the Library Board members appointed through the St. Tammany Parish Council's May 2 Resolution would begin.[63] Plaintiffs did not submit any evidence supporting the motion for a temporary restraining order.[64]

On May 31, two days after oral argument,[65] the Court denied the motion for a temporary restraining order.[66] The Court concluded that "Plaintiffs ha[d] not carried their heavy burden to prove an unequivocal need for issuance of a temporary restraining order by June 1, 2024."[67] "Specifically," the Court concluded that

---

[59] *Id.* at ¶ 115.
[60] *Id.* at ¶117.
[61] *Id.* at ¶ 121.
[62] ECF No. 3.
[63] ECF No. 3-1 at 20.
[64] ECF Nos. 3 (motion); 3-1 (supporting memorandum); 3-2 (proposed order).
[65] *See* ECF No. 16 (minute entry).
[66] ECF No. 17.
[67] *Id.* at 1.

"Plaintiffs ha[d] not shown a substantial threat of irreparable injury if the new Library Board members appointed on May 2 begin their terms on June 1, considering the first meeting of the new Library Board purportedly will not occur until July 22."[68] Importantly, however, the Court "emphasize[d] that its conclusion and analysis [were] based on the limited briefing and the lack of evidence before it, and that the Court's preliminary-injunction analysis could depart sharply from the necessarily abbreviated analysis offered" in the opinion denying a temporary restraining order.[69]

Five days later, on June 5, the Court consolidated the hearing on Plaintiffs' motion for a preliminary injunction with a bench trial on the merits of the action under Federal Rule of Civil Procedure 65(a)(2).[70] The Court's minute entry and order provided the parties "clear and unambiguous notice of the [C]ourt's intent to consolidate the trial and the hearing . . . at a time which still afford[ed] the parties a full opportunity to present their respective cases." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations, quotation marks, and brackets omitted). No party objected to consolidation. The bench trial is scheduled to start on July 8.[71]

Now, Cougle moves to dismiss the claims against him for failure to state a claim under Rule 12(b)(6).[72] Plaintiffs oppose.[73] Cougle elected not to file a reply.[74]

---

[68] *Id.*
[69] *Id.* at 12.
[70] ECF No. 18 at 2.
[71] *Id.*
[72] ECF No. 21.
[73] ECF No. 28.
[74] *See generally* Docket, E.D. La. No. 24-CV-1300 (last visited June 24, 2024).

## II.   LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

### III.  ANALYSIS

Cougle moves to dismiss the official-capacity Section 1983 claims against him for failure to state a claim.[75] He makes two principal arguments.[76] First, Cougle contends that Plaintiffs fail to state any official-capacity claims against him because he enjoys absolute legislative immunity.[77] Second, Cougle contends that Plaintiffs' official-capacity claims against him are redundant of Plaintiffs' official-capacity claims against St. Tammany Parish.[78] The Court takes each argument in turn.

### A.    Absolute Legislative Immunity

Cougle contends that Plaintiffs fail to state Section 1983 claims against him because he enjoys absolute legislative immunity.[79] The Supreme Court has "held that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (citations omitted). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Id.* at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Cougle's legislative-immunity argument proceeds in three steps. First, Cougle reasons that "[t]he act which allegedly resulted in the Plaintiffs' injuries" is the St. Tammany Parish Council's passage of the Resolution.[80] Second, Cougle reasons that passing the Resolution is a legislative act.[81] And third, because passing the Resolution is a legislative act, Cougle reasons that he "cannot be found

---

[75] ECF No. 21.
[76] ECF No. 21-1 at 1–10.
[77] *Id.* at 5–8.
[78] *Id.* at 8–10.
[79] *Id.* at 5–8.
[80] *Id.* at 4.
[81] *Id.* at 5–8.

liable under [Section] 1983 for acts done in connection with the" Resolution.[82]

But Cougle's  argument overlooks both the capacity in which he has been sued and the form of relief Plaintiffs seek. Plaintiffs sued Cougle in his official capacity as a member of the St. Tammany Parish Council,[83] and Plaintiffs seek injunctive and declaratory relief—not money damages—against him.[84] "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citation omitted). "Unlike government officials sued in their individual capacities, municipal entities and local governing bodies," like St. Tammany Parish, "do not enjoy immunity from suit, either absolute or qualified, under § 1983." *Id.* (citation omitted). "Consequently," courts may not properly dismiss a claim against someone acting in an official capacity based on absolute immunity "because that form of personal or individual immunity is not available in an official capacity suit." *Id.* at 467 (citation omitted). Indeed, "[a]bsolute and qualified immunity protect only *individuals* from claims for *damages*; they do not bar official-capacity claims or claims for injunctive relief." *Singleton v. Cannizzaro*, 956 F.3d 773, 778 n.3 (5th Cir. 2020) (italics in original) (citation and quotation marks omitted); *see also, e.g., Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) ("Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983.").

---

[82] *Id.* at 5 (capitalization removed)
[83] ECF No. 1 at ¶ 7.
[84] *Id.* at 24 (unnumbered "wherefore" clause).

Cougle is not entitled to absolute legislative immunity for two independent reasons. First, Plaintiffs sued Cougle in his official capacity.[85] *See Burge*, 187 F.3d at 466–67; *Singleton*, 956 F.3d at 778 n.3. And second, Plaintiffs seek declaratory and injunctive relief against him.[86] *See Chrissy F. by Medley*, 925 F.2d at 849. So, absolute legislative immunity poses no bar to the official-capacity claims against Cougle for injunctive and declaratory relief. *See Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (holding that parish council members in their official capacities did not enjoy absolute legislative immunity). The Court denies Cougle's motion to dismiss based on absolute legislative immunity.[87]

## B.    Redundancy

Cougle next contends that the Court should dismiss the official-capacity claims against him because they are redundant of the claims against St. Tammany Parish. It is true that the official-capacity claims against Cougle are, "in all respects other than name, to be treated as [claims] against" St. Tammany Parish. *Jefferson Cmty. Health Care Ctrs., Inc.*, 849 F.3d at 624 (citations and quotation marks omitted). And it is true that the Court has discretion to dismiss official-capacity claims as redundant if they "seek identical relief as claims against a governmental entity." *Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F. Supp. 3d 919, 928 (E.D. La. 2017) (citation omitted).

---

[85] *Id.* at ¶ 7.

[86] *Id.* at 24 (unnumbered "wherefore" clause).

[87] Because the Court concludes that Cougle does not enjoy absolute legislative immunity given (1) the official capacity in which he has been sued and (2) the equitable and declaratory relief that Plaintiffs seek against him, the Court need not—and so the Court does not—reach the merits of Cougle's absolute-legislative-immunity argument. *See* ECF No. 21-1 at 4–8.

But dismissing official-capacity claims as redundant is discretionary; it is not required. *See, e.g.*, *Owens v. District of Columbia*, 631 F. Supp. 2d 48, 54 (D.D.C. 2009) (observing that "there is no requirement" that an official-capacity claim against a government official be dismissed as redundant of the claim against the government entity); *Roy v. Cnty. of Los Angeles*, 114 F. Supp. 3d 1030, 1047 (C.D. Cal. 2015) (concluding that the "permissive, not mandatory," language used in "cases discussing dismissal of redundant defendants" "suggest[s] that dismissal of official capacity suits is not required" (citations omitted)). After all, Rule 12(b)(6) motions ask whether a complaint contains well-pleaded factual allegations sufficient to state a plausible claim for relief; a claim that is redundant does not necessarily fail Rule 8(a)(2)'s pleading standard. *See generally, e.g.*, *Crighton v. Schuylkill Cnty.*, 882 F. Supp. 411, 415 (E.D. Pa. 1995) (distinguishing a redundant claim from a claim that should be dismissed under Rule 12(b)(6)). And Cougle, for his part, cites no binding precedent supporting the proposition that the Court *must* dismiss the official-capacity claims against him if the Court determines that those claims are indeed redundant.[88]

What is more, courts often decline to exercise their discretion to dismiss as redundant official-capacity claims for prospective injunctive relief against

---

[88] *See* ECF No. 21-1 at 1–10. Cougle cites three district-court opinions, *see id.* at 9, but none of them addresses a situation like this one: a Rule 12(b)(6) motion to dismiss as redundant official-capacity claims for prospective injunctive relief against an independently elected official who is alleged to have engaged in specific misconduct culminating in the alleged constitutional violations that form the basis of Section 1983 claims. *See, e.g.*, *Rogers v. Smith*, 603 F. Supp. 3d 295, 303 (E.D. La. 2022) (dismissing official-capacity claims asserted against sheriff's office employees as redundant of claims asserted against sheriff); *Baqer v. St. Tammany Par. Gov't*, No. 20-CV-980, 2021 WL 1090866, at *8 (E.D. La. Mar. 22, 2021) (dismissing official-capacity claims asserted against a former sheriff and a former warden as redundant of the claims asserted against the government entity); *Muslow v. Bd. of Supervisors of La. State Univ.*, No. 19-CV-11793, 2020 WL 1864876, at *12 (E.D. La. Apr. 14, 2020) (dismissing official-capacity claims asserted against state officials as barred by sovereign immunity).

15

government officials. *See, e.g.*, *Barnett v. Baldwin Cnty. Bd. of Educ.*, 60 F. Supp. 3d 1216, 1235–36 (S.D. Ala. 2014) (declining to dismiss official-capacity claims for prospective injunctive relief asserted against members of a county board of education as redundant of the claims asserted against the board itself). That is particularly true where, as here, the official-capacity request for injunctive relief is asserted against an elected official who is alleged to have played a "central role" in the case. *See, e.g.*, *Mille Lacs Band of Ojibwe v. Cnty. Of Mille Lacs, Minn.*, 650 F. Supp. 3d 690, 708–11 (D. Minn. 2023) (declining to dismiss official-capacity claims for injunctive relief asserted against county officials as redundant of the claims asserted against the county where the officials were "the primary actors" who played a "central role" in the case, and it was "not entirely clear" whether the officials were county employees).

Ultimately, Cougle has not carried his burden to persuade the Court that it should exercise its discretion to dismiss the official-capacity claims against him as redundant of the claims against St. Tammany Parish at this Rule 12 stage. As noted, Plaintiffs seek prospective injunctive relief against Cougle,[89] and Plaintiffs have alleged specific wrongdoing by Cougle culminating in the passage of the Resolution and thus the alleged violation of Plaintiffs' constitutional rights.[90] Moreover, Cougle is not a St. Tammany Parish employee; he is an independently elected member of the St. Tammany Parish Council. To that end, neither Cougle nor St. Tammany Parish has represented that Cougle, in his official capacity, would be bound by an injunction issued against St. Tammany Parish only. *See* FED. R. CIV. P. 65(d)(2) (providing

---

[89] ECF No. 1 at 24 (unnumbered "wherefore" clause).
[90] *See, e.g.*, *id.* at ¶¶ 27, 28, 29, 31, 33, 34, 42–46, 50–53, 58–59, 62–63, 70, 72–74, 88, 115.

that an injunction binds (A) the parties; (B) officers, agents, servants, employees, and attorneys of the parties; and (C) others "in active concert or participation with" the parties or their officers, agents, servants, employees, and attorneys). And given Defendants' silence on that point, it is unclear whether St. Tammany Parish has the power to compel Cougle to comply with an injunction against St. Tammany Parish. So, the Court denies Cougle's motion to dismiss the claims against him as redundant.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Cougle's motion[91] to dismiss is **DENIED**.

New Orleans, Louisiana, this 25th day of June, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[91] ECF No. 21.