## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILLIAM R. MCHUGH, III, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 24-1300**

**ST. TAMMANY PARISH, ET AL.**                    **SECTION "O"**

## ORDER AND REASONS

Before the Court is the Federal Rule of Civil Procedure 12(b)(6) motion[1] of Defendant St. Tammany Parish to dismiss the claims of Plaintiffs William R. McHugh, III, Anthony Parr, and Rebecca Taylor. St. Tammany Parish contends that Plaintiffs fail to plead plausible claims for (A) First Amendment retaliation, (B) viewpoint discrimination, (C) violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and (D) violations of free-speech rights under Article I, Section 7 of the Louisiana Constitution. But the Parish's arguments do not merit dismissal of Plaintiffs' claims on the pleadings. Accordingly, for the reasons that follow, St. Tammany Parish's motion to dismiss is **DENIED**.

---

[1] ECF No. 32

## I.   BACKGROUND

This civil-rights case arises from Plaintiffs' claim that the St. Tammany Parish Council violated the First Amendment, the Fourteenth Amendment, and the Louisiana Constitution by issuing a May 2, 2024 resolution (the "Resolution") terminating Plaintiffs' five-year, fixed-term appointments to the St. Tammany Parish Library Board of Control (the "Library Board") and appointing five[2] new Library Board members.[3] Plaintiffs generally claim that the St. Tammany Parish Council issued the Resolution in retaliation for protected speech Plaintiffs made during Library Board meetings on the topic of minors' access to Lesbian, Gay, Bisexual, Transgender, and Queer ("LGBTQ") literature at St. Tammany Parish libraries.[4]

Plaintiffs William R. McHugh, III, Anthony Parr, and Rebecca Taylor allege that they are appointed members of the Library Board[5] serving five-year, fixed terms that ended on June 1, 2024. According to the complaint, six of the Library Board's seven members are appointed by the St. Tammany Parish Council, the legislative arm of St. Tammany Parish government.[6] Plaintiffs allege that the St. Tammany Parish Council appointed Plaintiff McHugh to the Library Board on June 1, 2023 for a five-year term expiring on August 4, 2027;[7] that the Parish Council appointed Plaintiff Parr on June 1, 2023 for a five-year term expiring on July 12, 2027;[8] and

---

[2] One of the Library Board's six Parish Council-appointed members, Ann Shaw, was reappointed via the May 2 Resolution. *See* ECF No. 13-1 at 1. Thus, the Resolution resulted in the appointment of five new Library Board members.

[3] *See generally* ECF No. 1.

[4] *See, e.g., id.* at ¶ 88.

[5] *Id.* at ¶¶ 1–3.

[6] *Id.* at ¶ 5.

[7] *Id.* at ¶ 1.

[8] *Id.* at ¶ 2.

that the Parish Council appointed Plaintiff Taylor on July 7, 2022 for a five-year term expiring on July 12, 2027.[9] According to the complaint, Parr is the Library Board's "secretary/treasurer,"[10] and Taylor is the Library Board's president.[11]

Plaintiffs allege that the May 2024 termination of their appointments to the Library Board represents the culmination of "a firestorm of controversy" that began in June 2022.[12] Then, three of St. Tammany Parish's twelve library branches—the Slidell, Madisonville, and Mandeville branches—featured displays announcing "Pride Month," "an annual commemoration of primarily [LGBTQ] pride."[13] According to Plaintiffs' complaint, "one display in the children's section at the Mandeville branch library prompted complaints from patrons concerned about their children's exposure to the materials."[14] Per Plaintiffs, "a near-capacity crowd offered widespread support for the Pride displays" at a Library Board meeting in July 2022.[15]

After that July 2022 meeting, according to Plaintiffs, "[t]he controversy shifted" from Pride displays to books "featuring LGBTQ themes."[16] Plaintiffs allege that St. Tammany Parish residents formed the St. Tammany Library Accountability Project, "an advocacy organization" with a "purported mission to prevent the sexual exploitation of children."[17] Defendant David Cougle is a co-founder of the St.

---

[9] *Id.* at ¶ 3.
[10] *Id.* at ¶ 2.
[11] *Id.* at ¶ 3.
[12] *Id.* at ¶¶ 8–9.
[13] *Id.* at ¶ 8 (internal quotation marks and footnote omitted).
[14] *Id.* at ¶ 10.
[15] *Id.* at ¶ 13.
[16] *Id.* at ¶ 14.
[17] *Id.* at ¶ 15 (internal quotation marks omitted).

Tammany Library Accountability Project.[18] Plaintiffs allege that Cougle leveraged "the issue of library materials" to win election to the St. Tammany Parish Council.[19]

According to the complaint, between summer 2022 and his election to the St. Tammany Parish Council in October 2023, Cougle repeatedly denounced the Library Board and its handling of the issue of minors' access to LGBTQ literature that Cougle and the St. Tammany Library Accountability Project deemed "sexually explicit" or "pedophilic."[20] Among other things, Plaintiffs allege that Cougle launched an online petition titled "Stop the Saint Tammany Parish Library System's Sexual Exploitation of Children!";[21] that Cougle later updated the online petition to announce his candidacy for Parish Council and to promise that, if elected, he would "do everything in [his] power to solve the library crisis[]";[22] that Cougle called the St. Tammany Parish Library System's administration "predatory"[23]; that Cougle vowed to "remove [L]ibrary [B]oard members that refused to accept community standards" if Cougle were elected to the Parish Council;[24] and that Cougle criticized what Cougle perceived to be the "liberal" and "far-left" political affiliation of the Library Board.[25]

According to the complaint, the current members of the St. Tammany Parish Council—including Cougle—won election in October 2023.[26] Plaintiffs allege that the October 2023 Parish Council "election swept nine new members into power," and that

---

[18] *Id.* at ¶ 16.
[19] *Id.*
[20] *See, e.g.*, *id.* at ¶¶ 18, 21, 23, 31, 33 (internal quotation marks omitted).
[21] *Id.* at ¶ 28 (internal quotation marks omitted).
[22] *Id.* at ¶ 34 (internal quotation marks omitted).
[23] *Id.* at ¶ 31 (internal quotation marks omitted).
[24] *Id.* at ¶ 42 (internal quotation marks omitted).
[25] *See, e.g.*, *id.* at ¶¶ 42, 44 (internal quotation marks omitted).
[26] *Id.* at ¶ 46.

"only four of the current 14 Council members were previous incumbents."[27] The current Parish Council took office in January 2024.[28]

After Cougle and the other current members of the Parish Council took office, in late January 2024, Cougle allegedly wrote a position paper claiming that the Library Board appointments were "not in compliance with state law."[29] According to the complaint, Cougle contended that Section 25:214 of the Louisiana Revised Statutes requires staggered terms for Library Board appointments, and that because the appointees were not serving staggered terms, the appointments were "invalid."[30] Cougle allegedly claimed that the existing seats on the Library Board "were deemed vacant," and "urged the Parish Council to declare existing [Library Board] members' terms expired, and to nominate candidates for appointment to a staggered term[.]"[31]

According to the complaint, in February 2024, the St. Tammany Parish Library Accountability Project urged the St. Tammany Parish Council to "refrain[] from supporting" Plaintiffs, who the Project "perceived to be responsible for the current crisis."[32] A few days later, according to Plaintiffs' complaint, the St. Tammany Parish Library Accountability Project urged the St. Tammany Parish Council to "replac[e] the people who caused the problem," i.e., Plaintiffs.[33]

In March 2024, according to Plaintiffs, Cougle introduced a Parish Council resolution calling for nominations to fill the Library Board positions that Cougle's

[27] *Id.*
[28] *Id.* at ¶ 49.
[29] *Id.* at ¶ 51 (internal quotation marks omitted).
[30] *Id.*
[31] *Id.* at ¶ 52.
[32] *Id.* at ¶ 56 (internal quotation marks omitted).
[33] *Id.* at ¶ 57 (internal quotation marks omitted).

position paper had declared "vacant."[34] Plaintiffs allege that the Parish Council voted to postpone action on Cougle's resolution;[35] however, at a Parish Council meeting the next month, in April 2024, another Parish Council member introduced a "substantially similar" substitute resolution.[36] The substitute resolution called for (1) the appointment of six Library Board members to staggered terms that would start on June 1, 2024, and (2) Library Board nominations who would be voted on at the May 2, 2024 meeting and whose staggered terms would be assigned by randomly drawn lots.[37] Consistent with the substitute resolution, Plaintiffs allege, the Parish Council nominated 22 candidates to the Library Board, including Plaintiffs and the other then-sitting members of the Library Board, Carmen Butler and Ann Shaw.[38]

According to the complaint, on May 2, 2024, the Parish Council issued the Resolution reflecting the Council's vote not to appoint Plaintiffs to the Library Board.[39] Rather than reappointing Plaintiffs, the Parish Council voted to appoint five candidates that had been endorsed as "approved conservative candidates" who "would protect our children" in an ad that ran in the *Slidell Independent* the week before the Parish Council meeting.[40] Besides those five candidates, one sitting Library Board member, Ann Shaw, was reappointed to the Library Board.[41] The Resolution described these staggered appointments as "necessary" "[i]n order to comply with

---

[34] *Id.* at ¶ 58 (internal quotation marks omitted).
[35] *Id.* at ¶ 59.
[36] *Id.* at ¶ 63.
[37] *Id.* at ¶ 64.
[38] *Id.* at ¶ 65.
[39] *Id.* at ¶ 69; *see also* ECF No. 13-1 at 1–2.
[40] ECF No. 1 at ¶¶ 67, 69 (internal quotation marks omitted).
[41] ECF No. 13-1 at 1.

state law," specifically "La. R.S. 25:214(B)."[42]

Eighteen days after the St. Tammany Parish Council issued the Resolution appointing Plaintiffs' replacements, on May 20, 2024, Plaintiffs brought this 42 U.S.C. § 1983 lawsuit in this Court.[43] Plaintiffs sued St. Tammany Parish and Cougle, in his official capacity as a member of the St. Tammany Parish Council.[44] In their complaint, Plaintiffs allege four causes of action (1) First Amendment retaliation;[45] (2) viewpoint discrimination under the First Amendment;[46] (3) substantive-due-process violations under the Fourteenth Amendment;[47] and (4) violations of the free-speech rights enshrined in Article I, § 7 of the Louisiana Constitution.[48] Plaintiffs seek attorney's fees and costs under 42 U.S.C. § 1988 and "declaratory relief and an injunction barring enforcement" of the Resolution.[49] Plaintiffs do not seek damages.[50]

As for the First Amendment retaliation claim, Plaintiffs allege that they "engaged in protected First Amendment activities" when they "discuss[ed] Library Board actions and agenda items; discuss[ed] and vot[ed] on book challenges; discuss[ed] censorship; [and] discuss[ed] accessibility and display of items at parish libraries."[51] Plaintiffs allege that St. Tammany Parish and Cougle "engaged in adverse action [against Plaintiffs] in suggesting, discussing, and passing [the

---

[42] *Id.*
[43] *See generally* ECF No. 1.
[44] *Id.* at ¶¶ 4, 7.
[45] *Id.* at ¶¶ 83–94.
[46] *Id.* at ¶¶ 95–109.
[47] *Id.* at ¶¶ 110–117.
[48] *Id.* at ¶¶ 118–123.
[49] *Id.* at 1 (unnumbered opening paragraph).
[50] *Id.* at 24 (unnumbered "wherefore" clause).
[51] *Id.* at ¶ 85.

Resolution] to appoint six new Library Board members, replacing Plaintiffs and effectively terminating their duly made appointments to the Library Board."[52] And Plaintiffs allege that those "adverse actions were motivated by and taken in retaliation for Plaintiffs' speech, not for another legitimate government reason."[53]

As for the viewpoint-discrimination claim, Plaintiffs allege they "exercised their fundamental constitutional right to speak at Library Board meetings[] [by] expressing their views about Library Board actions and agenda items; by voting on book challenges; by discussing censorship; [and] by discussing accessibility and display of items at parish libraries."[54] Plaintiffs allege "Defendants discriminated against the content and viewpoint of Plaintiffs' speech by terminating their appointments to the Library Board."[55] And Plaintiffs allege "Defendants' motive in removing Plaintiffs from the Library Board was to silence a particular viewpoint."[56]

As for the substantive-due-process claim under the Fourteenth Amendment, Plaintiffs allege that they "have a liberty interest" in their unpaid, voluntary appointments to the Library Board that "was implicated in the Parish Council's actions to remove them."[57] Plaintiffs allege that the Parish Council terminated their appointments "based on various false charges that were publicized, i.e., that they are liberal, activist, members of a political conspiracy to sexualize children."[58] According to Plaintiffs, "Defendants failed to refute these untrue allegations, failed to protect

---

[52] *Id.* at ¶ 88.
[53] *Id.* at ¶ 90.
[54] *Id.* at ¶ 99.
[55] *Id.* at ¶101.
[56] *Id.* at ¶ 102.
[57] *Id.* at ¶ 111.
[58] *Id.* at ¶ 112.

Plaintiffs' professional standing and reputation, and failed to redress the damages caused to them by the false charges of Cougle and others."[59] Plaintiffs ultimately allege that "Defendants terminated Plaintiffs' positions . . . without providing them due process of law to refute and redress these unfounded and untrue charges."[60]

Finally, as for the fourth and final claim—a free-speech claim under Article I, § 7 of the Louisiana Constitution—Plaintiffs allege that "Defendants intentionally and willfully retaliated against Plaintiffs for exercising their freedom of speech and association by acting to terminate their appointments to the Library Board."[61]

On the same day Plaintiffs filed this lawsuit, Plaintiffs moved for a temporary restraining order and a preliminary injunction prohibiting Defendants from enforcing the Resolution.[62] In that May 20 motion, Plaintiffs asked the Court to issue injunctive relief before June 1, when the terms of the Library Board members appointed through the St. Tammany Parish Council's May 2 Resolution would begin.[63] Plaintiffs did not submit any evidence supporting the motion for a temporary restraining order.[64]

On May 31, two days after oral argument,[65] the Court denied the motion for a temporary restraining order.[66] The Court concluded that "Plaintiffs ha[d] not carried their heavy burden to prove an unequivocal need for issuance of a temporary restraining order by June 1, 2024."[67] "Specifically," the Court concluded that

---

[59] *Id.* at ¶ 115.
[60] *Id.* at ¶117.
[61] *Id.* at ¶ 121.
[62] ECF No. 3.
[63] ECF No. 3-1 at 20.
[64] ECF Nos. 3 (motion); 3-1 (supporting memorandum); 3-2 (proposed order).
[65] *See* ECF No. 16 (minute entry).
[66] ECF No. 17.
[67] *Id.* at 1.

9

"Plaintiffs ha[d] not shown a substantial threat of irreparable injury if the new Library Board members appointed on May 2 begin their terms on June 1, considering the first meeting of the new Library Board purportedly will not occur until July 22."[68] Importantly, however, the Court "emphasize[d] that its conclusion and analysis [were] based on the limited briefing and the lack of evidence before it, and that the Court's preliminary-injunction analysis could depart sharply from the necessarily abbreviated analysis offered" in the opinion denying a temporary restraining order.[69]

Six days later, on June 5, the Court consolidated the hearing on Plaintiffs' motion for a preliminary injunction with a bench trial on the merits of the action under Federal Rule of Civil Procedure 65(a)(2).[70] The Court's minute entry and order provided the parties "clear and unambiguous notice of the [C]ourt's intent to consolidate the trial and the hearing . . . at a time which still afford[ed] the parties a full opportunity to present their respective cases." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations, quotation marks, and brackets omitted). No party submitted a timely, reasoned objection to consolidation.[71]

Now, St. Tammany Parish moves to dismiss the claims against it for failure to state a claim under Rule 12(b)(6).[72] Plaintiffs oppose.[73]

---

[68] *Id.*

[69] *Id.* at 12.

[70] ECF No. 18 at 2.

[71] On June 27—22 days after the Court consolidated the preliminary-injunction hearing with a trial on the merits under Rule 65(a)(2)—Defendants notified the Court that Defendants objected to Rule 65(a)(2) consolidation. *See* ECF No. 40. The objection did not include any facts or supporting authority; the objection simply notified the Court that Defendants "object to the consolidation of the hearing on the merits with the trial of the Plaintiffs' request for a Preliminary Injunction," without explaining the basis for the objection. *Id.* at 1. The Court overruled the objection "because Defendants . . . provided no support—factual or legal—for it." ECF No. 42 at 13 n.83.

[72] ECF No. 32.

[73] ECF No. 38.

## II.   LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.   ANALYSIS

St. Tammany Parish contends that Plaintiffs fail to state plausible claims for (A) First Amendment retaliation, (B) viewpoint discrimination, (C) violations of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and (D) violations of Article I, Section 7 of the Louisiana Constitution. The Court considers each claim and argument in turn.

### A.   First Amendment Retaliation

St. Tammany Parish first contends that Plaintiffs fail to state a plausible First Amendment retaliation claim against it. The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "Although [the First Amendment] explicitly refers only to federal action, it applies to the states through the Due Process Clause of the Fourteenth Amendment." *Colson v. Graham*, 174 F.3d 498, 506 (5th Cir. 1999) (citing *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937)). The First Amendment "prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citing *Colson*, 174 F.3d at 508). So, "[i]f an official takes adverse action against someone based on the forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006); citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977)).

Here, St. Tammany Parish contends that Plaintiffs fail to state a plausible First Amendment retaliation claim against it because the Resolution is facially constitutional.[74] The Parish's argument relies heavily on three out-of-circuit opinions involving First Amendment challenges to allegedly retaliatory state laws.

The first such opinion is *Planned Parenthood of Kansas and Mid-Missouri v. Moser*. *See* 747 F.3d 814 (10th Cir. 2014), *abrogated in part on other grounds by Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015). At issue there was a Kansas law that restricted the classes of entities eligible for Title X subgrants and that caused two family-planning clinics operated by Planned Parenthood to be disqualified from Title X subgrants. *See id.* at 816. Among other claims, Planned Parenthood asserted that the law violated its First Amendment rights because the legislature passed the law to punish Planned Parenthood "for associating with providers of abortion and for its advocacy of access to abortion services." *Id.* at 817. The court held that "Planned Parenthood's First Amendment claim lacks merit" because "Planned Parenthood has not pointed to any decision of the Supreme Court that has invalidated a statute containing no explicit restriction on speech (or expressive conduct) or association on the ground that the 'motive' of the legislature was to penalize a person for the person's speech or association." *Id.* at 841–42, 843.

---

[74] ECF No. 32-1 at 2–8.

The next of the Parish's opinions is *In re Hubbard*. *See* 803 F.3d 1298 (11th Cir. 2015). *Hubbard* reversed a district court's refusal to quash subpoenas that a public-sector union issued to state lawmakers to probe their motives for passing an Alabama law restricting state-sponsored collection of union dues through payroll deductions. *See* 803 F.3d at 1301–02, 1315. The panel held that the legislative privilege precluded the subpoenas' "inquiry into the subjective motivation that lawmakers had in passing [the] legislation." *Id.* at 1311. The panel rejected the union's argument that the legislative privilege should yield to the union's First Amendment interest because the union showed no such interest. *Id.* at 1311–1315.

Relying on Eleventh Circuit precedent applying *United States v. O'Brien*, 391 U.S. 367, 383 (1968), the *Hubbard* panel observed that "when a statute is facially constitutional, a plaintiff cannot bring a free-speech challenge by claiming that the lawmakers who passed it acted with a constitutionally impermissible purpose." *Id.* at 1312–12 (first citing *Artistic Entm't, Inc. v. City of Warner Robins*, 223 F.3d 1306, 1309 (11th Cir. 2000); and then citing *Int'l Food & Beverage Sys. v. City of Fort Lauderdale*, 794 F.2d 1520, 1525 (11th Cir. 1986)). Because the Alabama law "d[id] not, on its face, impinge on any constitutional rights," and because "[t]he only basis for [the union's] retaliation claim [wa]s the alleged retaliatory motive that Alabama's lawmakers had when passing [the challenged law]," the *Hubbard* panel reasoned that the union had failed to "present[] a cognizable First Amendment claim. *Id.* at 1313.[75]

---

[75] The Fifth Circuit has cited approvingly *Hubbard*'s legislative-privilege analysis in two precedential opinions. *See La Union Del Pueblo Entero v. Abbott*, 93 F.4th 310, 318 (5th Cir. 2024) (citing *Hubbar*d, 803 F.3d at 1308); *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235–36 (5th Cir. 2023) (citing *Hubbard*, 803 F.3d at 1306, 1308). But the Fifth Circuit has not cited in a

The third opinion is *Walt Disney Parks & Resorts U.S., Inc. v. DeSantis*. *See* No. 4:23-CV-163, — F. Supp. 3d —, 2024 WL 442546 (N.D. Fla. Jan. 31, 2024). There, a district court granted a Rule 12(b)(6) motion dismissing Disney's First Amendment challenge to a Florida law that Disney alleged the Florida legislature had passed purely to punish Disney for its protected speech.[76] *See id.* at *3–7. Relying heavily on *Hubbard*, the district court concluded that Disney failed to state a First Amendment retaliation claim because the legislation Disney challenged "d[id] not facially 'impinge on any constitutional rights,'" and "the only basis for [Disney's] claim [was] that the Legislature had a retaliatory motive." *Id.* at *4 (quoting *Hubbard*, 803 F.3d at 1313).

St. Tammany Parish's argument follows a three-step syllogism drawing on *Planned Parenthood*, *Hubbard*, and *Walt Disney*. For step one, St. Tammany Parish contends that "a plaintiff cannot bring a free-speech challenge" to a "statute [that] is facially constitutional" "by claiming that the lawmakers who passed it acted with a constitutionally impermissible purpose." *Hubbard*, 803 F.3d at 1312; *see also Walt Disney*, 2024 WL 442546, at *3–4. For step two, St. Tammany Parish contends that the Resolution is facially constitutional, and St. Tammany points out that Plaintiffs claim the St. Tammany Parish Council passed the Resolution for an impermissible purpose—to retaliate against their protected speech. And for the third and final step

---

precedential opinion the passage of *Hubbard* on which St. Tammany Parish and *Walt Disney* rely—that is, *Hubbard*'s discussion of the *O'Brien* rule and the cognizability of First Amendment challenges to facially constitutional statutes based on legislative motive, found on pages 1312–13 of the opinion.

[76] The *Walt Disney* plaintiffs appealed, *see* Notice of Appeal, *Walt Disney Parks and Resorts US, Inc., v. Governor, State of Fla.*, No. 24-10342 (11th Cir. Feb. 2, 2024), ECF No. 3, but voluntarily dismissed their appeal before filing their opening brief, *see* Clerk's Order Granting Motion to Voluntarily Dismiss Appeal, *Walt Disney Parks and Resorts US, Inc. v. Governor, State of Florida*, No. 24-10342 (11th Cir. June 18, 2024), ECF No. 32.

of the syllogism, St. Tammany Parish reasons that, because Plaintiffs bring a First Amendment challenge to the facially constitutional Resolution based on the allegedly impermissible, retaliatory purpose behind it, Plaintiffs necessarily fail to state a First Amendment retaliation claim against the Parish under *Hubbard* and *Walt Disney*.

Plaintiffs, for their part, do not dispute that the Resolution is constitutional on its face.[77] Instead, Plaintiffs counter that the Parish's three-step syllogism breaks down because Plaintiffs "are not challenging the facial constitutionality of a statute."[78] It is true that *Hubbard* and *Walt Disney* involved "a challenge to an otherwise constitutional *statute* based on the subjective motivations of the lawmakers who passed it." *Hubbard*, 803 F.3d at 1312 (emphasis added); *see also Walt Disney*, 2024 WL 442546, at *6 (quoting *Hubbard*, 803 F.3d at 1312).[79] Similarly, *O'Brien*— on which both *Hubbard* and *Walt Disney* heavily rely—involved a First Amendment challenge to a *federal criminal statute* prohibiting the knowing destruction or mutilation of Selective Service registration certificates. *See* 391 U.S. at 370, 382–83. The petitioner in *O'Brien*, David Paul O'Brien, had challenged his conviction under that statute on the ground that Congress' purpose in passing it "was to suppress the freedom of speech." *Id.* at 382–83 (internal quotation marks omitted). But the Court "reject[ed]" O'Brien's challenge "because[,] under settled principles[,] the purpose of Congress . . . is not a basis for declaring th[e] legislation unconstitutional." *Id.* at 383.

---

[77] *See* ECF No. 38 at 6 (stating that "Plaintiffs' lawsuit does not challenge the facial constitutionality of the Parish Council's May 2, 2024 resolution," and that Plaintiffs instead "challenge the process by which they were ousted from their positions").

[78] *Id.* at 3.

[79] *Hubbard* expressly "limited" its "discussion of the *O'Brien* rule . . . to the context before [it]: a free-speech retaliation challenge to an otherwise constitutional statute." 803 F.3d at 1312 n.14.

The outer bounds of the *O'Brien* rule cited in *Hubbard* and *Walt Disney* appears uncertain in the Fifth Circuit. The Court has not located, and the parties have not cited, a published Fifth Circuit opinion applying the *O'Brien* rule outside the context of a facial challenge to a statute. But published opinions of other circuits suggest that the *O'Brien* rule's reach may not be as limited as Plaintiffs contend.

For example, the Fourth Circuit applied the *O'Brien* rule to reject a First Amendment retaliation challenge to a county council's facially constitutional budget cuts. *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467–70 (4th Cir. 2012). The *Kensington* plaintiffs—a group of local volunteer fire and rescue departments and several of their former administrative employees—claimed that the city council passed the budget cuts to punish them for opposing legislation the city council supported. *Id.* at 465. But the Fourth Circuit affirmed the Rule 12(b)(6) dismissal of the plaintiffs' First Amendment retaliation claims, reasoning that, because the budget cuts were "facially valid," "*O'Brien* instructs that [the court] not strike [them] down 'on the basis of an alleged illicit legislative motive.'" *Id.* at 468 (quoting *O'Brien*, 391 U.S. at 383). That holding rested in part on the Fourth Circuit's conclusion that the budget cuts did not single the plaintiffs out for disfavored treatment. *See id.* The Fourth Circuit took care to note that, "while the budget eliminated some of Plaintiffs' funding, its effect was not felt by Plaintiffs' alone," given that the cuts affecting them represented only "about 1.8 percent of the total cuts." *Id.*

The Seventh Circuit has similarly applied the *O'Brien* rule outside the context of a facial challenge to a statute. For example, in an opinion by Judge Posner, a panel of that court affirmed the Rule 12(b)(6) dismissal of a First Amendment retaliation claim challenging an otherwise constitutional city-council-enacted ordinance. *See Fraternal Ord. of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551, 553–57 (7th Cir. 1988). The ordinance required the police department to change to a less desirable work schedule, and the *Hobart* plaintiffs—a city police union and two of its members—claimed the city council enacted the ordinance "to punish [them] for opposing the mayor and council members in the primary." *Id.* at 553.

Invoking "the principle that courts 'will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive,'" the panel held "the complaint states no claim" for First Amendment retaliation. *Id.* (quoting *O'Brien*, 391 U.S. at 383). In so holding, however, the panel noted that the ordinance did not "single out particular individuals or groups for benefits or burdens and is not challenged as discriminating on invidious grounds such as race, religion, and sex." *Id.* at at 554. On the contrary, the panel explained, "[n]o outside observer reading" the ordinance "would suppose it directed against the police or any definable group." *Id.*[80]

---

[80] In another published opinion applying the *O'Brien* rule outside the specific context of a facial challenge to a statute, the Seventh Circuit affirmed a summary judgment dismissing a First Amendment challenge to an ordinance issued by a town board, some of whose members, the plaintiffs claimed, "had an improper motive when they voted for the ordinance," *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 828 (7th Cir. 1999). Along similar lines, the Ninth Circuit applied the *O'Brien* rule to reject efforts of First Amendment plaintiffs to establish the unconstitutionality of a city-issued emergency order based on the city's alleged illicit motive in adopting the order. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1130 n.29 (9th Cir. 2005).

Here, even assuming *arguendo* that the *O'Brien* framework as articulated in these out-of-circuit authorities applies in this context, the Court concludes that St. Tammany Parish has not carried its burden to show that the *O'Brien* rule requires the Court to dismiss Plaintiffs' First Amendment retaliation claim on the pleadings alone. *Hobart*, *Hubbard*, and *Kensington* suggest that the *O'Brien* rule admits of an exception: The *O'Brien* rule does not require dismissal of a First Amendment challenge to legislative or quasi-legislative action that "single[s] out particular individuals or groups for benefits or burdens." *Hobart*, 864 F.2d at 554; *see Kensington*, 684 F.3d at 468 (noting that the challenged budgetary enactment's "effect was not felt by Plaintiffs alone"); *see also Hubbard*, 803 F.3d at 1314 (observing that "governmental retaliation that explicitly single[s] out a specific group" would "ma[k]e *O'Brien* inapplicable"). Indeed, *O'Brien* itself indicates that its rule excepts challenges to "legislative [a]ct[s] which inflict[] punishment on named individuals or members of an easily ascertainable group without a judicial trial." 391 U.S. at 383 n.30.

Here, St. Tammany Parish has not persuaded the Court that this exception does not apply and thus that the *O'Brien* rule forecloses Plaintiffs' First Amendment claim on the pleadings alone. On this limited record, viewing only the well-pleaded factual allegations of the complaint, the Resolution itself,[81] and the parties' briefing, the Court cannot categorically conclude that the Resolution and related efforts of the

---

[81] St. Tammany Parish attached the Resolution as an exhibit to its motion to dismiss and asked the Court to consider the Resolution in its Rule 12(b)(6) analysis. *See* ECF No. 32-1 at 3 n.6. The Court obliges because Plaintiffs refer to the Resolution in the complaint, and the Resolution is central to Plaintiffs' claims. *See, e.g.*, *Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766–67 (5th Cir. 2016) (explaining that a court deciding a Rule 12(b)(6) motion may "consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim" (internal citations and quotation marks omitted)).

St. Tammany Parish Council to "reconstitute" the Library Board *did not* effectively single out Plaintiffs for disfavored treatment. The well-pleaded allegations of the complaint, together with the Resolution itself, permit a plausible inference that the Resolution is unlike the challenged action in *O'Brien*, *Hobart*, *Hubbard*, and *Kensington* insofar as it applies only to a group of 11 identifiable people: the three Plaintiffs; the two non-Plaintiff former members of the Library Board whose appointments the Resolution terminated; and the six current Board members.[82]

Dismissing Plaintiffs' First Amendment retaliation claim at this Rule 12(b)(6) stage would also require resolving factual disputes—which the Court cannot do. For example, the parties dispute whether the Resolution and the process leading up to it were in fact "unique" to the Library Board and thus Plaintiffs. According to Plaintiffs, "[t]he facts used to justify the Library Board 'reconstitution' were entirely specific to the existing members' terms," and that "the decision affected specific individuals— most significantly, Plaintiffs."[83] But Defendants respond that "[t]his is a factual claim that is inaccurate."[84] Of course, the Court cannot resolve this factual dispute at the Rule 12(b)(6) stage. *See, e.g.*, *Douglass v. Beakley*, 900 F. Supp. 2d 736, 745 n.11 (N.D. Tex. 2012) (finding that fact dispute could not be resolved at the Rule 12(b)(6) stage and instead required "an examination of, at a minimum, summary judgment evidence"); *In re AFGO Dev. Co.*, 625 B.R. 324, 335 (Bankr. S.D. Tex. 2020) (observing that "if resolution of a motion to dismiss turns on a factual dispute, it is  more

---

[82] ECF No. 32-2 at 1–2.
[83] ECF No. 38 at 6.
[84] ECF No. 39 at 2.

appropriately resolved on summary judgment or at trial" (internal citations omitted)).

Accordingly, because St. Tammany Parish has not carried its burden to show that the *O'Brien* rule bars Plaintiffs' First Amendment retaliation claim based on the pleadings alone, the Court denies St. Tammany Parish's motion to dismiss this claim.

### B.   Viewpoint Discrimination

St. Tammany Parish next contends that Plaintiffs fail to state a plausible viewpoint-discrimination claim against it because Plaintiffs do not have a First Amendment right to sit on the Library Board.[85] Plaintiffs rejoin that they do not claim a First Amendment right to sit on the Library Board; they instead claim a First Amendment right not to be retaliated against for opining about library materials.[86]

Plaintiffs' viewpoint-discrimination claim does not turn on an underlying First Amendment right to sit on the Library Board. "At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Assoc. of Am. v. Vullo*, 602 U.S. 175, 187 (2024). "Viewpoint discrimination exists 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)) (citing *Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013)). "It is beyond debate that the law prohibits viewpoint discrimination in a limited public forum," like a council meeting. *Id.* at 801 (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106

---

[85] ECF No. 32-1 at 8–11.
[86] ECF No. 38 at 7.

(2001)). Here, Plaintiffs do not allege constitutional right to sit on the Library Board; they allege a "fundamental constitutional right to speak at Library Board meetings."[87] And for their viewpoint-discrimination claim, they allege that "Defendants discriminated against the content and viewpoint of Plaintiffs' speech by terminating their appointments to the Library Board,"[88] and that "Defendants' motive in removing Plaintiffs from the Library Board was to silence a particular viewpoint."[89] Plaintiffs have plausibly alleged a viewpoint-discrimination claim based on the underlying First Amendment right to speak at Library Board meetings.[90] The Court denies St. Tammany Parish's motion to dismiss the claim on the ground that Plaintiffs lack an underlying First Amendment right to sit on the Library Board.

Along similar lines, St. Tammany Parish contends that Plaintiffs fail to state a "patronage dismissal" claim under Section 1983.[91] According to St. Tammany Parish, "[e]mployment is a requisite element of a 'patronage dismissal' claim," and because Plaintiffs are not Parish employees, Plaintiffs necessarily fail to state a patronage dismissal claim.[92] Plaintiffs rejoin that "protection from government retaliation and viewpoint discrimination is not limited to government employees."[93]

---

[87] *See, e.g.*, ECF No. 1 at ¶ 99.

[88] *Id.* at ¶ 101.

[89] *Id.* at ¶102.

[90] St. Tammany Parish agrees that "[t]he right to speak at Library Board meetings (as a board member . . . is protected by the First Amendment." ECF No. 32-1 at 9.

[91] *Id.* at 10–11.

[92] *Id.* at 10.

[93] ECF No. 38 at 8 (first citing *Kinney v. Weaver*, 367 F.3d 337, 357 (5th Cir. 2004) (en banc); then citing *O'Hare Truck Serv. Inc. v. City of Northlake*, 518 U.S. 712, 715, 720 (1996); and then citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996)).

Plaintiffs are correct. Whether the claim is labelled "patronage dismissal," "First Amendment retaliation," or "viewpoint discrimination," and whether an employment relationship exists or not, the principle is the same: Government may not "punish protected speech." *Kinney*, 367 F.3d at 357. The Parish's argument that an employment relationship is required "overlooks the fundamental point that governmental discretion is always constrained by the Constitution." *Id.*; *see also, e.g.*, *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("reject[ing] the district court's apparent assumption that only public employees enjoy the protections of the First Amendment" and explaining that "[e]very citizen enjoys the First Amendment's protections against governmental interference with free speech").

As the Supreme Court has explained, "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interest—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The Supreme Court has "extended" that principle outside the employment context, "to government retaliation against a contractor or a regular provider of services for the exercise of rights of political association and the expression of political allegiance." *Colson*, 174 F.3d at 509 (first citing *O'Hare*, 518 U.S. at 720; and then citing *Umbehr*, 518 U.S. at 685–86). And the Fifth Circuit has applied that principle to First Amendment retaliation claims by elected officials, like Plaintiffs here. *See, e.g.*, *id.* at 507–08  (rejecting

argument that the First Amendment did not protect elected city council member from retaliation); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990) (holding that the Texas Commission on Judicial Conduct could not constitutionally reprimand an elected state justice of the peace as punishment for public statements criticizing other county officials); *Smith v. Winter*, 782 F.2d 508, 512 (5th Cir. 1986) (holding that elected members of a county board of education stated a First Amendment retaliation claim).

Accordingly, because St. Tammany Parish has not carried its burden to show that Plaintiffs' First Amendment viewpoint-discrimination claim requires either (1) an underlying constitutional right to sit on the Library Board or (2) an employment relationship, the Court denies St. Tammany Parish's motion to dismiss this claim.

### C.    Due Process

St. Tammany Parish next contends that Plaintiffs' due-process claim should be dismissed because a due-process claim requires an employment relationship, and Plaintiffs failed to allege an employment relationship with the Parish.[94]

The Court is not persuaded. A due-process claim does not necessarily require an employment relationship. *See, e.g.*, *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979) (concluding that jury could reasonably have found that defendants violated the due-process rights of elected city official); *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 491–92 (5th Cir. 2005) (concluding that government officials violated

---

[94] St. Tammany Parish block quotes from *Plaquemines Parish Ventures, LLC v. Plaquemines Parish Council*, No. 23-CV-7337, 2024 WL 1463186, at *1–6 (E.D. La. Apr. 4, 2024), which involved a procedural-due-process challenge to a parish council's handling of zoning application, but St. Tammany Parish does not explain how it believes that opinion applies here. ECF No. 32-1 at 12. Along similar lines, the Parish invokes black-letter substantive-due-process principles without explaining how it believes those principles show that Plaintiffs fail to state a due-process claim. *See id.* at 11–12.

the due-process rights of business owner). A due-process claim requires only "(1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law." *Adams v. City of Harahan*, 95 F.4th 908, 913 (5th Cir. 2024) (internal citation and quotation marks omitted). St. Tammany Parish, for its part, has not argued that Plaintiffs failed to plead facts plausibly establishing either of those elements; the only argument the Parish advances with any specificity is that Plaintiffs' due-process claim fails for lack of an employment-relationship.[95]

The Parish cites two unpublished cases, but neither advances its argument. *See United Steel v. Anderson*, No. 17-CV-1242, 2018 WL 3017366 (W.D. Tex. June 15, 2018); *Brokaw v. Dall. Indep. Sch. Dist.*, No. 3:07-CV-15, 2008 WL 4355392 (N.D. Tex. Sept. 24, 2008). Both cases arise in the employment context, and so both reference either a "discharge" or an "employer" when articulating the general requirements of a due-process claim. *See United Steel*, 2018 WL 3017366, at *17 ("discharge"); *Brokaw*, 2008 WL 4355392, at *3 ("government employer"). But neither case states that an employment relationship is a prerequisite to a due-process claim.

Accordingly, because St. Tammany Parish has not carried its burden to show that Plaintiffs' due-process claim should be dismissed at this Rule 12(b)(6) stage for failure to plead the existence of an employment relationship, the Court denies St.

---

[95] For example, the Parish does not contend that Plaintiffs failed to plead facts plausibly establishing any element of the stigma-plus-infringement test; that Plaintiffs failed to plead facts plausibly establishing a liberty interest protected by the Due Process Clause; or that Plaintiffs failed to plead facts plausibly establishing conscience-shocking behavior on the part of any Defendant. *See* ECF No. 32-1 at 11–13. The Court does not resolve any of these issues because they have not been raised. *Cf. Crittindon v. LeBlanc*, 37 F.4th 177, 190 (5th Cir. 2022) ("The Supreme Court recently reminded us that our task is not to come up with arguments the parties should have made, but to decide the ones they make." (citing *United States v. Sineneng-Smith*, 590 U.S. 376, 375–76 (2020)).

Tammany Parish's motion to dismiss Plaintiffs' due-process claim.

### D.    Free-Speech Claims under the Louisiana Constitution

Finally, St. Tammany Parish contends that "Plaintiffs' [free-speech] claims under the Louisiana Constitution should be dismissed for the same reasons as are applicable to their claims under the Federal Constitution."[96] The Court denies the Parish's motion to dismiss Plaintiffs' free-speech claim under the Louisiana Constitution for the same reasons that the Court denies the Parish's motion to dismiss Plaintiffs' First Amendment claim under the United States Constitution. *See, e.g.*, *Heaney*, 846 F.3d at 801 n.2 (observing that "Louisiana's constitutional protection of free speech mirrors that of the First Amendment, so separate determinations of the state and federal claims are unnecessary" (citing *Winn v. New Orleans City*, No. 12-CV-1307, 2015 WL 10713690, at *5 (E.D. La. Jan. 14, 2015)).

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion[97] of Defendant St. Tammany Parish to dismiss Plaintiffs' complaint under Rule 12(b)(6) is **DENIED**.

New Orleans, Louisiana, this 23rd day of July, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[96] ECF No. 32-1 at 14.
[97] ECF No. 32.