**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| WILLIAM R. MCHUGH III,<br>ANTHONY PARR, and<br>REBECCA TAYLOR,<br><br>               Plaintiffs,<br><br>      v.<br><br>SAINT TAMMANY PARISH, and<br>DAVID COUGLE, in his official capacity,<br><br>               Defendants. | CIVIL ACTION NO.: 2:24-cv-1300<br><br><br>JUDGE: LONG<br><br><br>MAGISTRATE JUDGE: DOSSIER |

**JOINT PRETRIAL ORDER**

Pursuant to this Court's July 2, 2024 Minute Entry and Order, R. Doc. 45, the parties jointly submit the following pretrial order. To the extent any of the contents herein are incomplete or not sufficiently detailed, the parties are endeavoring in good faith to provide the necessary information as expeditiously as possible. Complete lists of witnesses and documents and exhibits will be filed by 5 p.m. on August 1, 2024, in accord with this Court's Order.

**PRETRIAL CONFERENCE, PARTIES, AND JURISDICTION**

I.  The pretrial conference is scheduled for August 1, 2024 at 2:30 p.m.

II. Defense counsel appearing on behalf of David Cougle in his official capacity and the St. Tammany Parish Government are James J. Bolner, Angel L. Byrum, and Alex L.M. Ducros. Plaintiffs' counsel appearing on behalf of William McHugh, Anthony Parr, and Rebecca Taylor, is Bruce Hamilton.

1

III. Defendants are David Cougle in his official capacity and the St. Tammany Parish Government ("Parish Government"), referred to in this case caption as Saint Tammany Parish. Plaintiffs are William McHugh, Anthony Parr, and Rebecca Taylor. David Cougle is a member of the St. Tammany Parish Council. Mr. McHugh, Mr. Parr, and Ms. Taylor were members of the St. Tammany Parish Library Board of Control.

IV. Plaintiffs have asserted four claims, and the Court's jurisdiction over them is not contested. Three claims are federal questions involving alleged violations of rights under the United States Constitution. The Court has jurisdiction over these pursuant to 42 U.S.C. § 1331. The fourth claim is an alleged violation of rights under the Louisiana State Constitution; this Court has jurisdiction over that claim pursuant to 42 U.S.C. § 1367.

**PENDING MOTIONS, CONTESTED AND UNCONTESTED FACTS AND LAW**

V. Only one motion is pending before the Court: Defendant David Cougle's Motion to Quash a Subpoena Duces Tecum directed to him in his individual capacity. Plaintiffs may file a Motion to Compel regarding outstanding discovery requests and subpoena, and Plaintiffs may file a Motion in Limine regarding the scope and application of legislative privilege.

VI. The following is a brief summary of material facts claimed by the parties:

A. Plaintiffs: This case concerns actions of the Saint Tammany Parish Council that ultimately resulted in the expulsion of Plaintiffs from the Saint Tammany Parish Library Board of Control ("LBOC"). Plaintiffs have alleged that Defendant David Cougle engaged in a yearslong campaign to vilify them as LBOC members, which began before he declared his candidacy for election as a member of the Parish Council. Defendant Cougle made the issue of library materials, and LBOC members' control over the community's access to those materials, a central focus of his candidacy. The issue was a controversy throughout the parish community before the present Parish Council members were elected. Nine of the current Parish Council's 14 members were newly elected last year, along with Defendant David Cougle, and they took office in January. Once elected, Defendant David Cougle continued to pursue his campaign promise of trying to "fix" the library "crisis" by ousting the members of the LBOC. He published a "position paper" stating that the LBOC members were serving "illegally" and declaring their positions vacant. Ultimately, he introduced a resolution seeking to replace the members of the

2

LBOC. Aware of the community controversy surrounding the Parish library system, the newly elected Parish Council joined the effort to oust Plaintiffs, passing a similar resolution purportedly aimed at staggering the previously fixed terms of the LBOC members. But unlike several other parish boards, whose membership terms the Parish Council also moved to stagger, the Parish Council treated the LBOC differently. It invited candidates to apply for all six seats, attracting some 22 candidates, and engaged in an appointment process designed to result in Plaintiffs' ouster. A majority of the members of the Parish Council, including Defendant David Cougle, sought to oust Plaintiffs—and succeeded—motivated by discrimination and retaliation against Plaintiffs because of statements they made, views they expressed, and votes they took as Library Board members.

B. Defendants: Councilman Cougle took office on January 8, 2024. After taking office, Councilman Cougle did not make any public statements disparaging the LBOC or the Plaintiffs. The resolution complained of was validly adopted by the Parish Council in keeping with an effort to bring all Parish boards and commissions into compliance with State and Parish law. The Parish Council adopted a resolution memorializing its intent to vacate boards not in compliance and appoint members as required by law. The LBOC is a Parish board, and the Parish Council is authorized to appoint six of the seven board members for five-year terms. The LBOC is part of Parish Government and is not a separate political subdivision. The speech that serves as the basis of Plaintiffs' claim is speech they engaged in during the course and scope of their duties as LBOC members, specifically discussing LBOC actions and agenda items, discussing and voting on book challenges, discussing censorship, discussing accessibility and display of items at parish libraries. None of the Plaintiffs are prevented from speaking as members of the public at LBOC meetings, Parish Council meetings, or any other public forum. LBOC membership issues were agenda items at the March, April, and May 2024 Parish Council Meetings. At no point during those meetings did Council Members make negative comments about the LBOC members or the Plaintiffs individually. All members of the public are invited to speak at Parish Council meetings regarding any item on the agenda, and are given three minutes of speaking time. Plaintiff Taylor spoke at the March Council Meeting regarding postponement of the resolution accepting nominations for the LBOC. Plaintiffs Parr and McHugh did not choose to speak at that meeting. None of the Plaintiffs spoke at either of the other two Council Meetings at which LBOC issues were on the agenda. All Plaintiffs were nominated as candidates to serve on the newly reconstituted LBOC. The Parish Council invited all nominees to interview with Council Members prior to the May Council Meeting at which the Parish Council would vote on LBOC membership. Councilman Cougle also sent all nominees a questionnaire which they could choose to complete and submit to him for consideration. All Plaintiffs interviewed with the Parish Council and completed Councilman Cougle's questionnaire. When the Parish Council voted on LBOC appointments at the May Parish Council Meeting, one of the four seated LBOC members received enough votes to be re-appointed. Plaintiffs did not receive sufficient votes for appointment to the LBOC. The Parish Council has not publicly spoken about why Plaintiffs did not receive sufficient votes. Plaintiffs never requested a name-clearing hearing from the Parish Council.

VII.   The following is a list of uncontested material facts:

1.  The St. Tammany Parish Council (the "Parish Council") appointed William "Bill" R. McHugh III to the St. Tammany Library Board of Control (the "LBOC") on June 1, 2023.

2.  McHugh was appointed for a term expiring on August 4, 2027.

3.  The Parish Council appointed Anthony Parr to the LBOC on June 1, 2023.

4.  Parr was appointed for a term expiring on July 12, 2027.

5.  The Parish Council appointed Rebecca Taylor to the LBOC on July 7, 2022.

6.  Taylor was appointed for a term expiring on July 12, 2027.

7.  St. Tammany Parish (the "Parish") is a political subdivision of the State of Louisiana.

8.  The Parish operates under a Home Rule Charter ("the Charter") pursuant to Article VI § 5 of the Louisiana Constitution.

9.  The Parish Council is the legislative arm of the Parish Government.

10. The Parish Council is a final policymaker of the Parish, empowered by the Charter to make appointments to advisory boards and commissions by resolution.

11. The Charter provides that, "An act of the council which is not to have the force of law may be enacted by resolution. A resolution may be used by the council for purposes such as a formal expression or will of the council; to authorize a person or persons to sign legal and financial documents for a project or purpose previously approved by ordinance; and as may be authorized by this charter. The president's veto authority shall not apply to resolutions."[1]

12. The Parish Council appoints six of the seven members of the LBOC.

13. The Parish President serves as an ex-officio member of the LBOC, and may appoint a councilmember or, in the event no councilmember wishes to be appointed, any other person, to serve in his stead.

14. The St. Tammany Parish Code of Ordinances specifically provides that LBOC members' terms "shall be for a period of five years."[2]

---

[1] Section 2-11(C), "Action requiring an Ordinance."
[2] St. Tammany Parish Code of Ordinances, Part I § 34-2(a).

15. Nothing in the LBOC's rules and regulations require a particular political affiliation or viewpoint of its members.[3]

16. The LBOC's purpose is "to govern the affairs of the St. Tammany Parish Library according to the applicable statutes and laws, mandates and its own bylaws, as well as the duties assigned by resolutions or ordinances of the St. Tammany Parish Council."[4]

17. The LBOC "oversees the general management of the Library by establishing written policies; employing and/or dismissing the Director; securing adequate funding; approving a budget; providing and maintaining facilities, resources, and services; and endeavoring to continually improve services."[5]

18. The LBOC is part of Parish Government and is not a separate political subdivision.

19. LBOC members official duties include, but are not limited to, hearing appeals regarding book challenges when the complainants are dissatisfied with the decisions of library staff.

20. The policies established by the LBOC are to: Inform everyone of Board intent, goals, and aspirations; Promote consistency of Board action; Eliminate the need for instant (crisis) policy making; Improve public relations; Clarify Board member, director, and staff roles; and Give management clear direction from the Board.

21. The LBOC rules and regulations state: "Board Members shall respect the confidentiality of other Board Members, library staff, and issues discussed in an executive session of the Board, even after they have completed their service on the Board."

22. The LBOC rules and regulations state: "Board Members will not be compensated for service on the Board. Board Members may be reimbursed for authorized travel and continuing education expenses in connection to the Library, as long as they are approved prior to the event by the Board." [6]

23. The Parish Council's current members are: Rick Smith (District 1); Larry Rolling (District 2); Martha Cazaubon (District 3); Kathy Seiden (District 4); Pat Phillips (District 5); Cheryl Tanner (District 6); Joe Impastato (District 7); Pat Burke (District 8); David Cougle (District 9); Maureen O'Brien (District 10); Arthur Laughlin (District 11); Jerry Binder (District 12); Jeff Corbin (District 13); and Jimmy Strickland (District 14).

24. The current Parish Council assumed office on January 8, 2024.

---

[3] Library Board of Control Rules and Regulations, available at: https://www.sttammanylibrary.org/wp-content/uploads/sites/44/2024/04/LBOC_RulesAdminstration-4.22.2024.pdf

[4] *Id*. at § 104, "Purpose."

[5] *Id*.

[6] *Id*. at p 8. Part H. "Compensation."

25. Nine of its members are newly elected. Thirteen of its members are Republican, and one is a Democrat.

26. A newspaper article reported that in June 2022, three of the 12 Saint Tammany Parish library branches, including the Slidell, Madisonville, and Mandeville branches, featured displays announcing "Pride Month," an annual commemoration of Lesbian, Gay, Bisexual, Transgender, Queer, Intersex, and Asexual pride.

27. A newspaper article reported that one display in the children's section at the Mandeville branch library prompted complaints from patrons concerned about their children's exposure to the materials.[7]

28. In or about October 2022, residents formed the St. Tammany Library Accountability Project ("STLAP").

29. David Cougle was involved with STLAP prior to taking office.

30. Connie Phillips was involved with STLAP. Connie Phillips was not an employee, a public official, or representative of Parish Government during the time period relative to this lawsuit.

31. Donna Bonnoitt is involved with STLAP. Donna Bonnoitt was not an employee, a public official, or representative of Parish Government during the time period relative to this lawsuit.

32. On occasion Cougle served as a spokesman for STLAP prior to taking office.

33. Phillips filed as many as 160 "Statements of Concern" regarding library materials on behalf of STLAP; some of the Statements of Concern she filed were also filed on behalf of other organizations.

34. Cougle spoke at a LBOC meeting on October 25, 2022.

35. Cougle also spoke at a Slidell City Council meeting on November 8, 2022.

36. On November 7, 2022, Cougle appeared on the "Ringside Politics" podcast.

37. On December 4, 2022, Cougle issued a letter to the Parish Council proposing an ordinance to create a "Library Accountability Board (LAB)/Commission/Panel" that would have the following authority: "book acquisition supervision", "age-appropriateness determination", "request-only authority", and "event approval supervision."

---

[7] Sara Pagones, *Pride Month displays at Mandeville library draw complaints and support*, THE TIMES-PICAYUNE/THE NEW ORLEANS ADVOCATE, June 22, 2022, available at: https://www.nola.com/news/northshore/pride-month-displays-at-mandeville-library-draw-complaints-and-support/article_d4a7c46a-f1a1-11ec-aebb-e70fd42a12c0.html

38. On December 9, 2022, Cougle launched an online petition via the website Change.org titled, "Stop the Saint Tammany Parish Library System's Sexual Exploitation of Children!"

39. The petition said "The library system has purchased books that graphically demonstrate, explain and encourage sexual relationships between adults and children. Some of these books encourage children as young as four years old to engage in sexual experimentation with themselves and others. Despite the outrage of community residents, the library system director and the Library Control Board have refused to change their policies. Additionally, they continue to publicly state that children have a right to be exposed to sexually explicit and pedophilic material and they refuse to protect children from accessing these harmful materials by restricting minor access."

40. Cougle spoke at a LBOC meeting on December 13, 2022.

41. On January 14, 2023, La. Rep. Paul Hollis, R-Covington, pre-filed a bill ("HB 25") for the Legislature's 2023 Regular Session.

42. Cougle helped Hollis draft HB 25.

43. Cougle spoke at a Tangipahoa Republican Executive Committee meeting on March 8, 2023.

44. Cougle spoke at a House Committee hearing on HB 25.

45. On April 27, 2023, Cougle updated his online petition with the announcement that he was entering the race for Parish Council.

46. The announcement stated, "Hello everyone, After much prayer and discussion with family, I have decided to enter the race for parish council, district 9 (military road). There are a lot of issues in my district, but I can promise you one thing… should I be elected, I will do everything in my power to solve the library crisis! Please follow me on Facebook  And my website….".

47. HB-25 was involuntarily deferred in committee on May 11, 2023.

48. On September 12, 2023, Cougle appeared on the "Ringside Politics" podcast as a candidate for Parish Council.

49. In a televised candidates' forum on October 6, 2023, Cougle said incumbent Parish Council Member Mike Smith supported "activist" LBOC members who were "defying community standards."[8]

---

[8] Sula Kim, *Hot Seat: Candidates for St. Tammany Parish Council District 9 spar over library, development, and budget issues*, WDSU.COM, Oct. 6, 2023, available at: https://www.wdsu.com/article/hot-seat-candidates-for-st-tammany-parish-council-district-9-spar-over-library-development-and-budget-issues/45472088

50. St. Tammany Parish held its election for Parish Council on October 14, 2023.

51. Cougle was not elected outright but proceeded to a runoff on November 18, 2023.

52. Phillips withdrew STLAP's outstanding book challenges on December 23, 2023.

53. On January 18, 2024, Cougle sent an e-mail to the Louisiana Attorney General's Office.

54. The e-mail stated: "Emily and everyone, Hope you all are well.  R.S. 25:214(b) requires governing authorities which appoint library board members stagger those terms.  In July of 2022, St. Tammany Parish Council Reappointed 5 members to the LBOC at the same time, with a single vote.  It is our understanding in speaking with the parish government/library that they were no longer staggering terms.  I have two questions: 1. Does this affect the validity of the appointments? 2. Would corrective action to comply with the law require removal and reappointment/appointment to a staggered term, or is it something that could be administratively resolved by the LBOC itself (which I would imagine it could not?)."

55. On January 27, 2024, Cougle published a position paper titled, "The Current St. Tammany Library Board of Control Appointments are not in Compliance with State Law."

56. On February 27, 2024, STLAP sent an e-mail to the Parish Council and the Parish President urging them to refrain from "supporting Taylor, McHugh and Parr, as they are perceived to be responsible for the current crisis."

57. On February 29, 2024, STLAP sent another e-mail to the Parish Council and the Parish President urging them to act by "replacing the people who caused the problem which is at a minimum: Taylor, Parr, McHugh."

58. On March 1, 2024, La. Rep. Jay Galle, of Mandeville, pre-filed a bill ("HB 640") for the Legislature's 2024 Regular Session.

59. At the Parish Council's meeting on March 7, 2024, Cougle introduced a resolution calling for nominations to fill the "vacant" LBOC positions.

60. At the March 7 meeting, the Parish Council voted to postpone action on Defendant Cougle's resolution.

61. Members of the public were each given three minutes to speak at the March 7 meeting if they chose to do so.

62. Plaintiff Taylor spoke at the March 7 meeting in favor of postponing the resolution.

63. Neither Plaintiff Parr nor Plaintiff McHugh spoke at the March 7 meeting.

64. None of the Council Members' remarks at the March 7 meeting identified the Plaintiffs, and none were disparaging of the LBOC members.

65. Taylor wrote an e-mail to the Parish District Attorney's Office on March 14, 2024 requesting a legal opinion.

66. Deputy Civil Division Chief Emily Couvillon responded that she disagreed that the current Library Board members were serving "illegally" and advised that it was "inappropriate to use that term."

67. On or about March 20, 2024, Parish Council Members Cheryl Tanner, Larry Rolling, Martha Cazaubon, and Jeff Corbin sponsored a public community meeting in the Council Chambers in order to allow library leaders and critics the opportunity to speak regarding the LBOC.

68. None of the Plaintiffs spoke at the March 20 community meeting.

69. At the Parish Council's April 4, 2024 meeting, Council Member Tanner moved to introduce a substitute resolution.

70. The substitute resolution stated it was necessary to appoint six LBOC members to staggered terms, beginning on June 1, 2024; it called for nominations who would then be voted on at the following month's meeting and assigned to terms by randomly drawn lots.

71. The Parish Council then nominated 22 candidates to the LBOC, including all of the (then) sitting members of the LBOC: McHugh; Parr; Taylor; Carmen Butler; and Ann Shaw.

72. Members of the public were each given three minutes to speak at the meeting if they chose to do so.

73. None of the Plaintiffs spoke at the April 4 meeting.

74. None of the Council Members' remarks at the April 4 meeting identified the Plaintiffs, other than naming them as nominees, and none was disparaging of the LBOC members.

75. The Parish Council generally invited candidates for the LBOC to interview with Council Members prior to the May 2, 2024 Council Meeting.

76. All Plaintiffs interviewed with Council Members prior to the May 2, 2024 Council Meeting.

77. Councilman Cougle drafted and sent a questionnaire to all candidates for the LBOC and invited them to complete the questionnaire and return it for consideration prior to the May 2, 2024 Council Meeting.

78. All Plaintiffs completed and returned the questionnaire.

9

79. St. Tammany Parish Assistant District Attorney James Bolner attended the LBOC's regularly scheduled meeting on April 22, 2024, as its legal advisor.

80. At the April 22 LBOC meeting, McHugh referred to Cougle's position paper and asked Bolner, "Do you believe that the current LBOC members are serving illegally as claimed by Councilman Cougle in his January 27 position paper and at the March Council meeting?"

81. Bolner replied, "We do not. We have researched the issue and reviewed attorney general opinions and looked very carefully at that allegation, and we do not believe that the board members are serving illegally."

82. McHugh asked, "In view of the fact that we're not serving illegally, that we are serving legal terms currently, do you think that the Council's reappointment resolution, which seeks to appoint people to board seats that are already legally occupied, do you consider that resolution legitimate?"

83. Bolner replied, in part: "What we're talking about is resolutions appointing … board members. A resolution is not an ordinance. It's not a home rule charter provision. It is not law. And so a resolution does not supersede 214. You can't by resolution supersede a constitutional provision, a home rule charter provision, or anything. In fact other than a, another resolution on that same issue."

84. He added, "The position we've taken which is that the Parish Council does have the authority to fix the problem and to pass an ordinance to, um, reappoint board members who are currently serving especially those board members who have only served a portion of the five-year term that they were appointed to serve. It does have the authority to appoint new members and to fill vacancies. And how exactly the Parish Council chooses to go about doing it is up to the Parish Council."

85. At its May 2, 2024 meeting, the Parish Council voted for candidates for the LBOC.

86. The Council generally followed the voting process established by Councilmembers Corbin and Binder in Council Resolution C-6909, except that members voted by written ballot rather than voice votes.

87. Councilmember Jimmy Strickland was not present, and did not participate in the May 2, 2024 voting. Therefore, pursuant to the process established in Resolution C-6909, seven votes were required to appoint candidates to the LBOC.

88. After three rounds of voting, the Parish Council reappointed one of the currently serving members: Ann Shaw.

89. The Parish Council appointed five new members: Pam Georges, Robert Belknap, Tamarah Myers, Carole Gillio, and Jill Kesler.

10

90. Members of the public were each given three minutes to speak at the meeting if they chose to do so.

91. None of the Plaintiffs spoke at the May 2 meeting.

92. None of the Council Members' remarks at the May 2 meeting identified the Plaintiffs, and none of their remarks was disparaging of the LBOC members.

93. The Parish Council has not publicized the reasons why certain LBOC nominees were not appointed to the board, including the Plaintiffs.

94. The Plaintiffs did not request a name-clearing hearing.

95. At its May 2, 2024 meeting, the Parish Council unanimously adopted Resolution Council Series No. C-6933 ("Res. C-6933").

96. Res. C-6933 states: "WHEREAS, in an effort to ensure that the terms of office of all Parish Council-appointed boards and commissions are compliant with the law, the Parish Council shall endeavor to vacate and appoint any non-compliant terms of office."

97. Part of the relief that the Plaintiffs seek is reinstatement as members of the LBOC.

VIII. The following is a list of contested material facts:

1. The parties contest whether the process used to appoint LBOC members via resolution at the Parish Council's May 2, 2024 meeting was unique to the LBOC and Plaintiffs.

2. The parties contest whether the Parish Council is authorized by Louisiana law and the Charter to vacate and reappoint the members of the LBOC as it deems necessary and proper.

3. The parties contest whether any member of the Parish Council contacted Plaintiffs or any sitting member of the LBOC to invite them to re-apply for their positions.

4. The parties contest whether the Parish Council Members were aware of any individual speech by the Plaintiffs.

5. The parties contest whether any such speech by the Plaintiffs motivated any actions of the Parish Council.

6. The parties contest whether any action of the Parish Council affected the individual speech of the Plaintiffs.

7. The parties contest whether the Parish Council engaged in a "campaign to remove [Plaintiffs] from the LBOC."

8. The parties contest whether the allegations made against the Plaintiffs by third parties motivated the Parish Council to vote against re-appointing Plaintiffs to the LBOC.

9. The parties contest whether the Plaintiffs were provided an opportunity to be heard individually by the Parish Council prior to passage of the May 2, 2024 resolution appointing LBOC members.

10. The parties contest whether the Parish Council denied the Plaintiffs a name-clearing hearing.

11. The parties contest whether Plaintiff Anthony Parr spoke on matters of public concern.

12. The parties contest whether Plaintiff Anthony Parr spoke on matters of public concern as a member of the LBOC, on behalf of Parish Government.

13. The parties contest whether Plaintiff Anthony Parr spoke on matters of public concern as a private citizen.

14. The parties contest whether Plaintiff Rebecca Taylor spoke on matters of public concern.

15. The parties contest whether Plaintiff Rebecca Taylor spoke on matters of public concern as a member of the LBOC, on behalf of Parish Government.

16. The parties contest whether Plaintiff Rebecca Taylor spoke on matters of public concern as a private citizen.

17. The parties contest whether Plaintiff William McHugh spoke on matters of public concern.

18. The parties contest whether Plaintiff William McHugh spoke on matters of public concern as a member of the LBOC, on behalf of Parish Government.

19. The parties contest whether Plaintiff William McHugh spoke on matters of public concern as a private citizen.

20. The parties contest whether Ann Shaw spoke on matters of public concern.

21. The parties contest whether Ann Shaw spoke on matters of public concern as a member of the LBOC, on behalf of Parish Government.

22. The parties contest whether Ann Shaw spoke on matters of public concern as a private citizen.

23. The parties contest whether a majority of the members of the Parish Government council sworn in on January 8, 2024, took any action that pertained to the LBOC prior to May 2, 2024.

24. The parties contest whether with regard to the procedure put in place to vacate and replace members of the LBOC on May 2, 2024, the Plaintiffs were treated the same as Ann Shaw.

25. The parties contest whether with regard to the procedure put in place to vacate and replace members of the LBOC on May 2, 2024, Plaintiffs Taylor and Parr were treated the same as Plaintiff McHugh.

26. The parties contest whether with regard to the procedure put in place to vacate and replace members of the LBOC on May 2, 2024, the Plaintiffs were treated the same as the fifteen candidates for appointment to the LBOC who were not appointed to the LBOC on May 2, 2024.

27. The parties contest whether a majority of the St. Tammany Parish Councilmembers voting on the May 2, 2024, resolution to vacate and reappoint members of the LBOC did so for the reasons set forth in the Resolution No. C-6949.

28. The parties contest whether Parish Government began the initiative to vacate and reappoint all boards and commissions before current members of the Parish Council were sworn-in to office in January of 2024.

29. The parties contest whether Parish Government vacated and reappointed all boards and commissions in 2000 pursuant to Parish Ordinance 00-0157.

30. The parties contest whether, after taking office on January 8, 2024, Councilman Cougle has made public remarks critical of the LBOC or of the Plaintiffs individually.

IX. The following a list of contested issues of law:

1. The parties contest the application of legislative privilege to documents and communications, as well as oral statements, made by Defendant David Cougle and members of the Parish Council. Plaintiffs assert that the legislative privilege does not apply to the resolution used to oust them from the LBOC, or the process of nomination and appointment of candidates, because neither the resolution nor the process used to appoint new LBOC members, is legislation or legislative. Defendants contend the privilege applies to all deliberations and official activity surrounding the resolution, its formation and passage, as well as the nomination and appointment of candidates.

2. The parties contest whether the speech Plaintiffs seek to protect is subject to the First Amendment. Defendants contend that speech by the Plaintiffs in the course and scope of their duties as LBOC members is government speech and not private speech, and therefore is not protected by the First Amendment. Plaintiffs contend their speech was protected.

3. The parties contest whether Parish Government took any action that violated Plaintiffs' First Amendment rights to individual speech.

4. The parties contest whether Parish Government violated Plaintiffs' due process rights by failing to provide a name-clearing hearing. Defendants contend that Plaintiffs cannot meet the factors of the "stigma-plus-infringement" test, namely: (1) they were discharged; (2) stigmatizing charges were made against them in connection with the discharge; (3) the charges were false; (4) they were not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) they requested a hearing to clear their names; and (7) the employer denied the request. .

5. The parties contest whether the exception to the *O'Brien* rule applies.

6. The parties contest whether the speech as an LBOC member undertaken in the course of performing a board members' official duties are issues of public concern and are protected by the First Amendment.

7. The parties contest whether the test the Supreme Court used in *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524, 142 S. Ct. 2407, 2421 (2022) to differentiate between protected speech of a private citizen and unprotected government speech, applies in this case. If the test applies, the parties contest whether the Plaintiffs can satisfy the threshold requirement of establishing that their speech as LBOC members is protected by the Free Speech clause in the First Amendment of the United States Constitution.

8. The parties contest whether evidence of improper or forbidden legislative motive can be introduced to prove retaliation where the resolution is constitutional on its face.

9. Whether the Plaintiffs can prevail on their claims if the St. Tammany Parish Council can show a legitimate motive for vacating and reappointing the LBOC.

10. Whether the Plaintiffs must show that "but for" their exercise of their rights, the Defendants would not have taken the retaliatory action that forms the basis of the Plaintiffs' claims.

11. Whether the Defendants can defeat Plaintiffs' claim by showing that the action to vacate and reappoint members of the LBOC would have been taken with or without the acts that Plaintiffs' claim were the reason for the retaliation. *Nieves v. Bartlett*, 587 U.S. 391, 398-99, 139 S. Ct. 1715, 1722 (2019).

12. Whether the balancing test identified in *Downing v. Williams*, 624 F.2d 612 (5th Cir. 1980) applies to the Plaintiffs' due process claims.

**EXHIBITS, WITNESSES, AND TESTIMONY**

X.   The following is a list and description of exhibits each party intends to introduce at trial. The parties are working in good faith to identify a list of joint exhibits, the authenticity of which they will stipulate, for introduction at trial, including video recordings of official meetings of the Parish Council and LBOC. This is a general list that summarizes those exhibits; a more detailed list with description of specific items will be filed by 5 p.m. on August 1 in accord with this Court's Order:

A.   Plaintiffs: Plaintiffs intend to introduce copies of media reports featuring statements of Defendant David Cougle and other Parish Council members, as well as video and audio recordings of same. Plaintiffs intend to introduce copies of e-mails sent and received by Parish Council members including Defendant David Cougle regarding the LBOC, its members and composition. Plaintiffs also intend to introduce "screengrabs" of posts or statements made on social media by Defendant David Cougle and members of the Saint Tammany Library Accountability Project ("STLAP").

B.   Defendants:  Defendants intend to introduce video and audio recordings, agendas and minutes, of Parish Council meetings and LBOC meetings.  Defendants intend to introduce Parish ordinances and resolutions, and questionnaires completed by the Plaintiffs.

XI.  The parties do not presently anticipate the introduction of any deposition testimony at trial other than for purposes of cross-examination.

XII.   Defendants do not anticipate using any demonstrative exhibits at trial. Plaintiffs may use as demonstrative exhibits printed copies of two full-page advertisements that appeared in the *Slidell Independent* on June 29, 2023, and April 25, 2024. The parties will refer to and play video excerpts of public meetings of the Parish Council and LBOC as exhibits.

XIII. The following is a list of witnesses with a summary of their testimony. All may and will call witnesses are residents of Saint Tammany Parish; their addresses will be submitted with the witness list:

A.   Plaintiffs anticipate calling the following witnesses:

15

1. Plaintiffs McHugh, Parr, and Shaw will testify about their relevant experience as members of the LBOC, including details about the manner and method by which they were originally appointed. They will provide testimony about their service on the LBOC, including details about statements they made during official meetings, votes they took, and views they expressed. They will describe the critical statements made about them by Saint Tammany Library Accountability Project ("STLAP") members, including Mr. Cougle, and their reaction to political controversy regarding library materials. Finally, they will discuss their experience serving on the LBOC after the election, when it became clear to them that the Parish Council was planning to remove them without cause. Plaintiffs may also identify and authenticate Facebook posts made by STLAP members, e-mails sent by STLAP members, and written and recorded statements made to them by Parish Council members.

2. Cynthia Weatherly, Sarah Cook, and Kristen Luchsinger will also give testimony about the political controversy surrounding library materials in their community. They will describe STLAP members' anti-LGBTQIA comments and rhetoric. They will identify and authenticate public-records requests, Facebook posts, and written or recorded statements made by STLAP members, Mr. Cougle, and other parish council members.

3. Defendant David Cougle is expected to testify consistent with testimony given during his deposition, confirming public statements he made as reported by the media as well as in video and audio recordings. He is expected to confirm his role in the formation of STLAP and aspects of his political campaign to remove LBOC members and to seek election to the Parish Council.

4. Parish Council members Cheryl Tanner and Jeff Corbin are expected to testify about their actions and statements on the council with respect to the LBOC and toward Plaintiffs.

B. Defendants anticipate calling the following witnesses:

5. Parish Council President Arthur Laughlin may be called to testify regarding Council voting procedures and processes, Council involvement in the appointment of LBOC members, or for rebuttal purposes.

6. Parish Council member Larry Rolling may be called to testify regarding his involvement in the appointment of LBOC members or for rebuttal purposes.

7. Parish Council member Rick Smith may be called to testify regarding his involvement in the appointment of LBOC members or for rebuttal purposes.

8. Parish Council member Pat Burke may be called to testify regarding his involvement in the appointment of LBOC members or for rebuttal purposes.

9. Parish Council member Kathy Seiden may be called to testify regarding Council voting procedures and processes, the Council's and her own involvement in the appointment of LBOC members or for rebuttal purposes.

10. Council Administrator Mary Burckell may be called to testify regarding historical Council procedures, Council involvement in the appointment of LBOC members, or for rebuttal purposes.

11. Assistant Council Administrator Ashley Gonzalez may be called to testify regarding the appointment process used for LBOC members, or for rebuttal purposes.

16

12. Council Clerk Katrina Buckley may be called to testify regarding the voting and appointment process used for LBOC members, or for rebuttal purposes.
13. Councilmembers Cougle, Corbin and Tanner may be called by the Defense to testify regarding their involvement in the appointment of LBOC members or for rebuttal purposes.

**BENCH TRIAL, DAMAGES, AND SETTLEMENT**

XIV. This case originally was a non-jury case, but the parties have elected to hold a bench trial. The parties will fill separate trial briefs as well as findings of fact and conclusions of law by 5 p.m. on August 1 in accord with this Court's Order.

XV.  Damages are not sought in this case. In addition to injunctive relief and attorney's fees and legal costs, Plaintiffs have requested what further relief as may be deemed necessary or proper.

XVI. The parties have conferred and believe that resolution of issues surrounding legislative privilege would expedite a disposition of the case, and they suggest exploring those issues at the Pretrial Conference.

XVII.      Trial shall commence on August 13, 2024 at 9 a.m. The parties anticipate that approximately two days will be required for trial.

XVIII.      This pretrial order has been formulated after conference at which counsel for the respective parties have appeared in person [via telephone]. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to the signing. Hereafter, this order will control the course of trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

XIX. Possibility of settlement of this case was considered.

Respectfully submitted by:

/s/ *Bruce Hamilton*
Bruce Hamilton, La. Bar No. 33170

17

Warfield Hamilton Law, LLC
725 Hagan Avenue
New Orleans, Louisiana 70110
Telephone: (504) 507-0816
Email: WarfieldHamiltonLaw@Gmail.com
*Counsel for Plaintiffs*

AND

J. COLLIN SIMS
DISTRICT ATTORNEY
22ND JUDICIAL DISTRICT

By:     */s/James J. Bolner, Jr.*
JAMES J. BOLNER, JR. (T.A. - La. Bar Roll No. 21485)
ANGEL L. BYRUM (La. Bar Roll No. 30423)
ALEX L.M. DUCROS (La. Bar Roll No. 32128)
Assistant District Attorneys
21454 Koop Drive, Suite 2G
Mandeville, Louisiana 70471
Telephone: (985) 898-3427
Facsimile: (985) 867 -5124
Email: jjbolner@22da.com
albyrum@22da.com
aducros@22da.com
**Counsel for David Cougle in his official capacity and St. Tammany Parish Government**