## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM R. MCHUGH, III, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1300** |
| **ST. TAMMANY PARISH, ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court is the motion[1] of David Cougle to quash the subpoena *duces tecum*[2] that Plaintiffs William R. McHugh, III, Anthony Parr, and Rebecca Taylor issued to Cougle in his individual capacity. Cougle makes two principal arguments.

First, Cougle contends that the Court must quash the subpoena under Federal Rule of Civil Procedure 45(d)(3)(A)(iii) because it requires him to produce 10 documents over which he asserts the legislative privilege.[3] But Plaintiffs' clarification of the "nature of the subpoena"[4] confirms that the only 10 documents Cougle claims are protected by an unwaived legislative privilege are not, in fact, responsive to the subpoena. As a result, the subpoena does not require Cougle to disclose any material that Cougle contends is protected by an unwaived legislative privilege, and so Cougle

---

[1] ECF No. 51.

[2] ECF No. 51-2 at 1–6.

[3] ECF No. 51-1 at 6–10. As explained on page 22, *infra*, Cougle claims 14 responsive documents are protected by the legislative privilege; however, Cougle waived the privilege as to four of those documents, leaving just 10 documents that Cougle identifies as responsive and privileged. *See id.*

[4] ECF No. 54 at 5–6. As explained on page 23, *infra*, Plaintiffs' opposition clarifies that the subpoena "seeks only communications and other documents made" in Cougle's individual capacity; that it does not seek "official communications"; and that Cougle "misconstrues the nature of the subpoena" insofar as he interprets it to require production of documents made in his official capacity "after he took office." *Id.*

fails to carry his burden to show that the Court must quash the subpoena under Rule 45(d)(3)(A)(iii) because it "requires disclosure of privileged or other protected matter."

Second, Cougle contends that the Court should quash the subpoena because it seeks irrelevant information pre-dating his January 8, 2024 appointment to the St. Tammany Parish Council. But Cougle fails to carry his burden to show that such information is not relevant to *any* claim or defense in this case.

Accordingly, for these reasons and those that follow, Cougle's motion to quash Plaintiffs' subpoena *duces tecum* is **DENIED**.

## I.   BACKGROUND

This civil-rights case arises from Plaintiffs' claim that the St. Tammany Parish Council violated the First Amendment, the Fourteenth Amendment, and the Louisiana Constitution by issuing a May 2, 2024 resolution (the "Resolution") terminating Plaintiffs' five-year, fixed-term appointments to the St. Tammany Parish Library Board of Control (the "Library Board") and appointing five[5] new Library Board members.[6] Plaintiffs generally claim that the St. Tammany Parish Council issued the Resolution in retaliation for protected speech Plaintiffs made during Library Board meetings on the topic of minors' access to Lesbian, Gay, Bisexual, Transgender, and Queer ("LGBTQ") literature at St. Tammany Parish libraries.[7]

---

[5] One of the Library Board's six Parish Council-appointed members, Ann Shaw, was reappointed via the May 2 Resolution. *See* ECF No. 13-1 at 1. Thus, the Resolution resulted in the appointment of five new Library Board members.

[6] *See generally* ECF No. 1.

[7] *See, e.g., id.* at ¶ 88.

Plaintiffs William R. McHugh, III, Anthony Parr, and Rebecca Taylor allege that they are appointed members of the Library Board[8] serving five-year, fixed terms that ended on June 1, 2024. According to the complaint, six of the Library Board's seven members are appointed by the St. Tammany Parish Council, the legislative arm of St. Tammany Parish government.[9] Plaintiffs allege that the St. Tammany Parish Council appointed Plaintiff McHugh to the Library Board on June 1, 2023 for a five-year term expiring on August 4, 2027;[10] that the Parish Council appointed Plaintiff Parr on June 1, 2023 for a five-year term expiring on July 12, 2027;[11] and that the Parish Council appointed Plaintiff Taylor on July 7, 2022 for a five-year term expiring on July 12, 2027.[12] According to the complaint, Parr is the Library Board's "secretary/treasurer,"[13] and Taylor is the Library Board's president.[14]

Plaintiffs allege that the May 2024 termination of their appointments to the Library Board represents the culmination of "a firestorm of controversy" that began in June 2022.[15] Then, three of St. Tammany Parish's twelve library branches—the Slidell, Madisonville, and Mandeville branches—featured displays announcing "Pride Month," "an annual commemoration of primarily [LGBTQ] pride."[16] According to Plaintiffs' complaint, "one display in the children's section at the Mandeville branch library prompted complaints from patrons concerned about their children's

---

[8] *Id.* at ¶¶ 1–3.
[9] *Id.* at ¶ 5.
[10] *Id.* at ¶ 1.
[11] *Id.* at ¶ 2.
[12] *Id.* at ¶ 3.
[13] *Id.* at ¶ 2.
[14] *Id.* at ¶ 3.
[15] *Id.* at ¶¶ 8–9.
[16] *Id.* at ¶ 8 (internal quotation marks and footnote omitted).

exposure to the materials."[17] Per Plaintiffs, "a near-capacity crowd offered widespread support for the Pride displays" at a Library Board meeting in July 2022.[18]

After that July 2022 meeting, according to Plaintiffs, "[t]he controversy shifted" from Pride displays to books "featuring LGBTQ themes."[19] Plaintiffs allege that St. Tammany Parish residents formed the St. Tammany Library Accountability Project, "an advocacy organization" with a "purported mission to prevent the sexual exploitation of children."[20] Defendant David Cougle is a co-founder of the St. Tammany Library Accountability Project.[21] Plaintiffs allege that Cougle leveraged "the issue of library materials" to win election to the St. Tammany Parish Council.[22]

According to the complaint, between summer 2022 and his election to the St. Tammany Parish Council in October 2023, Cougle repeatedly denounced the Library Board and its handling of the issue of minors' access to LGBTQ literature that Cougle and the St. Tammany Library Accountability Project deemed "sexually explicit" or "pedophilic."[23] Among other things, Plaintiffs allege that Cougle launched an online petition titled "Stop the Saint Tammany Parish Library System's Sexual Exploitation of Children!";[24] that Cougle later updated the online petition to announce his candidacy for Parish Council and to promise that, if elected, he would "do everything in [his] power to solve the library crisis[]";[25] that Cougle called the St. Tammany

---

[17] *Id.* at ¶ 10.
[18] *Id.* at ¶ 13.
[19] *Id.* at ¶ 14.
[20] *Id.* at ¶ 15 (internal quotation marks omitted).
[21] *Id.* at ¶ 16.
[22] *Id.*
[23] *See, e.g.*, *id.* at ¶¶ 18, 21, 23, 31, 33 (internal quotation marks omitted).
[24] *Id.* at ¶ 28 (internal quotation marks omitted).
[25] *Id.* at ¶ 34 (internal quotation marks omitted).

Parish Library System's administration "predatory"[26]; that Cougle vowed to "remove [L]ibrary [B]oard members that refused to accept community standards" if Cougle were elected to the Parish Council;[27] and that Cougle criticized what Cougle perceived to be the "liberal" and "far-left" political affiliation of the Library Board.[28]

According to the complaint, the current members of the St. Tammany Parish Council—including Cougle—won election in October 2023.[29] Plaintiffs allege that the October 2023 Parish Council "election swept nine new members into power," and that "only four of the current 14 Council members were previous incumbents."[30] The current Parish Council took office in January 2024.[31]

After Cougle and the other current members of the Parish Council took office, in late January 2024, Cougle allegedly wrote a position paper claiming that the Library Board appointments were "not in compliance with state law."[32] According to the complaint, Cougle contended that Section 25:214 of the Louisiana Revised Statutes requires staggered terms for Library Board appointments, and that because the appointees were not serving staggered terms, the appointments were "invalid."[33] Cougle allegedly claimed that the existing seats on the Library Board "were deemed vacant," and "urged the Parish Council to declare existing [Library Board] members' terms expired, and to nominate candidates for appointment to a staggered term[.]"[34]

---

[26] *Id.* at ¶ 31 (internal quotation marks omitted).
[27] *Id.* at ¶ 42 (internal quotation marks omitted).
[28] *See, e.g.*, *id.* at ¶¶ 42, 44 (internal quotation marks omitted).
[29] *Id.* at ¶ 46.
[30] *Id.*
[31] *Id.* at ¶ 49.
[32] *Id.* at ¶ 51 (internal quotation marks omitted).
[33] *Id.*
[34] *Id.* at ¶ 52.

According to the complaint, in February 2024, the St. Tammany Parish Library Accountability Project urged the St. Tammany Parish Council to "refrain[] from supporting" Plaintiffs, who the Project "perceived to be responsible for the current crisis."[35] A few days later, according to Plaintiffs' complaint, the St. Tammany Parish Library Accountability Project urged the St. Tammany Parish Council to "replac[e] the people who caused the problem," i.e., Plaintiffs.[36]

In March 2024, according to Plaintiffs, Cougle introduced a Parish Council resolution calling for nominations to fill the Library Board positions that Cougle's position paper had declared "vacant."[37] Plaintiffs allege that the Parish Council voted to postpone action on Cougle's resolution;[38] however, at a Parish Council meeting the next month, in April 2024, another Parish Council member introduced a "substantially similar" substitute resolution.[39] The substitute resolution called for (1) the appointment of six Library Board members to staggered terms that would start on June 1, 2024, and (2) Library Board nominations who would be voted on at the May 2, 2024 meeting and whose staggered terms would be assigned by randomly drawn lots.[40] Consistent with the substitute resolution, Plaintiffs allege, the Parish Council nominated 22 candidates to the Library Board, including Plaintiffs and the other then-sitting members of the Library Board, Carmen Butler and Ann Shaw.[41]

---

[35] *Id.* at ¶ 56 (internal quotation marks omitted).
[36] *Id.* at ¶ 57 (internal quotation marks omitted).
[37] *Id.* at ¶ 58 (internal quotation marks omitted).
[38] *Id.* at ¶ 59.
[39] *Id.* at ¶ 63.
[40] *Id.* at ¶ 64.
[41] *Id.* at ¶ 65.

According to the complaint, on May 2, 2024, the Parish Council issued the Resolution reflecting the Council's vote not to appoint Plaintiffs to the Library Board.[42] Rather than reappointing Plaintiffs, the Parish Council voted to appoint five candidates that had been endorsed as "approved conservative candidates" who "would protect our children" in an ad that ran in the *Slidell Independent* the week before the Parish Council meeting.[43] Besides those five candidates, one sitting Library Board member, Ann Shaw, was reappointed to the Library Board.[44] The Resolution described these staggered appointments as "necessary" "[i]n order to comply with state law," specifically "La. R.S. 25:214(B)."[45]

Eighteen days after the St. Tammany Parish Council issued the Resolution appointing Plaintiffs' replacements, on May 20, 2024, Plaintiffs brought this 42 U.S.C. § 1983 lawsuit in this Court.[46] Plaintiffs sued St. Tammany Parish and Cougle, in his official capacity as a member of the St. Tammany Parish Council.[47] In their complaint, Plaintiffs allege four causes of action (1) First Amendment retaliation;[48] (2) viewpoint discrimination under the First Amendment;[49] (3) substantive-due-process violations under the Fourteenth Amendment;[50] and (4) violations of the free-speech rights enshrined in Article I, § 7 of the Louisiana Constitution.[51] Plaintiffs

---

[42] *Id.* at ¶ 69; *see also* ECF No. 13-1 at 1–2.
[43] ECF No. 1 at ¶¶ 67, 69 (internal quotation marks omitted).
[44] ECF No. 13-1 at 1.
[45] *Id.*
[46] *See generally* ECF No. 1.
[47] *Id.* at ¶¶ 4, 7.
[48] *Id.* at ¶¶ 83–94.
[49] *Id.* at ¶¶ 95–109.
[50] *Id.* at ¶¶ 110–117.
[51] *Id.* at ¶¶ 118–123.

seek attorney's fees and costs under 42 U.S.C. § 1988 and "declaratory relief and an injunction barring enforcement" of the Resolution.[52] Plaintiffs do not seek damages.[53]

As for the First Amendment retaliation claim, Plaintiffs allege that they "engaged in protected First Amendment activities" when they "discuss[ed] Library Board actions and agenda items; discuss[ed] and vot[ed] on book challenges; discuss[ed] censorship; [and] discuss[ed] accessibility and display of items at parish libraries."[54] Plaintiffs allege that St. Tammany Parish and Cougle "engaged in adverse action [against Plaintiffs] in suggesting, discussing, and passing [the Resolution] to appoint six new Library Board members, replacing Plaintiffs and effectively terminating their duly made appointments to the Library Board."[55] And Plaintiffs allege that those "adverse actions were motivated by and taken in retaliation for Plaintiffs' speech, not for another legitimate government reason."[56]

As for the viewpoint-discrimination claim, Plaintiffs allege they "exercised their fundamental constitutional right to speak at Library Board meetings[] [by] expressing their views about Library Board actions and agenda items; by voting on book challenges; by discussing censorship; [and] by discussing accessibility and display of items at parish libraries."[57] Plaintiffs allege "Defendants discriminated against the content and viewpoint of Plaintiffs' speech by terminating their appointments to the Library Board."[58] And Plaintiffs allege "Defendants' motive in

---

[52] *Id.* at 1 (unnumbered opening paragraph).
[53] *Id.* at 24 (unnumbered "wherefore" clause).
[54] *Id.* at ¶ 85.
[55] *Id.* at ¶ 88.
[56] *Id.* at ¶ 90.
[57] *Id.* at ¶ 99.
[58] *Id.* at ¶101.

removing Plaintiffs from the Library Board was to silence a particular viewpoint."[59]

As for the substantive-due-process claim under the Fourteenth Amendment, Plaintiffs allege that they "have a liberty interest" in their unpaid, voluntary appointments to the Library Board that "was implicated in the Parish Council's actions to remove them."[60] Plaintiffs allege that the Parish Council terminated their appointments "based on various false charges that were publicized, i.e., that they are liberal, activist, members of a political conspiracy to sexualize children."[61] According to Plaintiffs, "Defendants failed to refute these untrue allegations, failed to protect Plaintiffs' professional standing and reputation, and failed to redress the damages caused to them by the false charges of Cougle and others."[62] Plaintiffs ultimately allege that "Defendants terminated Plaintiffs' positions . . . without providing them due process of law to refute and redress these unfounded and untrue charges."[63]

Finally, as for the fourth and final claim—a free-speech claim under Article I, § 7 of the Louisiana Constitution—Plaintiffs allege that "Defendants intentionally and willfully retaliated against Plaintiffs for exercising their freedom of speech and association by acting to terminate their appointments to the Library Board."[64]

---

[59] *Id.* at ¶ 102.
[60] *Id.* at ¶ 111.
[61] *Id.* at ¶ 112.
[62] *Id.* at ¶ 115.
[63] *Id.* at ¶117.
[64] *Id.* at ¶ 121.

On the same day Plaintiffs filed this lawsuit, Plaintiffs moved for a temporary restraining order and a preliminary injunction prohibiting Defendants from enforcing the Resolution.[65] In that May 20 motion, Plaintiffs asked the Court to issue injunctive relief before June 1, when the terms of the Library Board members appointed through the St. Tammany Parish Council's May 2 Resolution would begin.[66] Plaintiffs did not submit any evidence supporting the motion for a temporary restraining order.[67]

On May 31, two days after oral argument,[68] the Court denied the motion for a temporary restraining order.[69] The Court concluded that "Plaintiffs ha[d] not carried their heavy burden to prove an unequivocal need for issuance of a temporary restraining order by June 1, 2024."[70] "Specifically," the Court concluded that "Plaintiffs ha[d] not shown a substantial threat of irreparable injury if the new Library Board members appointed on May 2 begin their terms on June 1, considering the first meeting of the new Library Board purportedly will not occur until July 22."[71] Importantly, however, the Court "emphasize[d] that its conclusion and analysis [were] based on the limited briefing and the lack of evidence before it, and that the Court's preliminary-injunction analysis could depart sharply from the necessarily abbreviated analysis offered" in the opinion denying a temporary restraining order.[72]

---

[65] ECF No. 3.
[66] ECF No. 3-1 at 20.
[67] ECF Nos. 3 (motion); 3-1 (supporting memorandum); 3-2 (proposed order).
[68] *See* ECF No. 16 (minute entry).
[69] ECF No. 17.
[70] *Id.* at 1.
[71] *Id.*
[72] *Id.* at 12.

Six days later, on June 5, the Court consolidated the hearing on Plaintiffs' motion for a preliminary injunction with a bench trial on the merits of the action under Federal Rule of Civil Procedure 65(a)(2).[73] The Court's minute entry and order provided the parties "clear and unambiguous notice of the [C]ourt's intent to consolidate the trial and the hearing . . . at a time which still afford[ed] the parties a full opportunity to present their respective cases." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations, quotation marks, and brackets omitted). No party submitted a timely, reasoned objection to consolidation.[74]

Three substantive rulings followed the Court's Rule 65(a)(2) consolidation order. First, the Court denied Cougle's Rule 12(b)(6) motion to dismiss the Section 1983 claims against him.[75] The Court reasoned that Cougle was not entitled to absolute legislative immunity for the independent reasons that (1) Plaintiffs sue him in his official capacity, and (2) Plaintiffs seek declaratory and injunctive relief against him.[76] The Court also exercised its discretion to decline to dismiss the official-capacity claims against Cougle as redundant.[77] That ruling rested, in relevant part, on three facts: (1) Plaintiffs seek prospective injunctive relief against Cougle; (2) Plaintiffs allege specific wrongdoing by Cougle; and (3) it is unclear whether Cougle would be

---

[73] ECF No. 18 at 2.

[74] On June 27—22 days after the Court consolidated the preliminary-injunction hearing with a trial on the merits under Rule 65(a)(2)—Defendants notified the Court that Defendants objected to Rule 65(a)(2) consolidation. *See* ECF No. 40. The objection did not include any facts or supporting authority; the objection simply notified the Court that Defendants "object to the consolidation of the hearing on the merits with the trial of the Plaintiffs' request for a Preliminary Injunction," without explaining the basis for the objection. *Id.* at 1. The Court overruled the objection "because Defendants . . . provided no support—factual or legal—for it." ECF No. 42 at 13 n.83.

[75] ECF No. 37.

[76] *Id.* at 14.

[77] *Id.* at 14–17.

bound by an injunction against St. Tammany Parish only, given that Cougle is not a Parish employee but an independently elected member of the Parish Council.[78]

Second, the Court denied St. Tammany Parish's Rule 12(b)(6) motion to dismiss the claims against it.[79] The Court first declined to dismiss Plaintiffs' First Amendment retaliation claim based on the facial constitutionality of the Resolution and the so-called "O'*Brien* rule" because the well-pleaded allegations of the complaint allowed at least a plausible inference that the Resolution effectively singled Plaintiffs out for disfavored treatment, and dismissing the claim at the Rule 12 stage would have required the Court to resolve fact disputes.[80] The Court then declined to dismiss Plaintiffs' viewpoint-discrimination claim based on the Parish's argument that Plaintiffs do not have a First Amendment right to sit on the Library Board because Plaintiffs do not claim a constitutional right to sit on the Library Board; their First Amendment viewpoint-discrimination claim instead rests on their alleged First Amendment right to speak at Library Board meetings.[81] The Court next declined to dismiss Plaintiffs' due-process claim based on the Parish's argument that such a claim required an employment relationship because the Parish failed to persuade the Court that Plaintiffs' due-process claim in fact requires an employment relationship.[82] Finally, the Court declined to dismiss Plaintiffs' free-speech claims under the Louisiana Constitution for the same reasons the Court declined to dismiss

---

[78] *Id.* at 16–17.
[79] ECF No. 52.
[80] *Id.* at 12–21.
[81] *Id.* at 21–24.
[82] *Id.* at 24–26.

Plaintiffs' claims under the First Amendment to the United States Constitution.[83]

The third and final substantive ruling is the one most relevant to the motion to quash that is now before the Court: The Court's June 28 order and reasons denied two expedited discovery motions raising legislative privilege and other objections to June 4 discovery that Plaintiffs served on Cougle in his official capacity.[84]

In the first of those motions, Plaintiffs moved *in limine* to preclude Defendants, categorically, from asserting the legislative privilege to bar discovery.[85] Plaintiffs contended that the legislative privilege does not bar discovery because the challenged actions of the St. Tammany Parish Council were "ministerial and/or administrative" rather than legislative, and because, even if the privilege could properly be invoked, the privilege must yield because this case presents exceptional circumstances.[86]

In the second of those expedited discovery motions, Defendants moved for a protective order relieving them of the obligation to respond to the June 4 discovery requests directed to Cougle in his official capacity.[87] As relevant here, Defendants contended that a protective order was merited because Plaintiffs' June 4 discovery requests were directed at a non-party; the requests sought irrelevant information about legislative motive; and the legislative privilege barred the discovery.[88]

---

[83] *Id.* at 26.
[84] ECF No. 42.
[85] *See generally* ECF No. 25.
[86] ECF No. 25-1 at 1–7.
[87] ECF No. 30.
[88] ECF No. 30-1 at 1–25.

As for Defendants' argument that Plaintiffs' discovery was directed at a non-party, the Court's June 28 order and reasons concluded that Defendants had not carried their burden to show good cause meriting a protective order.[89] The Court concluded that Plaintiffs' discovery was properly directed at a party, David Cougle in his official capacity, because that discovery was directed to "Defendant David Cougle," and Cougle is a Defendant in his official capacity only.[90] The Court thus declined to issue a protective order on the basis of Defendants' argument that Plaintiffs' June 4 discovery was directed at a non-party.[91] The Court further ordered Defendants to "construe each of Plaintiffs' June 4 discovery requests as directed to Cougle in his official capacity and respond accordingly by no later than Monday, July 1, 2024 at 5:00 p.m."[92]

As for Defendants' irrelevance-of-motive argument, the Court's June 28 order and reasons concluded that Defendants failed to carry their burden to show good cause meriting issuance of a protective order.[93] The Court reasoned that the motive for Defendants' actions is relevant to Plaintiffs' First Amendment retaliation claim because retaliatory motive is an element of that claim.[94] Consequently, the Court declined to issue a protective order based on Defendants' argument that motive is irrelevant to Plaintiffs' First Amendment retaliation claim.[95] The Court further ordered that, to the extent Defendants were refusing to respond to any of Plaintiffs'

---

[89] *Id.* at 18–20.
[90] *Id.*
[91] *Id.*
[92] *Id.* at 19–20.
[93] *Id.* at 20–22.
[94] *Id.*
[95] *Id.*

June 4 discovery based on this irrelevance-of-motive argument, "Defendants must respond to the discovery by Monday, July 1, 2024 at 5:00 p.m."[96]

As for the legislative privilege, the Court's June 28 order and reasons concluded that the Court could not resolve the legislative-privilege questions raised in the dueling discovery motions on the limited record that was before it.[97] The parties failed to provide the information necessary to decide whether, and if so, to what extent, the legislative privilege applied to bar any of Plaintiffs' June 4 discovery to Cougle in his official capacity.[98] The Court denied Defendants' motion for a protective order on the legislative-privilege ground without prejudice to Defendants' right to timely assert the legislative privilege in a manner that allows both the Court and Plaintiffs to evaluate Defendants' privilege claims.[99]

In the same June 28 order and reasons, the Court directed Defendants—if they wished to preserve any legislative-privilege objection to Plaintiffs' June 4 discovery to Cougle in his official capacity—to provide the information necessary to allow the Court and Plaintiffs to assess Defendants' legislative-privilege claims on a discovery-request-specific basis.[100] Defendants did so. Plaintiffs, for their part, did not move to compel any further responses to Plaintiffs' June 4 discovery. Nor have Plaintiffs filed a motion of any sort challenging any of the document-specific legislative-privilege claims Defendants made in response to the Court's June 28 order and reasons.

---

[96] *Id.* at 22.
[97] *Id.* at 23–28.
[98] *Id.* at 27.
[99] *Id.*
[100] *Id.* at 28.

Indeed, the motion to quash before the Court represents the first time since the Court issued its June 28 order and reasons that the parties have asked the Court to referee a discovery dispute or otherwise resolve a question of legislative privilege.

After the Court ruled on the dueling discovery motions raising legislative privilege in connection with discovery served on Cougle in his *official capacity*, on July 9, Plaintiffs issued a subpoena *duces tecum* to "David Cougle, in his *individual capacity*."[101] Plaintiffs' subpoena set a July 24 compliance date[102] and requested that Cougle, in his individual capacity, respond to these ten[103] requests for production:

1. Please produce all communications between you and the Slidell Ministers Association relating to Plaintiffs and the Library Board from July 2022 to present.

2. Please produce all communications between you and the *Slidell Independent* and/or Kevin Chiri relating to Plaintiffs and the Library Board from July 2022 to present.

3. Please produce all communications between you and other members of STLAP, including Connie Phillips, relating to Plaintiffs and the Library Board from July 2022 to present.

4. Please produce all communications between you and members of the Parish Council relating to Plaintiffs and the Library Board from July 2022 to present.

5. Please produce all communications between you and members of the Parish Council relating to library materials from July 2022 to present.

6. Please produce all communications between you and Concerned Citizens of Saint Tammany and/or Rick Franzo relating to Plaintiffs and the Library Board from July 2022 to present.

---

[101] ECF No. 51-2 (emphasis added).
[102] *Id.* at 1.
[103] The requests for production attached to the subpoena *duces tecum* are numbered 1–9, but they include two separate requests numbered nine. *See id.* at 5–6.

7. Please produce all communications between you and Citizens for a New Louisiana and/or Michael Lunsford relating to Plaintiffs and the Library Board from July 2022 to present.

8. Please produce all communications between you and the Saint Tammany Parish Republican Executive Committee ("STPREC") relating to Plaintiffs and the Library Board from July 2022 to present.

9. Please produce all posts or statement you made on communications platforms relating to Plaintiffs and the Library Board from July 2022 to present. For purposes of this request, "communications platforms" means messaging applications, websites, and social media sites/platforms.

10. Please produce all audio and video recordings of yourself discussing the Library Board or library materials created from July 2022 to present.[104]

Now, Cougle moves to quash the subpoena *duces tecum* on legislative-privilege and relevance grounds.[105] Plaintiffs oppose.[106]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 45 "governs discovery from non-parties through the issuance of subpoenas." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) (citing FED. R. CIV. P. 45 advisory committee's note to 2013 amendment). And Rule 45 specifically "governs subpoenas served on a third party, such as [Cougle, in his individual capacity], as well as motions to quash or modify or compel compliance with such a subpoena." *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 42 (N.D. Tex. 2015) (citing *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)).

---

[104] *Id.* at 4–6.
[105] ECF No. 51.
[106] ECF No. 54.

Under Rule 45(a)(1)(A)(iii), a party may serve a Rule 45 subpoena "command[ing] each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises." FED. R. CIV. P. 45(a)(1)(A)(iii).

"[T]he scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)." *Camoco, LLC*, 333 F.R.D. at 607 (internal citations omitted). Rule 26(b) in turn allows discovery of "any nonprivileged matter that is [A] relevant to any party's claim or defense and [B] proportional to the needs of the case, considering [i] the importance of the issues at stake in the action, [ii] the amount in controversy, [iii] the parties' relative access to relevant information, [iv] the parties' resources, [v] the importance of the discovery in resolving the issues, and [vi] whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "At the discovery stage, relevance includes '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Tate v. DG La. LLC*, 653 F. Supp. 3d 316, 320 (E.D. La. 2023) (quoting *Rangel v. Gonzales Mascorro*, 274 F.R.D. 585, 590 n.5 (S.D. Tex. 2011)). "Discovery should be allowed unless the party opposing discovery establishes that the information sought 'can have no possible bearing on the claim or defense of the party seeking discovery.'" *Id.* (quoting *Dotson v. Edmonson*, No. 16-CV-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017)). "If relevance is in doubt,

the [C]ourt should be permissive in allowing discovery." *Id.* (citing *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010)).

A non-party served with a Rule 45 subpoena may object by sending written objections to the issuing party "before the earlier of the time specified for compliance or 14 days after the subpoena is served." FED. R. CIV. P. 45(d)(2)(B). "[E]ither in lieu of or in addition to serving objections" on the issuing party, the recipient "can timely file a motion to quash or modify the subpoena." *MetroPCS v. Thomas*, 327 F.R.D. 600, 607 (N.D. Tex. 2018) (internal citations, alterations, and quotation marks omitted).

Rule 45(d)(3) governs quashing or modifying a subpoena. *See* FED. R. CIV. P. 45(d)(3). "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A).

"On a Rule 45(d)(3)(A) motion to quash or modify a subpoena, the moving party has the burden of proof." *MetroPCS*, 327 F.R.D. at 609 (first citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); and then citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

19

### III.   ANALYSIS

Cougle contends that Rule 45(d)(3) requires the Court to quash the subpoena served on him in his individual capacity for two principal reasons.[107] First, Cougle contends that the subpoena seeks documents protected by the legislative privilege.[108] Second, Cougle contends that the subpoena seeks documents that are irrelevant because they pre-date his appointment to the St. Tammany Parish Council.[109] Plaintiffs principally rejoin that Cougle lacks standing to challenge the subpoena in his official capacity,[110] that Cougle cannot assert the legislative privilege in his individual capacity,[111] and that the subpoena seeks relevant documents.[112]

### A.   Standing

Plaintiffs contend that the Court need not reach the merits of the motion because Cougle lacks standing. They reason that Cougle lacks standing to challenge the subpoena in his *official capacity* because Plaintiffs served the subpoena on him in his *individual capacity*.[113] "Absent a personal right or privilege with respect to the subpoenaed materials, a party generally does not have standing to quash a subpoena *duces tecum* issued to a third party because the party is not in possession of the materials subpoenaed." *Crescent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*, 643 F. Supp. 3d 613, 618 (E.D. La. 2022) (internal citations omitted); *see also, e.g., Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (holding that parties lacked

---

[107] *See generally* ECF No. 51-1.
[108] *Id*. at 2–13.
[109] *Id*. at 14–19.
[110] ECF No. 54 at 3–5.
[111] *Id*. at 5–6.
[112] *Id*. at 6–9.
[113] *Id*. at 3–5.

standing to challenge subpoena to a non-party because the parties were "not in possession of the materials subpoenaed and ha[d] not alleged any personal right or privilege with respect to the materials subpoenaed" (internal citations omitted)).

The Court overrules Plaintiffs' standing objection. The best reading of the motion to quash is that it was filed by the subpoena recipient: David Cougle in his individual—*i.e.*, non-party—capacity. The motion is styled a "Motion to Quash Subpoena Duces Tecum to David Cougle," and the body of the motion states that "David Cougle . . . moves to quash the Plaintiffs' subpoena duces tecum."[114] Unlike prior filings made on behalf of Defendant Cougle in his official capacity,[115] the motion to quash does not indicate that it is being filed on behalf of "Defendant David Cougle" or "David Cougle, in his official capacity."[116] What is more, counsel for Defendants orally represented to the Court on July 24, 2024 that he would be representing Cougle in his individual capacity as recipient of the Rule 45 subpoena. The Court therefore construes the motion as being filed on behalf of Cougle in his individual capacity as the subpoena recipient. Accordingly, (1) because the motion is being filed on behalf of Cougle, in his individual capacity as the subpoena recipient, and not on behalf of Cougle, in his official capacity as a Defendant, and (2) because it is undisputed that Cougle has standing in his individual capacity as the subpoena recipient, the Court concludes that Cougle has standing to move to quash Plaintiffs' subpoena.

---

[114] ECF No. 51.
[115] *See, e.g.*, ECF No. 21-1 at 1; ECF No. 30 at 1.
[116] ECF No. 51 at 1.

Even if the motion were filed on behalf of Cougle in his official capacity, however, the Court would still conclude that Cougle has standing to move to quash the subpoena. A party has standing to move to quash a subpoena issued to a third party if the party "*allege[s]* any personal right or privilege with respect to the materials subpoenaed"; the party's claim of a personal right or privilege need not ultimately prevail in order for the party to have standing to move to quash. *Brown*, 595 F.2d at 966 (emphasis added) (internal citations omitted); *accord, e.g.*, *Burkette v. E. Feliciana Par. Sheriff*, 606 F. Supp. 3d 297, 303 n.26 (M.D. La. 2022) ("[A] party *alleging* some personal privacy right or privilege in the documents sought has standing to challenge a subpoena" (emphasis added) (internal citations omitted)). Accordingly, even assuming *arguendo* that the motion to quash were filed on behalf of Cougle in his official capacity, Cougle would nonetheless have standing to move to quash because Cougle has, at the very least, *alleged* a "privilege with respect to the materials subpoenaed." *Brown*, 595 F.2d at 966 (internal citations omitted).

## B. Legislative Privilege

Cougle contends that the Court must quash the subpoena because it seeks documents protected by the legislative privilege.[117] Cougle claims 14 responsive documents are protected by the legislative privilege.[118] Cougle expressly waives privilege as to four of those documents,[119] leaving 10 documents that Cougle claims

---

[117] ECF No. 51-1 at 2–12.

[118] *Id.* at 6–10.

[119] *Id.* at 51-1 at 7. The four documents as to which Cougle expressly waived the legislative privilege are (1) "PRIVILEGED Memo regarding LBOC appointments not being in compliance with state law (1).pdf"; (2) "PRIVILEGE Fwd_ [External] Request for documents.pdf"; (3) PRIVILEGED Fwd_ Request for documents (1).pdf (1-2)"; and (4) "PRIVILEGED Memo on state law regarding library board appointments (1-16)." *Id.* at 7, 9–10.

22

are responsive and privileged.[120] Plaintiffs do not address any of Cougle's 10 live legislative-privilege claims on a document-specific basis.[121] Instead, Plaintiffs broadly contend that Cougle cannot assert the legislative privilege in his individual capacity because he is not a legislator in his individual capacity.[122] And even if Cougle could assert the legislative privilege in his individual capacity, Plaintiffs continue, the privilege would not attach because the subpoena "seeks only communications and other documents made" in Cougle's individual capacity, not Cougle's "official communications" as a member of the Parish Council.[123] Plaintiffs submit that, "[t]o the extent" Cougle "objects to documents sought and requested . . . after he took office [on] Jan[uary] 8, 2024[,]" Cougle "misconstrues the nature of the subpoena."[124]

The Court need not address the merits of the parties' competing legislative-privilege arguments to resolve the motion because the parties' briefing reveals that the subpoena does not call for any documents over which Cougle maintains the legislative privilege. Indeed, Plaintiffs' clarification of "the nature of the subpoena"[125] reveals that the 10 documents over which Cougle maintains the legislative privilege—*i.e.*, the only basis for Cougle's motion to quash Plaintiffs' subpoena on

---

[120] *Id.* at 5–10. The ten documents that Cougle contends are responsive and subject to an unwaived legislative-privilege claim are: (1)–(3) "Privileged LBOC removal resolution"; (4) "PRIVILEGED Fw_ Library board appointment resolution to be introduced in March(1-4).pdf."; (5) "PRIVILEGED Fwd_ Library board appointment resolution to be introduced in March(1-2).pdf"; (6) "PRIVILEGED Library board appointment resolution to be introduced in March(1-28).pdf"; (7) "PRIVILEGED L Fw_Draft Substitute Resolution re_ Library Board of Control(1).pdf"; (8) "PRIVILEGED RE_ Discussion item.pdf"; (9) "PRIVILEGED Re_ Press Release_ LIBRARY IN FULL COMPLIANCE WITH NEW CARD SYSTEM (1-25).pdf"; and (10) "PRIVILEGED Fw: text of 3 previous resolutions (1-2).pdf." *Id.*

[121] *See generally* ECF No. 54.

[122] *Id.* at 5–6.

[123] *Id.*

[124] *Id.* at 5.

[125] *Id.* at 5.

legislative-privilege grounds—are not even responsive to Plaintiffs' subpoena.[126] Based on the document descriptions that Cougle has provided—and that Plaintiffs have not challenged here—each of the 10 at-issue documents post-dates Cougle's January 8, 2024 assumption of office and reflects a communication to, from, or involving Cougle in his official capacity as a member of the St. Tammany Parish Council:

- "PRIVILEGED LBOC removal resolution" *(Documents 1–3)*[127]

    - Based on Cougle's unchallenged description, these "identical documents" are not responsive to Plaintiffs' subpoena, as clarified, because they are dated January 13, 2024, after Cougle's appointment, and they reflect a communication by Cougle in his official capacity as a member of St. Tammany Parish Council.

- "PRIVILEGED Fw_ Library board appointment resolution to be introduced in March(1-4).pdf"; "PRIVILEGED Fwd_ Library board appointment resolution to be introduced in March(1-2).pdf"; and "PRIVILEGED Library board appointment resolution to be introduced in March(1-28).pdf" *(Documents 4–6)*[128]

    - Based on Cougle's unchallenged description, these "similar if not

---

[126] The Court has not been provided the 10 at-issue documents for *in camera* review. Nevertheless, based on Cougle's unchallenged description of those documents, all of the documents appear to be official communications by, to, or otherwise involving Cougle as a member of the St. Tammany Parish Council, in his official capacity. All of the communications post-date Cougle's January 8, 2024 appointment to the St. Tammany Parish Council, and none of the communications appears to have been sent or received by Cougle in his individual—*i.e.*, non-councilmember—capacity.

[127] ECF No. 51-1 at 6.

[128] *Id.* at 7–8.

identical emails"[129] are not responsive to Plaintiffs' subpoena, as clarified, because they are dated February 16, 2024, after Cougle's appointment, and they reflect communications to and from Cougle in his official capacity as a member of the St. Tammany Parish Council.

- "PRIVILEGED L Fw_Draft Substitute Resolution re_ Library Board of Control(1).pdf" *(Document 7)*[130]

  o Based on Cougle's unchallenged description, this email from one member of the St. Tammany Parish Council to "Councilman Cougle"[131] is not responsive to Plaintiffs' subpoena, as clarified, because it is dated March 16, 2024, after Cougle's appointment, and it reflects a communication to Cougle in his official capacity as a member of the St. Tammany Parish Council.

- "PRIVILEGED RE_ Discussion item.pdf" *(Document 8)*[132]

  o Based on Cougle's unchallenged description, this email from the Clerk of the St. Tammany Parish Council to "Councilman Cougle" is not responsive to Plaintiffs' subpoena, as clarified, because it is dated January 23, 2024, after Cougle's appointment, and it reflects a communication to Cougle in his official capacity as a member of the St. Tammany Parish Council.

---

[129] *Id.* at 8.
[130] *Id.* at 9.
[131] *Id.*
[132] *Id.*

- "PRIVILEGED Re_ Press Release_ LIBRARY IN FULL COMPLIANCE WITH NEW CARD SYSTEM (1-25).pdf" *(Document 9)*[133]

  o Based on Cougle's unchallenged description, this email from "Councilman Cougle"[134] to another member of the St. Tammany Parish Council is not responsive to Plaintiffs' subpoena, as clarified, because it is dated February 6, 2024, after Cougle's appointment, and it reflects a communication from Cougle in his official capacity as a member of the St. Tammany Parish Council.

- "PRIVILEGED Fw: text of 3 previous resolutions (1-2).pdf" *(Document 10)*[135]

  o Based on Cougle's unchallenged description, this email from "Councilman Cougle"[136] to another member of the St. Tammany Parish Council is not responsive to Plaintiffs' subpoena, as clarified, because it is dated January 22, 2024, after Cougle's appointment, and it reflects a communication from Cougle in his official capacity as a member of the St. Tammany Parish Council.

---

[133] *Id.* at 10.
[134] *Id.*
[135] *Id.*
[136] *Id.*

In sum, given Plaintiffs' clarification of the "nature of the subpoena,"[137] none of the 10 documents over which Cougle asserts the legislative privilege is responsive to the subpoena. Accordingly, (1) because none of the 10 documents over which Cougle maintains the privilege is responsive to the subpoena, and (2) because Cougle has not identified any basis independent of those 10 documents for quashing the subpoena on legislative-privilege grounds, the Court concludes Cougle has not carried his burden to show that the subpoena requires him to disclose matter protected by the legislative privilege.[138] *See* Fed. R. Civ. P. 43(d)(3)(A)(iii). The Court therefore denies Cougle's motion to quash the subpoena, in its entirety, on legislative-privilege grounds.[139]

## C.   Relevance

Cougle next contends that the Court should quash the subpoena *duces tecum* because it seeks irrelevant information that pre-dates his appointment to the St. Tammany Parish Council.[140] The subpoena *duces tecum* seeks documents from July 2022 to present,[141] and Cougle did not assume office on the 14-member St. Tammany Parish Council until January 8, 2024.[142] According to Cougle, documents pre-dating his appointment to the St. Tammany Parish Council are not relevant because Plaintiffs "cannot prove legislative motive by proving [that] David Cougle criticized

---

[137] ECF No. 54 at 5.

[138] Of course, because they are not responsive to the subpoena, as clarified, Cougle need not produce the 10 at-issue documents in response to the subpoena.

[139] Because the Court denies the legislative-privilege component of the motion to quash on the ground that none of the 10 documents over which Cougle maintains the legislative privilege is responsive to the subpoena, the Court need not address Plaintiffs' alternative argument that Cougle cannot assert the legislative privilege in his individual capacity. *See* ECF No. 54 at 5–6.

[140] ECF No. 51-1 at 12–19.

[141] ECF No. 51-2 at 4–6.

[142] *See* ECF No. 55 at 5.

the [Library Board] either before or after he was sworn in as a member of the Parish Council."[143] Plaintiffs respond that documents pre-dating Cougle's appointment are relevant because they "demonstrate individual-capacity David Cougle's animus toward [P]laintiffs and his intention to remove them from the Library Board";[144] because "Cougle is a party";[145] and because Cougle's "communications, rhetoric, and yearslong crusade influenced the motivations of several other council members."[146]

Cougle has not carried his burden to show that information pre-dating his appointment is irrelevant. To carry that burden, Cougle had to show that information pre-dating his appointment does not "bear[] on," and could not "reasonably . . . lead to other matter that could bear on, any issue that is or may be in the case." *Tate*, 653 F. Supp. 3d at 320 (internal citation and quotation marks omitted). In other words, Cougle had to "establish[] that the information sought can have no possible bearing" on any claim or defense in this case. *Id.* (internal citation and quotation marks omitted). Cougle failed to do so. Cougle remains a party to this case, and Plaintiffs have alleged that Cougle led a years-long "campaign"—beginning before Cougle took office and continuing thereafter—to remove Plaintiffs from the Library Board.[147] That alleged continuing "campaign" forms part of Plaintiffs' claims for both First Amendment retaliation and viewpoint discrimination.[148] What is more, Plaintiffs have alleged that Cougle made "false charges" against Plaintiffs before Cougle took

---

[143] *Id.* at 12.
[144] ECF No. 54 at 7.
[145] *Id.* at 8.
[146] *Id.*
[147] *See, e.g.*, ECF No. 1 at ¶¶ 18, 21, 23, 27–29, 31, 33–34, 42–45, 51–53, 92, 107.
[148] *See, e.g.*, *id.* at ¶¶ 92 (First Amendment retaliation); 107 (viewpoint discrimination).

office,[149] and those alleged "false charges" are in turn part of Plaintiffs' due-process claim.[150] Ultimately, on this record, the Court cannot conclude that information pre-dating Cougle's January 8, 2024 appointment "can have no possible bearing" on any claim or defense in this case. *Id.* (internal citation and quotation marks omitted).[151]

Accordingly, because Cougle has not carried his burden to show that information pre-dating his appointment "can have no possible bearing," *id.* (internal citation and quotation marks omitted), on any claim or defense in this case, the Court denies Cougle's motion to quash the subpoena on relevance grounds.[152] To the extent that Cougle is refusing to produce any documents responsive to the subpoena based on this relevance objection—namely, documents pre-dating his appointment to the St. Tammany Parish Council—Cougle's objection is overruled, and Cougle must produce responsive documents by Monday, August 5, 2024 at 5:00 p.m.

---

[149] *See, e.g., id.* at ¶¶ 18, 23, 29, 31, 42.

[150] ECF No. 1 at ¶¶ 110–117.

[151] Neither of the cases on which Cougle relies compels a conclusion that documents pre-dating Cougle's appointment are irrelevant to all claims and defenses in this case. *See* ECF No. 51-1 at 12–14 (first citing *MC Trilogy Texas, LLC v. City of Heath, Tex.*, No. 3:22-CV-2154, 2023 WL 8569018, at *6–8 (N.D. Tex. Dec. 11, 2023); and then citing *In re Hubbard*, 803 F.3d 1298, 1301–08 (11th Cir. 2015)). *MC Trilogy*'s relevance analysis does not control the relevance analysis here because there, unlike here, the plaintiff's claims did "not require it to prove scienter." *See* 2023 WL 8569018, at *3. *Hubbard*'s discussion of relevance in connection with the legislative privilege is not dispositive of the relevance analysis here because the claims of Plaintiffs here, unlike the claims of the plaintiffs there, are not limited to First Amendment retaliation. *See* 803 F.3d at 1301–08. Indeed, Plaintiffs assert due-process and viewpoint-discrimination claims in addition to their First Amendment retaliation claim.

[152] Cougle makes, but does not meaningfully develop, several arguments that do not change the Court's conclusion. For example, Cougle asserts that "Plaintiffs were not speaking as private citizens when they were speaking as [Library Board] members," but Cougle does not clearly explain how this assertion supports his argument that documents pre-dating his appointment are irrelevant for all purposes. ECF No. 51-1 at 17. In any event, the question whether Plaintiffs were speaking as "private citizens" is a disputed legal question, *see* ECF No. 56 at 12 ¶¶ 13, 16, 19, 22, which the parties have not yet briefed or otherwise properly presented to the Court for resolution. Cougle also asserts that "Plaintiffs did not adequately plead the elements of a 'name clearing' claim." ECF No. 51-1 at 19. But Cougle does not link that assertion to his relevance argument. And in any event, the assertion goes to a disputed legal question—whether Plaintiffs "meet the factors of the 'stigma-plus-infringement' test," ECF No. 56 at 14 ¶ 4—that is not properly presented in the motion to quash.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion[153] of David Cougle to quash the subpoena *duces tecum* is **DENIED.**  As noted, Cougle need not produce the 10 documents over which he maintains the legislative privilege because those documents are not responsive to Plaintiffs' subpoena, as clarified. To the extent that Cougle is refusing to produce any documents responsive to the subpoena based on the relevance objection considered and rejected in this order and reasons, however, Cougle must produce responsive documents by Monday, August 5, 2024 at 5:00 p.m.

New Orleans, Louisiana, this 1st day of August, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[153] ECF No. 51.