UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILLIAM R. MCHUGH III, ANTHONY PARR, and REBECCA TAYLOR, | * * * * | CIVIL ACTION NO.: 2:24-cv-1300 |
| | * | JUDGE: BRANDON S. LONG |
| Plaintiffs, | * * | MAGISTRATE JUDGE: EVA J. DOSSIER |
| v. | * * * | |
| SAINT TAMMANY PARISH, and DAVID COUGLE, in his official capacity, | * * * | |
| Defendants. | * * * | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
AND INTERVENORS' OBJECTION TO THE
INTRODUCTION OF EVIDENCE COVERED BY
THE LEGISLATIVE PRIVILEGE
AT THE OCTOBER 15, 2024 HEARING.**

**NOW INTO COURT**, through undersigned counsel, come St. Tammany Parish Councilmembers, David Cougle, Cheryl Tanner, Jeffrey Corbin, Arthur Laughlin, Kathy Seiden, Patrick Burke, Larry Rolling, Martha Cazaubon, Rick Smith, David Cougle in his official capacity, and St. Tammany Parish Government, and submit the following memorandum pursuant to this Court's pretrial scheduling order (ECF 97).

After conferring with opposing counsel, a dispute remains between the parties over the admission into evidence at the October 15, 2024 hearing of the recordings that plaintiff William McHugh made of phone calls with St. Tammany Parish Councilmembers Jeffrey Corbin and Cheryl Tanner, identified on Plaintiffs' exhibit list (ECF 106), as Documents 97 and 106.

1

Councilmembers Corbin and Tanner assert their legislative privilege as to the two recordings because they are conversations between legislators and a person brought into the legislative process, in this case William H. McHugh. The Defendants join the Councilmembers' request that the Court prohibit the Plaintiffs from introducing evidence that falls under the protection afforded to legislators concerning all aspects of the legislative process.

The Plaintiffs addressed the admissibility of the secret recordings in their Motion in Limine (ECF 69). Plaintiffs have not brought any other authority to the Defendants' attention to support the admissibility of the recordings. In their Motion in Limine, the Plaintiffs asserted that the Councilmembers who were surreptitiously recorded waived their legislative privileges because they voluntarily discussed the legislative process with an individual who, at the time, was a member of the St. Tammany Parish Library Board of Control ("LBOC") but not involved in the legislative process. (ECF 69-1 at p 9).

The factual allegations of the Plaintiffs' complaint are that the Plaintiffs were among twenty-two nominees for LBOC appointment. (ECF-1 para. 65). Prior to the recorded conversation with Councilmember Corbin, Mr. McHugh and Councilmember Corbin met to discuss the LBOC and the pending legislation. (Exhibit "A" at page 28). McHugh communicated with Councilmember Corbin again prior to the vote and, in Mr. McHugh's own words, asked Mr. Corbin to support and vote for him. (Exhibit "A" at pages 28, 29). Additionally, Mr. McHugh was interviewed by Councilmembers Corbin, Binder and Burke. (Exhibit "A" at page 30). Mr. McHugh's involvement with Councilmember Tanner also concerned whether the Council would decide to put him and the other LBOC members up for reappointment along with the other candidates. (Exhibit "A" at page 39).

Plaintiffs' self-serving statement, to the effect that they were not involved with the legislative process, does not negate the fact that (1) at the time of the phone calls Mr. McHugh was a member of the LBOC; and (2) Mr. McHugh inserted himself, or was brought into the legislative process, when he discussed the different proposals to reappoint board members to staggered terms and when he solicited votes.

Mr. McHugh's communications with members of the Council were directly related to the vote on the resolution to stagger the terms of the LBOC members, i.e. the legislative process.

The Plaintiffs' narrow view of the legislative privilege is inconsistent with this Court and the Fifth Circuit Court of Appeals' interpretation and application of the legislative privilege.

The starting point of the analysis of legislative privilege is the following quote from the *Hughes* case.[1]

> State lawmakers can invoke legislative privilege to protect actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'" [T]he privilege is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process." As part of that process, lawmakers routinely "[m]eet[] with persons outside the legislature—such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation." "Consequently, some communications with third parties, such as private communications with advocacy groups, are protected by legislative privilege . . . ." These cases teach, and we agree, that the legislative privilege's scope is necessarily broad.

*La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 235-36 (5th Cir. 2023).

Plaintiffs' argument lacks merit because communication between a legislator and individuals who are not members of the legislative body are afforded just as much protection as communication between legislators. As the Court stated in *Hughes*

> [t]he legislators did not waive the legislative privilege when they "communicated with parties outside the legislature, such as party leaders and lobbyists." The district

---

[1] *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023).

court's contrary holding flouts the rule that the privilege covers "legislators' actions in the proposal, formulation, and passage of legislation." An exception for communications "outside the legislature" would swallow the rule almost whole, because "[m]eeting with 'interest' groups . . . is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider.

*La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 236 (5th Cir. 2023)(footnotes omitted).

Next, in their motion in limine the Plaintiffs claimed that the privilege was waived because the legislators *voluntarily* returned Mr. McHugh's phone call and *voluntarily* discussed the subject of the Council's the pending legislative action relative to the LBOC appointments. (ECF 69-1 at page 9). There is no loophole in the reported Fifth Circuit cases on legislative privilege that exempts *voluntary* communications from the legislative privilege.

The test that the Fifth Circuit applies to determine whether the legislative privilege was waived is *whether the discussion was public*. *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 236-37 (5th Cir. 2023). It is undisputed that Mr. McHugh's secret recordings were not made public, and still have not been made public. Thus far, Mr. McHugh has honored his pledge to keep the recordings confidential pending a ruling from the Fifth Circuit on the issue of legislative privilege.

## CONCLUSION

The Defendants and Intervenors submit that the recorded conversations between Plaintiff McHugh and Councilmember Tanner and Councilmember Corbin are covered by the legislative privilege. The Plaintiffs should not be permitted to introduce evidence that is protected by the legislative privilege.

Respectfully submitted:

**J. COLLIN SIMS**
**DISTRICT ATTORNEY**
**22ND JUDICIAL DISTRICT**

By: _____
**JAMES J. BOLNER, JR. (La. Bar Roll No. 21485)**
**ANGEL L. BYRUM (La. Bar Roll No. 30423)**
**ALEX L.M. DUCROS (La. Bar Roll No. 32128)**
**Assistant District Attorneys**
21454 Koop Drive, Suite 2G
Mandeville, Louisiana 70471
Telephone: (985) 898-3427
Facsimile: (985) 867 -5124
Email: jjbolner@22da.com
albyrum@22da.com
aducros@22da.com
*Counsel for Defendants and Intervenors*