# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2025

Lyle W. Cayce
Clerk

No. 24-30523

ANTHONY PARR; REBECCA TAYLOR; WILLIAM R. MCHUGH, III,

*Plaintiffs—Appellees*,

*versus*

DAVID COUGLE,

*Defendant—Appellant*,

KATHY SEIDEN; CHERYL TANNER; MARTHA J. CAZAUBON; PATRICK BURKE; ARTHUR LAUGHLIN; LARRY ROLLING; RICK SMITH; JEFFERY CORBIN,

*Intervenor Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-1300

_____

Before ELROD, *Chief Judge*, and OLDHAM, and WILSON, *Circuit Judges*.
CORY T. WILSON, *Circuit Judge*:

Following public outcry over "Pride Month" displays in the parish's public libraries, the St. Tammany Parish Council passed a resolution that vacated the terms of office of the members of the St. Tammany Parish Library Board of Control, staggered those terms in accordance with Louisiana law,

and appointed new Board members (the Resolution). Three of the six ousted Board members—Anthony Parr, Rebecca Taylor, and William McHugh, III—sued under 42 U.S.C. § 1983, asserting viewpoint-discrimination, free-speech, retaliation, and substantive-due-process claims against the Council and Councilman David Cougle, in his official capacity. They sought declaratory and injunctive relief to prevent the Resolution from taking effect or being enforced against them.

During discovery, the parties filed competing motions in limine concerning the legislative privilege. The district court ruled that the legislative privilege was inapplicable because the Resolution was not "legislative" in nature. Defendants now bring this interlocutory appeal, challenging the district court's ruling. Before reaching that issue, however, we must address jurisdiction. Doing so, we conclude that Plaintiffs lack standing to bring their underlying claims. We therefore vacate the district court's order and remand with instructions to dismiss Plaintiffs' claims.

## I.

In June 2022, three of St. Tammany Parish's twelve public libraries featured "Pride Month" displays, at least one of which appeared in the children's section of one of the libraries. The displays led to significant community debate, which included formal complaints filed with the Board, increased attendance at Board meetings, and heightened media attention. The brouhaha over the "Pride Month" displays soon morphed into a larger debate over the presence of LGBT-related and sexually explicit books in the parish's libraries.

Attorney David Cougle emerged as a leading critic of the libraries and the Board. He co-founded the St. Tammany Library Accountability Project (STLAP), an advocacy group whose aim was to remove LGBT-related and sexually explicit books from the parish's libraries. As STLAP's co-founder,

No. 24-30523

Cougle spoke publicly at meetings and on podcasts, launched petitions, and proposed local legislation aimed at addressing the "sexually explicit and pedophilic material" available in the libraries. In April 2023, he launched his candidacy for a seat on the Council, campaigning to address "the library crisis."

Before the election, the incumbent Council appointed McHugh and Parr to fixed, five-year terms as volunteer members of the Board.[1] Both quickly faced criticism after McHugh endorsed a book at the center of the controversy—*Pink, Blue, and You*—during a Board meeting and Parr signed a petition supporting the St. Tammany Parish Alliance—an "anti-censorship" advocacy group formed to counter STLAP. Cougle joined in the criticism of McHugh and Parr, began calling publicly for the removal of "left-wing activists" from the Board, and worked with a state legislator to confect legislation aimed at clarifying the Council's authority to "fire" Board members during their terms.

In October 2023, Cougle and eight other newcomers won election to seats on the fourteen-member Council. Plaintiffs allege that upon taking office the following January, Councilman Cougle formally commenced efforts to remove them from the Board before their terms expired. Among other things, Cougle voiced concerns that the Council failed to stagger the Board's terms when the Board was first created, in violation of section 25:214 of the Louisiana Revised Statutes.[2]

---

[1] Taylor was appointed to the Board almost one year earlier.

[2] Each parish's council has the power to establish local public libraries. LA. STAT. ANN. §§ 25:211–212. And if a parish chooses to do so, the parish council may also create a library board of control, made up of "not less than five citizens nor more than seven citizens of the parish" appointed by the parish council. *Id.* § 25:214(B). By statute, a parish council must make initial appointments to a library board for staggered terms of one, two, three, four, and five years, with all subsequent appointees serving fixed, five-year terms.

No. 24-30523

Cougle requested a legal opinion from the Louisiana Attorney General on whether (1) the current Board members' appointments were invalid due to the Council's failure to stagger those terms at their inception, and (2) the Council could correct that error by terminating the Board members' terms and appointing new members to staggered terms in compliance with § 25:214. Keen to move forward on the issue, Cougle did not wait for the Attorney General to respond; instead, he published his own position paper, which concluded that the Board members' appointments did not comply with Louisiana law and were therefore invalid.

Cougle followed with a proposed resolution that declared all six Board positions "vacant" and sought nominations to fill those positions. After discussion, and over his objection, the Council delayed voting on Cougle's resolution. In the interim, Councilwoman Cheryl Tanner introduced an amended version of Cougle's proposal. Amenable to the modified Resolution but without yet adopting it, the Council proceeded to nominate twenty-two candidates—including Plaintiffs—for the six Board positions. At its next meeting, the Council selected the six new Board members and approved the Resolution. Though five of the six previously serving Board members were nominated and considered for the reconstituted terms, only one prior Board member was reappointed; Plaintiffs were not. Thus, via one formal action of the Council, the Resolution vacated the terms of the former Board members and appointed six members to newly staggered terms.[3]

―――――――――――――――――――

*Id.* Although library board members are appointed to fixed, five-year terms, each parish council retains "the power to remove and replace th[ose] members." *Id.* § 33:1415(A).

[3] The Resolution's text does not expressly "vacate" the existing unstaggered terms; it only states that "members of the [Board] were erroneously appointed to unstaggered terms of office." But, as Plaintiffs allege, their terms were effectively vacated by the Resolution, and we assume that fact for purposes of this appeal.

No. 24-30523

Plaintiffs filed this § 1983 action against St. Tammany Parish and Cougle in his official capacity, alleging federal and state constitutional violations and seeking declaratory and injunctive relief to prevent the Resolution from taking effect or being enforced against them. Specifically, Plaintiffs asserted First Amendment retaliation and viewpoint-discrimination claims, a substantive-due-process claim, and free-speech and retaliation claims under the Louisiana Constitution.

The district court set a bench trial for August 2024. During discovery, Defendants filed a motion in limine asserting the legislative privilege, seeking to prevent Plaintiffs from (1) introducing deposition testimony given by four Council members, (2) introducing two recorded phone calls between McHugh and a Council member while McHugh was serving on the Board, and (3) asking any Council members about their motives in voting for the Resolution without the testifying witness first waiving the legislative privilege.[4] The district court denied Defendants' motion on August 9, 2024, ruling that the legislative privilege did not apply because the Resolution was not a "legislative" act.

Defendants brought this interlocutory appeal two days later, challenging the district court's ruling that the legislative privilege is inapplicable. Meanwhile, on August 16, Plaintiffs moved for a preliminary injunction in the district court. Defendants sought to stay the district court proceedings pending appeal, and Plaintiffs moved to expedite the appeal. A

---

[4] Council members Kathy Seiden, Cheryl Tanner, Martha J. Cazaubon, Patrick Burke, Arthur Laughlin, Larry Rolling, Rick Smith, and Jeffery Corbin joined Defendants' motion in limine to assert the legislative privilege on their own behalf. Though nonparties, they are styled "Intervenors" in this appeal. Plaintiffs assert that Intervenors lack standing to join this appeal because they failed properly to intervene in the district court. In the light of our conclusion that Plaintiffs lack standing to bring their underlying claims, we do not further explore whether Intervenors are properly before us.

No. 24-30523

motions panel of this court granted the motion to expedite and denied the motion to stay, though the panel ordered the district court to decide Plaintiffs' motion for a preliminary injunction as if the legislative privilege applied.  Order, No. 24-30523 (5th Cir. Oct. 11, 2024) (per curiam).  On October 16, 2024, the district court denied Plaintiffs' motion for a preliminary injunction.

After expedited briefing on the question of legislative privilege, we heard oral argument on Defendants' appeal on December 5, 2024.  During argument, we requested supplemental briefing from the parties on whether Plaintiffs have standing to assert their underlying claims.  The parties submitted letter briefs on December 12, 2024, and the issues are now ready for decision.

## II.

Defendants contend that the district court erred in determining that the Resolution was not a "legislative" act by the Council and then denying the Council members' claims of legislative privilege on that basis.  We review a district court's discovery order for abuse of discretion.  *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 321 (5th Cir. 2024).

But "Article III jurisdiction is always first.  Here, it[ is] also last."  *E.T. v. Paxton*, 41 F.4th 709, 714 (5th Cir. 2022) (quoting *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 426 (5th Cir. 2020) (Oldham, J., concurring)).  In particular, "[s]tanding is a threshold issue that we consider before examining the merits."  *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016).  To invoke our jurisdiction, Plaintiffs must demonstrate that they have Article III standing to bring each of their claims.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  They fail to do so.

### III.

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2; *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997). "One element of the case-or-controversy requirement is that appellees, based on their complaint, must establish that they have standing to sue." *Raines*, 521 U.S. at 818 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). To demonstrate Article III standing, "[P]laintiffs must show (1) that they suffered an injury in fact, which is a concrete and particularized invasion of a legally protected interest; (2) that the injury is traceable to the challenged action of the defendant; and (3) it is likely, rather than merely speculative, the injury will be redressed by a particular decision." *Williams*, 843 F.3d at 620 (citations omitted; alteration accepted). Plaintiffs "'must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC*, 594 U.S. at 431).

Plaintiffs' claims rest on two alleged injuries. Their viewpoint-discrimination, free-speech, and retaliation claims are based on the Resolution's vacatur of their Board terms, which they say penalized them for speaking out on issues related to the parish libraries and deprived them of the ability to speak and act as Board members. Their substantive-due-process claim is based upon alleged reputational injuries they suffered because of "false charges" that "they are liberal, activist, members of a political conspiracy to sexualize children." But Plaintiffs' alleged injuries are insufficient to establish standing because (A) their speech-related injuries are not particularized and (B) their reputational injuries are neither fairly traceable to Defendants' conduct nor redressable by a favorable decision.

### A.

For a plaintiff to have Article III standing, her alleged injury must be "particularized," meaning that "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 & n.1. Where an injury is suffered by "all [m]embers of [an entity] equally," it becomes a "type of institutional injury"—rather than a personal or individualized one. *Raines*, 521 U.S. at 821; *see Jones v. Reeves*, 121 F.4th 531, 535 (5th Cir. 2024); *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 307 (3d Cir. 2022); *Kerr v. Hickenlooper*, 824 F.3d 1207, 1215 (10th Cir. 2016). Of course, an "institutional plaintiff" might be able to assert "an institutional injury." *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 802 (2015). But an institutional injury typically lacks the requisite particularity for individual plaintiffs to establish standing when they "have not been singled out for specially unfavorable treatment as opposed to other [m]embers of their respective [entity]." *Raines*, 521 U.S. at 821; *accord Jones*, 121 F.4th at 535. Thus, "[g]enerally speaking, members of collegial bodies do not have standing to [take legal action] the body itself has declined to take." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 544 (1986); *see also Jones*, 121 F.4th at 535.

Plaintiffs' alleged speech-related injuries are, at bottom, plainly institutional in nature as they necessarily are based on the Council's decision to vacate and then stagger the *Board*'s terms to align with Louisiana law. Plaintiffs' alleged injuries therefore lack the requisite particularity to establish standing for at least three reasons. *First*, Plaintiffs' alleged injuries are inextricably linked to their positions as Board members. In other words, their injuries are "not claimed in any private capacity but solely because they are [Board members]." *Raines*, 521 U.S. at 821. Indeed, Plaintiffs' complaint expressly alleges that the Resolution injures them by "preventing their speech *as [Board] members* entirely." The complaint goes on to elaborate that

the Resolution limits Plaintiffs' ability to discuss Board agenda items, Board actions, book challenges, censorship, and the accessibility and display of items in the parish libraries—all matters quintessentially springing from Plaintiffs' position as Board members. Yet these are the only alleged violations of Plaintiffs' protected speech articulated in their complaint, and they clearly demonstrate that Plaintiffs' alleged injuries arise from their capacity *as Board members*.

Plaintiffs attempt to draw a distinction, arguing that they suffered these injuries in their personal capacities, not as Board members. But any distinction here is too faint to make a difference. Indeed, the Article III question whether Plaintiffs have suffered a "particularized" injury necessarily precedes any First Amendment issue raised by Plaintiffs. And Plaintiffs fail to satisfy Article III's particularity requirement because they only allege an injury to their ability to speak—during Board meetings, Council meetings, or on social media—concerning matters pending before the Board and actions and positions they took as Board members. Any injury to that speech is thus innately tethered to Plaintiffs' continued Board membership—something that deprives their alleged injuries of "personal and individual" force. *Lujan*, 504 U.S. at 560 & n.1. Put simply, the alleged injuries Plaintiffs suffered arise only because Plaintiffs were Board members. *See Jones*, 121 F.4th at 537 (citing *Raines*, 521 U.S. at 821). They remain free to comment on library policies and related matters as private citizens. But the loss of the government platform from which they previously spoke—something every incumbent Board member suffered equally—is not an injury particular to them. The *Board*'s terms, not just the Plaintiffs', were all vacated and reconfigured. *See id.* at 535.

*Second*, Plaintiffs have not shown, nor does their complaint even allege, that they have been "singled out for specially unfavorable treatment as opposed to other [m]embers of their respective [entity]." *Raines*, 521 U.S.

at 821; *accord Jones*, 121 F.4th at 535. The Resolution generally vacated all Board members' terms, without regard to any member individually. By its terms, the Resolution was aimed at least as much at restructuring the Board, i.e., by staggering its terms, as it was removing current Board members. Its across-the-board vacatur of current Board members' terms was but a consequence of that substantive change.

Plaintiffs attempt to sidestep these facts by arguing that the Council reappointed only one of the original Board members to a newly staggered term. But that argument is unpersuasive. For one thing, Plaintiffs have never alleged that their injuries arise from the Resolution's *appointments*; rather, Plaintiffs have only challenged their *removal* from the Board. For another, Plaintiffs were nominated and considered for appointment to the newly constituted Board, just like the one incumbent member who was reappointed. Plaintiffs just failed to garner enough Council support. And even if Plaintiffs had challenged the Council's *appointment* decisions rather than its decision to vacate the existing Board's terms, Plaintiffs' alleged injuries are still tied to the vacatur of their terms for they would have no interest in being reappointed absent their removal by the Resolution. Thus, Plaintiffs have not shown that the Resolution "singled [them] out for specially unfavorable treatment as opposed to other [m]embers of their respective [entity]." *Raines*, 521 U.S. at 821; *see also Jones*, 121 F.4th at 535 (applying *Raines* to local government board and finding no particularized injury to individual board members where legislation terminated all acting board members).

*Third*, and finally, the Resolution deals with the Board "as an entity," bolstering our conclusion that Plaintiffs' alleged injuries are institutional and that Plaintiffs "lack a sufficient 'personal stake' in the alleged dispute." *Jones*, 121 F.4th at 535. The Resolution brings the Board, as an entity, into compliance with Louisiana law—it does not deal with individuals, other than appointing new members to the Board. To accomplish its objective, the

Resolution first removed the sitting Board members in blanket fashion and then restructured the Board's terms to stagger them. "Because [the Resolution] supplants the [Board] in its entirety, any alleged injury caused by [the Resolution] necessarily affects the [Board] as an entity." *Jones*, 121 F.4th at 535. It follows that "Plaintiffs have not alleged any particularized personal injury arising from this governmental restructuring." *Id.*

Because the Resolution "affects the [Board] as an entity" and all of its members equally, Plaintiffs' alleged injuries—their loss of the ability to speak and act *as Board members*—are institutional ones for which they lack a "personal" or "individual" interest. *Id.*; *accord Raines*, 521 U.S. 821; *Lujan*, 504 U.S. at 560 & n.1. Plaintiffs have thus failed to show that their alleged speech-related injuries are particular to them, and for that reason, they have failed to establish standing to bring their viewpoint-discrimination, free-speech, or retaliation claims.[5] The district court therefore lacks jurisdiction over those claims, and they must be dismissed.

## B.

Plaintiffs also fail to demonstrate Article III standing to assert their substantive-due-process claim. To do so, Plaintiffs must show that their alleged injuries are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before

---

[5] Plaintiffs' claim under the Louisiana Constitution falters for the same reasons. But even if Plaintiffs had alleged a separately cognizable injury under the Louisiana Constitution, there is no avenue in the federal courts for them to seek injunctive relief against state officials based on violations of state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984). And because Plaintiffs' federal claims must be dismissed for lack of subject matter jurisdiction, the district court in this case cannot exercise supplemental jurisdiction over Plaintiffs' pendent state law claims. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *accord U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 503 (5th Cir. 2018).

the court," and that it is "likely, as opposed to merely speculative, that the injur[ies] will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (cleaned up). Plaintiffs' due-process claim flunks both requirements.

Plaintiffs allege reputational injuries in support of their substantive-due-process claim. That is, they allege that they were injured by "false charges" that "they are liberal, activist, members of a political conspiracy to sexualize children" and by Defendants' failure to refute those allegations, protect Plaintiffs' reputations, or provide a "name-clearing" hearing to mitigate damage to their reputations. As relief, Plaintiffs seek a declaration that the Resolution is an unconstitutional violation of their rights and an injunction against Defendants' enforcing the Resolution or terminating Plaintiffs' Board terms; they do not seek compensatory damages, a "name-clearing" hearing, or any other form of remedy.

As for traceability, Plaintiffs fail to substantiate how their alleged reputational injuries are fairly traceable to Defendants' challenged conduct. *See Lujan*, 504 U.S. at 560. Plaintiffs allege that their reputations were harmed when they were labeled as "liberal, activist, members of a political conspiracy to sexualize children." But their complaint only challenges the Council's passage of the Resolution. That is, the challenged conduct—the crux of Plaintiffs' claim—is not Defendants' alleged slander, but the Resolution's passage. And the Resolution merely dissolves and reconstitutes the Board. There is thus a fundamental, and fatal, disconnect between Plaintiffs' alleged reputational injury and Defendants' challenged conduct.

Plaintiffs also fail to satisfy the traceability requirement for an additional reason: Their complaint never alleges that the named Defendants, the St. Tammany Parish Council or Cougle, in his official capacity as Councilman, ever said or did anything to disparage Plaintiffs' reputations. Rather, according to their complaint, the disparaging remarks made about

No. 24-30523

Plaintiffs were made by Cougle in his personal capacity—before he assumed a seat on the Council—and by non-party Council members, members of the public, and media outlets. Thus, based on their complaint, Plaintiffs' alleged reputational injuries are "the result of the independent action of some third part[ies] not before the court," and therefore, they have failed to demonstrate that their alleged injuries are fairly traceable to the named Defendants' conduct. *See Lujan*, 504 U.S. at 560 (alterations accepted).

And juxtaposing the alleged injuries against the relief requested, Plaintiffs fail to show redressability. Neither the declaratory nor injunctive relief they seek would do anything to remedy their alleged reputational injuries. And "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Thus, Plaintiffs' standing to assert their substantive-due-process claim falters on this point as well.

To sum up: Plaintiffs' alleged reputational injuries are neither fairly traceable to Defendants' conduct nor redressable by the relief requested by Plaintiffs. Therefore, the district court lacks Article III jurisdiction over Plaintiffs' substantive-due-process claims, and they must be dismissed.

## IV.

At its core, this case is not about viewpoint discrimination, free speech, retaliation, or substantive due process. Plaintiffs lost their Board positions and thereby lost the power to wield the levers of influence over St. Tammany's libraries—and they want that control back. But rather than pursue that aim through the political process, they have "dragged that fight into federal court by tricking it out in [constitutional] colors." *Jones*, 121 F.4th at 537 (citation and quotation marks omitted).

No. 24-30523

But Article III does not work that way. As to each of their claims, Plaintiffs must show that they have suffered a particularized injury that is fairly traceable to Defendants' conduct and redressable by a favorable decision. They have not done so. Accordingly, we vacate the district court's order and remand with instructions to dismiss for lack of subject matter jurisdiction.

VACATED AND REMANDED.